UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John and Helen McGregor, on behalf of themselves and all others similarly situated, | Court File No. _____ |
| | Class Action |
| Plaintiffs, | |
| v. | **COMPLAINT IN CLASS ACTION** |
| Uponor, Inc., successor to Uponor North America, Inc., and Radiant Technology, Inc., | |
| Defendants. | |

Plaintiffs John and Helen McGregor, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this Complaint in class action and state and allege as follows:

## THE PLAINTIFFS

1. Plaintiffs and putative class representatives John and Helen McGregor are husband and wife and are residents of and the owners of property in Mead, Washington.

2. Plaintiffs and putative class representatives bring this case on behalf of themselves and a class of similarly situated persons and entities.

## THE DEFENDANTS

3. Defendant Uponor, Inc. is a publicly-held entity that is in the business, among other things, of advertising, warranting, manufacturing, and selling plumbing components.

4. Uponor, Inc. is the successor to Uponor North America, Inc. and is a Minnesota corporation that maintains its principal place of business in Minnesota.

5.     Defendant Radiant Technology, Inc. ("RTI") is a foreign entity that is in the business, among other things, of advertising, warranting, manufacturing, and selling plumbing components.

6.     RTI is a wholly owned subsidiary or Uponor and has its principle place of business in Minnesota.

7.     RTI is responsible for some or all of the acts and omissions alleged herein.

8.     Uponor and RTI have acted in concert with each other with the respect to the actions and omissions alleged herein.

9.     Uponor and RTI are jointly and/or severally liable to Plaintiffs and the putative class members as joint venturers, or in the alternative, operate such that any pretend corporate formalities amongst and between the two should be disregarded or pierced, or in the alternative, are subject to an agency relationship, or in the alternative, are subject to predecessor and successor liability theories, or in the alternative, are otherwise jointly and severally liable for all acts and omissions alleged herein.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the parties, the putative class, and the causes of action asserted herein pursuant to Rule 23 of the Federal Rules of Civil Procedure.

11.     Venue in this forum is proper in that Uponor and RTI reside in Minnesota, some of the putative class members reside in Minnesota, the causes of action for the class representatives arose, in part, in Minnesota, the causes of action for putative class members arose, in part, in Minnesota, and Uponor and RTI transact business within Minnesota.

12. Jurisdiction is also appropriate in Minnesota because the warranties provided by Uponor and RTI for their F1807 style fittings purport to require that suits be brought in Minnesota and that Minnesota law be applied to all tort, contract or other claims.

## SUMMARY OF CLASS ACTION

13. Plaintiffs on behalf of themselves and all other persons similarly situated bring this action for and on behalf of the owners of homes and buildings with Uponor and/or RTI plumbing systems with cross-linked polyethylene ("Pex") tubing. These systems are defective.

14. Plaintiffs and the putative class members have been damaged as a result of the design, development, advertisement, marketing, sale, and warranty misconduct of Uponor and RTI in connection with Uponor and RTI pex plumbing systems that utilize brass insert fittings.

15. Uponor and RTI have sold brass insert fittings for pex plumbing systems throughout the United States.

16. Uponor and RTI warranted and advertised that their pex plumbing systems with brass insert fittings had a 25-year warranty that expressly covered consequential damages arising from leaks or failures in the plumbing systems.

17. Uponor and RTI have warranted and advertised their brass insert fittings as being reliable and resistant to corrosion.

18. These representations, however, proved untrue and Uponor and RTI's brass insert fittings began to prematurely fail across the country. These failures resulted in substantial damage to property other than the plumbing system.

19. After selling these brass insert fittings across the country, Uponor now admits that the fittings are defective and not merchantable. Uponor and RTI, however, refuse to replace

the plumbing systems of all persons and entities who own properties containing the admittedly defective fittings.

20.     The failures of the Uponor and RTI brass insert fittings have and will in the future cause water leaks. These leaks have and will in turn cause extensive damage to other property including the homes and personal property of the owners.

21.     Plaintiffs and the putative class members seek damages arising from and proximately caused by Uponor and RTI's breach of consumer protection statutes, fraud and misrepresentations, negligence, breach of contract and breach of warranties. Plaintiffs and the putative class members also seek declaratory and injunctive relief, as described below.

## FACTUAL BACKGROUND

**Uponor and RTI Pex Plumbing Background**

22.     Uponor and RTI manufacture and sell of various plumbing products including pex plumbing systems and their components.

23.     Pex is an acronym for cross-linked polyethylene. Polyethylene is the raw material and the "X" in the generic name "Pex" refers to the cross-linking of the polyethylene across its molecular chains.

24.     For decades, plumbers and homeowners used copper piping for potable water plumbing systems.

25.     Copper is and has been accepted by virtually all plumbing codes throughout the United States.

26.     In the 1980's, manufacturers in the United States began selling and plumbers began installing potable water plumbing systems with tubing made from polybutylene plastic.

4

27. Plumbing systems using tubing made from polybutylene plastic were touted by manufacturers as being easier to install, cheaper and longer-lasting than copper plumbing systems.

28. Polybutylene plumbing systems quickly proved to be poorly conceived, designed and manufactured systems. Those polybutylene systems began to fail prematurely in the field causing substantial property damage.

29. A substantial amount of litigation ensued as a result of the widespread, premature failure of polybutylene plumbing systems. Several class actions were filed and settlements in those cases exceeded $1.25 billion.

30. At least in part in response to the failure of polybutylene plumbing systems, virtually all manufacturers ceased manufacturing polybutylene plumbing systems for sale in the United States. In addition, most plumbing codes eventually prohibited the installation of polybutylene plumbing systems.

31. Following the demise of polybutylene systems, Uponor, RTI and other manufacturers began selling alternative, non-copper plumbing products in the United States.

32. Specifically, Uponor and RTI designed, manufactured and marketed plumbing systems using pex tubing for use in residential and commercial settings.

33. Uponor and RTI touted their pex plumbing systems as being easier to install, cheaper and longer-lasting than copper plumbing systems.

**Uponor and RTI Pex Brass Insert Fittings**

34. In approximately 1997, Uponor and / or its parent company purchased RTI. In doing so, Uponor purchased RTI's assets and liabilities, its entire product line and the rights to RTI's intellectual property.

35.     RTI sold a pex plumbing system utilizing brass insert fittings that purportedly conformed to ASTM standard F1807.

36.     F1807 insert fitting systems typically use a crimp or stainless steel clamp connection design in which insert fittings made of brass alloy are inserted into the pex tubing. The brass fittings are secured by using a special tool that crimps copper rings or stainless steel clamps around the outside of the tubing, which in turn, creates a seal between the pex tubing and the brass fittings.

37.     The crimp or stainless steel clamp system design chosen by RTI for its pex plumbing systems places a great deal of stress on the brass insert fittings when the system is assembled as intended.

38.     The design, choice of material and manufacturing methods of the F1807 brass insert fittings also result in residual stress on the fittings following the manufacturing process but before the system is assembled in the field.

39.     For some period of time, RTI sold the plumbing components and systems using the F1807 brass insert fittings under its own name or label.

40.     Upon information and belief, in early 2005 Uponor closed the RTI operations and thereafter continued to sell the F1807 fittings under Uponor's own name or label.

41.     Defendants were negligent in their design and manufacture of the brass insert fittings for a number of reasons, including their choice of high zinc content brass alloy as the material used for the fittings.

42.     Defendants knew or should have known that the brass alloy they chose for the brass insert fittings made the fittings susceptible to premature failure through various processes like dezincification and stress corrosion cracking.

6

43.     Defendants knew or should have known that their fitting design, pex system design, and choice of brass alloy also made the brass insert fittings susceptible to premature failure through stress corrosion cracking and / or dezincification.

44.     Defendants knew or should have known that the manufacturing process used for the brass insert fittings left residual stress and machining imperfections that would cause premature failure.

45.     Defendants' design, materials choices, and manufacturing practices have created a product that is damaged and begins to fail on its first day of use, even if perfectly installed in its intended environment.

46.     Because of their defective design and manufacture, Defendants' F1807 brass insert fittings failed in their intended purpose.

47.     Because of their defective design and manufacture, Defendants' F1807 brass insert fittings are inherently defective and are substantially certain to fail within the express warranty provided with the fittings and / or the useful life of the fittings.

48.     Plaintiffs and Class members own Uponor and RTI plumbing systems with brass insert fittings that have already or are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their plumbing systems.

**Defendants' Admissions of Defect**

49.     Neither Uponor nor RTI actually manufactured the F1807 brass insert fittings they sold to consumers. They instead purchased the fittings from suppliers, including Unique Industrial Product Company ("Unique Industrial") but Defendants provided Unique Industrial and other suppliers with the design and materials specifications for the fittings.

50.     No later than 2006, Uponor and RTI began receiving reports that their F1807 fittings were failing prematurely when used as intended.

51.     For example, Defendants received reports from NVR, a large national homebuilder, that numerous F1807 fittings had failed prematurely in the State of Virginia.

52.     Uponor and / or RTI agreed to reimburse NVR for the cost of replacing the fittings and / or plumbing systems in thousands of homes. The cost of those replacements totaled approximately $5 million.

53.     Defendants also received similar reports of prematurely failing F1807 fittings in Minnesota and other of the United States.

54.     As a result of the premature failures of the F1807 fittings, Defendants completely stopped selling F1807 fittings. Uponor now only sells insert fittings manufactured to comply with ASTM F1960 or other ASTM standards.

55.     Beginning in 2006, Uponor sought reimbursement from Unique Industrial for the money Uponor paid as a result of premature failures of the F1807 fittings.

56.     In seeking reimbursement from Unique Industrial, Uponor claimed that the F1807 fittings it and RTI had obtained from Unique Industrial, and which Uponor and RTI had sold to the public, were defectively designed or manufactured.

57.     Ultimately, Uponor sued Unique Industrial in federal court in Texas. In that complaint, Uponor admitted that the F1807 fittings were "defectively manufactured" and "were not merchantable, or suited for their reasonable, expected and intended use in residential plumbing systems, and which were not free from defects in materials, design and workmanship."

58.     Uponor also admitted in the complaint against Unique Industrial that the F1807 fittings were "defective and unreasonably dangerous."

8

59.     In the course of their investigation of the cause of the premature failures of the F1807 fittings, Defendants retained the services of Cynthia L. Smith, an engineer and one of Uponor's former employees.

60.     Ms. Smith issued reports and opinions in which she concluded that the F1807 fittings bought from Unique Industrial and sold by Defendants were defectively designed and manufactured. She concluded that the fittings were failing because of stress corrosion cracking that was the result of improper manufacturing practices and off-specification materials.

61.     Ms. Smith also issued reports and opinions in which she concluded that the F1807 fittings bought from Unique Industrial and sold by Defendants had not failed because of installation practices or water conditions. She did so by analyzing fittings that had never been installed and yet displayed manufacturing and specifications defects.

62.     Ms. Smith also issued reports and opinions in which she concluded that the F1807 fittings bought from Unique Industrial and sold by Defendants had failed not because of water conditions and stated: "My conclusion that faulty installation was not a cause of failure in the brass fittings supplied by Unique was further supported by the history of fittings failures. A sudden rash of failures occurred in multiple states (where varying water chemistry conditions existed)during a narrowly defined time period, involving various plumbing contractors who had previous experience successfully installing these components. This fact also undermines any question of installation error."

63.     In addition to these judicial admissions, Uponor now publicly criticizes the F1807 fitting design. In a document currently available on its website, Uponor compares its F1960 fittings with the F1807 style fitting both Defendants previously sold.

64.     In that product comparison, Uponor is critical of the thinner wall thickness of the F1807 fittings and states that: "Thinner wall offers less resistance to stress and corrosion."

65.     Uponor therefore itself now publicly criticizes the design flaws in the F1807 fittings.

**Replacement of F1807 Fittings and Pex Systems**

66.     Recognizing that the F1807 fittings they sold were defective, Defendants have paid for or authorized the replumbing of certain properties containing those systems.

67.     For example, Defendants have paid for or authorized the replumbing of properties containing systems with F1807 fittings in the State of Virginia.

68.     In addition, Defendants have paid for or authorized the replumbing of properties containing systems with F1807 fittings in the State of Nevada. In that replumbing program, Defendants have agreed to replumb all homes built by D.R. Horton in which Defendants' F1807 fittings are installed.

69.     In an October 2008 letter to homeowners, RTI advised homeowners "of the risk that the plumbing system in your home may be susceptible to future leaks." In that same letter, RTI offered to pay for complete repiping of plumbing systems owned by the purchasers of D. R. Horton homes.

70.     Unfortunately, Defendants refuse to repipe or replumb the homes or properties of all persons or entities who own systems with Defendants' F1807 fittings. Defendants instead apparently offer that work to only the customers of large home builders, leaving other consumers without the benefit of the same replacement.

71.     Defendants have refused Plaintiffs' request to replumb their home to replace the fittings Defendants themselves have admitted are defective, unreasonably dangerous and not merchantable.

**Inadequate Testing of Brass Insert Fittings**

72.     Defendants did not test the F1807 brass insert fittings in their anticipated environments before selling those fittings to the public.

73.     In an effort to save time and money, Defendants did not end use test the brass insert fittings in pex plumbing systems and instead used various assumptions when choosing the design and materials for this system. Such a practice violates engineering and manufacturing standards and accepted practice.

74.     Defendants also conducted inadequate testing on their F1807 brass insert fittings and failed to test things that they knew or should have known would lead to premature failure of the brass fittings.

75.     Defendants also failed to investigate or test whether well-known and expected water conditions would lead to premature failure of the brass insert fittings.

**False Advertising of Pex Plumbing Systems**

76.     Defendants falsely advertised that their pex plumbing systems – including their F1807 brass insert fitting components -- were reliable despite never testing and determining the reliability of the product when used in real world conditions.

77.     Defendants held themselves out as leaders in the plumbing industry and as manufacturers of reliable plumbing products.

78.     Defendants advertised its pex plumbing system and its components to have "a life expectancy of more than 100 years when used under normal operating conditions."

11

79. Among other false and inaccurate representations of their pex plumbing systems with F1807 brass insert fittings, Defendants falsely advertised and represented that the system "was simple, safe and proven for over three decades," was the world's "best" pex system, and that customers could "forget about callbacks."

80. Defendants also falsely represented their brass insert fittings as "leak-resistant and will last the life of the system."

81. Defendants also falsely represented that owners of their pex plumbing systems "can rest assured that your new plumbing . . . system will provide a lifetime of reliable service."

82. Defendants also falsely advertised and represented that their pex plumbing systems and their F1807 brass insert fittings had been subject to decades of "rigorous testing . . . and testing and testing and testing."

83. Defendants also falsely marketed their pex plumbing systems as being safe, reliable, and corrosion-resistant.

84. Defendants also falsely marketed and warranted their pex plumbing systems as being extensively tested, and that based on the results of those tests, the pex plumbing system and their F1807 brass insert fittings were properly designed, developed, marketed, and manufactured so as to perform adequately, reliably and as represented.

85. Defendants also falsely marketed and warranted that their pex plumbing systems were superior to copper plumbing systems.

86. Defendants also falsely marketed and warranted that their pex plumbing systems and the F1807 brass insert fittings were of superior design and materials than similar products made by competitors.

87. Defendants and their authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing plumbing suppliers, builders, plumbers, and consumers to purchase and install pex plumbing systems and their F1807 brass insert fittings in their properties throughout the country.

88. Defendants also made numerous material omissions and uniformly withheld important information relating to the design, reliability and performance of their brass insert fittings and pex plumbing systems.

89. Among these omissions were the failure to inform purchasers and consumers about the tendency for these fittings to fail because of stress corrosion cracking or dezincification and to inform them that Defendants' had done little or no testing to determine whether these fittings and the systems in which they were used would perform well in real world conditions.

90. Had Defendants not withheld and omitted important information about the design, reliability and performance of their F1807 brass insert fittings and pex plumbing systems, Plaintiffs and the members of the putative class would not have purchased those products or allowed them to be installed in their homes or properties.

**Field Failures of Defendants' Pex Plumbing systems**

91. By 2006 at the latest, Defendants received notice that their brass insert fittings were failing prematurely.

92. Defendants' brass insert fittings have failed prematurely in numerous locations throughout the United States, including Minnesota, Virginia and Washington.

93. Defendants analyzed the cause of these failures and concluded that the fittings were failing because of stress corrosion cracking and / or dezincification.

94.     Because of these failures, Defendants have completely stopped selling F1807 style fittings.

95.     In recognition of the problems with its choice of high zinc content brass, Uponor now offers different metal alloys for use in its pex plumbing fittings.

**Plaintiffs' Circumstances**

96.     Plaintiffs John and Helen McGregor, through their licensed plumber, purchased and had a pex plumbing system installed in their home located in Mead, Washington.

97.     Less than one year after installation, several of the F1807 fittings sold by Defendants failed at the McGregor home causing damage to property other than the pex plumbing system.

98.     Plaintiffs submitted a warranty claim to Uponor for these failures and Uponor confirmed that the fittings were defective. Uponor therefore compensated Plaintiffs for the damage caused by the failure.

99.     Because of ongoing problems with fittings in their home, Plaintiffs asked Uponor to replace all fittings in their home. Uponor has refused, leaving Plaintiffs with brass fittings in their home that Defendants have conceded are defective, unreasonably dangerous and not merchantable.

100.    Plaintiffs, like many class members, have already suffered out-of-pocket damage to repair their home following the premature failures of Defendants' brass insert fittings. Likewise, all putative class members have incurred or are reasonably certain to incur, the cost of repairing their homes because of fittings failures and / or prematurely replacing their plumbing systems.

101. Plaintiffs and the proposed class members suffered general and specific

compensatory and contractual damages including, without limitation consequential, incidental,

loss of use, diminution of value, attorneys' fees, costs and disbursements.

## DEFINITION OF PROPOSED CLASSES

102. Plaintiffs bring this class action on behalf of themselves and all others similarly

situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil

Procedure. The first proposed class is defined as:

> All persons and entities that own a structure that contains a pex plumbing system
> with Uponor or RTI F1807 brass insert fittings. The proposed class includes,
> without limitation, all such persons or entities who contacted Defendants or their
> representatives about their pex plumbing system and were denied or partially
> denied warranty coverage and /or replacement of their pex plumbing system.

103. Alternatively, Plaintiffs bring this class action on behalf of themselves and all

others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules

of Civil Procedure, for a second proposed class defined as:

> All persons and entities that own a structure, within certain of the United States,
> that contains a pex plumbing system with Uponor or RTI F1807 brass insert
> fittings. The proposed class includes, without limitation, all such persons or
> entities who contacted Defendants or their representatives about their pex
> plumbing system and were denied or partially denied warranty coverage and /or
> replacement of their pex plumbing system.

104. Plaintiffs specifically exclude Defendants or their related entities from the

putative class, all subsidiaries or affiliates of Uponor; any entity in which Defendants have a

controlling interest; and any and all of Defendants' employees, affiliates, legal representatives,

heirs, successors or assignees.

105. Plaintiffs also specifically exclude from the putative class any person or entity

that has previously commenced and concluded a lawsuit against Defendants arising out of the

subject matter of this lawsuit.

106.    Plaintiffs also specifically exclude from the putative class the judge assigned to this case and any member of the judge's immediate family.

107.    Plaintiffs specifically include in the putative class the claims of all persons or entities, like insurance companies, that have paid for the repair, replacement and / or damage caused by prematurely failed brass insert fittings sold by Defendants.

## SATISFACTION OF CLASS PREREQUISITES

108.    This class action satisfies numerosity, commonality, typicality, adequacy and superiority requirements for maintaining a class.

109.    **Numerosity.** Pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, the putative class "is so numerous that joinder of all members is impracticable." The number of members of the putative class is believed to be tens of thousands of individuals and/or entities that own properties with Defendants' pex plumbing systems with F1807 brass insert fittings.

110.    Joinder of the persons and entities into whose properties the Defendants' pex plumbing systems were installed is impractical and not feasible.

111.    **Commonality.** Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, the putative class shares "questions of law or fact" that predominate and individualized issues. The common questions include, but are not limited to, the following:

- Were Defendants' brass insert fittings defectively designed for their intended application?
- If so, what is the nature of the design defect?
- Were Defendants' brass insert fittings defectively manufactured?
- Did Defendants fail to warn consumers that the brass insert fittings were not properly tested during design and development process?
- Did Defendants adequately warn consumers about any types of installations that may cause premature failure of the brass insert fittings?

- Did Defendants make fraudulent, false, deceptive and/or misleading statements in connection with the sale of pex plumbing systems in their product literature, including those relating to standards and reliability?

- Did Defendants omit material information when they sold their pex plumbing systems and F1807 brass insert fittings?

- Did Defendants properly account for foreseeable variations in installation in the development and design of their pex plumbing system and brass insert fittings?

- Did Defendants exercise reasonable care in the design, manufacture and testing of their pex plumbing system and F1807 brass insert fittings?

- Are the brass insert fittings progressively deteriorating at an accelerated rate?

- Will the brass insert fittings fail prematurely?

- Did Defendants deliberately sell or allow brass insert fittings to be distributed after they knew the fittings were failing at an increased rate?

- Did Defendants engage in fraudulent, false, deceptive and/or misleading misconduct with respect to the handling of warranty claims?

- What categories of damages are recoverable for owners of structures with Defendants' pex plumbing systems and brass insert fittings, e.g., replacement, consequential, incidental or other damages?

- Are the Plaintiffs entitled to relief under Defendants' express warranty?

- Can the class obtain a declaration concerning the types and categories of damages and remedies available to putative class members?

- Should Defendants be enjoined from denying warranty claims based on alleged warranty disclaimers or limitations?

- Are Plaintiffs' claims barred in whole or in part by any of Defendants' affirmative defenses?

112.   **Typicality.** Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure,

the claims of the putative class representatives, Plaintiffs, "are typical of the claims … of the

class." Plaintiffs and all members of the putative class who own Defendants' defective pex

plumbing systems with F1807 brass insert fittings have suffered damages as a result of

Defendants' wrongful acts and misconduct. Pursuant to corporate directives, Defendants

engaged in a similar pattern of misconduct towards both the Plaintiffs and all the other putative class members.

113.    **Adequacy.**  Pursuant to Rule 23(a)(4) of the Federal Rules of Civil Procedure, the putative class representatives "will fairly and adequately protect the interests of the class." Plaintiffs have no adverse interests to the putative class members.  Plaintiffs were sold a plumbing system with defective brass insert fittings.  Plaintiffs have retained lawyers who have substantial resources, experience and success in the prosecution and defense of class action, mass tort and complex litigation, and the insurance coverage and settlement issues attendant to the same.

114.    **Superiority.**  Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method of resolving this action for the following reasons:  A class action in this instance conserves the resources of the putative class, Defendants and the Court. The damages of most putative class members are not, in isolation, significant enough to hire an attorney on a contingency basis, and the burden and expense of hiring an attorney on a per diem basis for Plaintiffs and most putative class members, makes it difficult if not impossible for the class members to seek redress.  On information and belief, no Attorney General of any state has brought an enforcement action against Defendants to remedy the claims asserted herein.

Because the nature of the claims involved, the class members need swift and uniform resolution of their claims before additional damage is caused by plumbing system failures. Defendants have refused to pay Plaintiffs and the putative class members their full damages.

Further, there may or will be other cases pending against Defendants.  Serial adjudications in numerous venues is not efficient, timely, or proper.  Judicial resources throughout Minnesota and the United States will be unnecessarily depleted by resolution of

individual claims. Joinder on an individual basis of thousands of claimants in any one suit would be impractical or impossible. Individualized judgments and rulings could result in inconsistent relief for similarly situated plaintiffs. Individualized lawsuits could also establish incompatible standards of conduct for Defendants in creating, marketing, sale and post-sale conduct in connection with their pex plumbing systems and brass insert fittings.

## COUNT I

### (CONSUMER FRAUD)

115.   Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

116.   Minnesota Statutes § 325F.69, subd. 1 makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby...."

117.   By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325F.69, subd. 1.

118.   Defendants' wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, includes, by way of example and not by limitation:

   a.    Defendants' fraudulent, misleading, and deceptive statements and practices relating to their pex plumbing system and F1807 brass insert fittings;

   b.    Defendants' warranty related misconduct, including their fraudulent, deceptive and unfair practice of lying about unenforceable warranty limitations;

   c.    Defendants' fraud and misrepresentation by omission, of information about the defective nature of their pex plumbing system and brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects,

     d.     Defendants' concealment of the true nature of their defective plumbing system, and

     e.     Defendants' continued sale of F1807 fittings after they knew about problems with their design and manufacture.

119.     As a result of Defendants' fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practice practices relating to the sale of their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged from its first use.

120.     As a result of Defendants' fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass insert fittings, but also include, without limitation, consequential and incidental damages.

121.     That as a direct, proximate and foreseeable result of Defendants' violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT II

### (UNLAWFUL TRADE PRACTICES)

122.     Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

123.     Minnesota Statutes § 325D.13 provides that, "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

124. By engaging in the conduct described herein, Defendants violated and continues to violate Minn. Stat. § 325D.13.

125. Defendants' wrongful conduct and misrepresentation of the true quality of their pex plumbing systems and brass insert fittings, includes, by way of example and not by limitation:

    a.  Defendants' fraudulent, misleading, and deceptive statements and practices relating to their pex plumbing system and F1807 brass insert fittings;

    c.  Defendants' warranty related misconduct, including their fraudulent, deceptive and unfair practice of lying about unenforceable warranty limitations;

    c.  Defendants' fraud and misrepresentation by omission, of information about the defective nature of their pex plumbing system and brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects,

    d.  Defendants' concealment of the true nature of their defective plumbing system, and

    e.  Defendants' continued sale of F1807 fittings after they knew about problems with their design and manufacture.

126. Defendants and their agents and distributors also misrepresented the true quality of Defendants' pex plumbing system and their brass insert fittings by making the various statements about the alleged quality of the systems and brass insert fittings referenced herein.

127. As a result of Defendants' practices relating to misrepresentation of the true quality of their pex plumbing systems and their brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged the first time it is used.

128. As a result of Defendants' practices relating to misrepresentation of the true quality of their pex plumbing systems and their brass insert fittings, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass insert fittings

and plumbing systems, but also include, without limitation, consequential and incidental damages.

129.    That as a direct, proximate and foreseeable result of Defendants' violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT III

### (DECEPTIVE TRADE PRACTICES)

130.    Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

131.    Minnesota Statutes § 325D.44, subd. 1 provides in part:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
>
> > (5)    Represents that goods or services have...characteristics, ingredients, uses, benefits...that they do not have...
> >
> > (7)    Represents that goods or services are of a particular standard, quality, or grade,...if they are of another.
> >
> > (13)   Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

132.    By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325D.44.

133.    Defendants' wrongful conduct and misrepresentation of the true characteristics, standards, quality, and grade of their pex plumbing systems and brass insert fittings, includes, by way of example and not by limitation:

a.  Defendants' fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of their pex plumbing system and their brass insert fittings;

b.  Defendants' fraud and misrepresentation by omission, of information about the defective nature of Defendants' pex plumbing systems and their brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects, and

c.  Defendants' concealment of the true nature of their defective plumbing systems

134.  Defendants and their agents and distributors also misrepresented the true characteristics, standards, quality, and grade of their pex plumbing systems and their brass insert fittings by making the various statements about the alleged quality of the systems and brass insert fittings referenced herein.

135.  As a result of Defendants' practices relating to misrepresentation of the true characteristics, standards, quality, and grade of their pex plumbing systems and its brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged the first time it is used.

136.  As a result of Defendants' practices relating to misrepresentation of the true characteristics, standards, quality, and grade of their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

137.  That as a direct, proximate and foreseeable result of Defendants' violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

## COUNT IV

### (FALSE ADVERTISING)

138. Plaintiffs and proposed class members reallege the foregoing paragraphs,

inclusive, as though fully set forth herein.

139. That Minnesota Statutes § 325F.67 provides in part:

> Any person, firm, corporation, or association who, with intent to sell or in
> any way dispose of merchandise, …service, directly or indirectly, to the
> public, for sale or distribution, or with intent to increase the consumption
> thereof, or to induce the public in any manner to enter into any obligation
> relating thereto, makes, publishes, disseminates, circulates, or places
> before the public, or causes, directly or indirectly, to be made, published,
> disseminated, circulated, or places before the public, in this state, in a
> newspaper or other publication, or in the form of a book, notice, handbill,
> poster, bill, label, price tag, circular, pamphlet, program, or letter, or over
> any radio or television station, or in any other way, an advertisement of
> any sort regarding merchandise,…service or anything so offered to the
> public for use, consumption, purchase, or sale, which advertising contains
> any material assertion, representation or statement of fact which is untrue,
> deceptive, or misleading, shall, whether or not pecuniary or other specific
> damage to any other person occurs as a direct result thereof, be guilty of a
> misdemeanor, and any such act is declared to be a public nuisance and
> may be enjoined as such.

140. That by engaging in the conduct described herein, Defendants violated and

continue to violate Minn. Stat. § 325F.67.

141. Defendants' untrue, deceptive, and misleading assertions and representations

about their pex plumbing systems and brass insert fittings, include, by way of example and not

by limitation:

    a.    Defendants' fraudulent, misleading, and deceptive statements relating to the true
characteristics, standards, quality, and grade of Defendants' pex plumbing
systems and their brass insert fittings;

    b.    Defendants' fraud and misrepresentation by omission, of information about the
defective nature of their pex plumbing systems and brass insert fittings, the
improper design of the products, and Defendants' knowledge of those defects,
and

c.    Defendants' concealment of the true nature of their defective plumbing systems

142.    Defendants and their agents and distributors also made untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and their brass insert fittings by making the various statements about the alleged quality of the systems and brass insert fittings referenced herein.

143.    As a result of Defendants' untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged the first time it is used.

144.    As a result of Defendants' untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

145.    Plaintiffs seek to enjoin Defendants from untrue, deceptive, and misleading assertions and representations about the pex plumbing systems.

## COUNT V

### (NEGLIGENCE)

146.    Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

147.    Defendants were negligent in that they failed to use reasonable care when they created, marketed and sold their pex plumbing systems with F1807 brass insert fittings.

148.    As the manufacturer and seller of consumer products, Defendants owed a duty to Plaintiffs and the putative class members to provide a safe and quality product, and a duty to provide a product that would perform as it was advertised.  Defendants breached those duties.

149.    That as a direct and proximate result of Defendants' negligence, lack of care, and other wrongful acts, Plaintiffs and the putative class members sustained and will sustain damages.

150.    As a result of Defendants' negligence, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in their homes and structures a plumbing system that is defective and is damaged upon its initial use.

151.    As a result of Defendants' negligence, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

152.    That as a direct, proximate and foreseeable result of Defendants' negligence, Plaintiffs and the putative class members have been damaged, in the aggregate, in excess of $50,000.

## COUNT VI

### (NEGLIGENT FAILURE TO WARN)

153.    Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

154.    As the manufacturer and seller of a consumer product, Defendants had a duty to provide instructions for proper use of their products.

155.    As the manufacturer and seller of a consumer product, Defendants had a duty to warn of foreseeable dangers inherent in the proper use of their products and also had a duty to warn of dangers associated with foreseeable misuse of their products.

156.    Defendants became aware through various claims and reports that the brass insert fittings they were selling, distributing and advertising were subject to premature failures, problems and deterioration.

157.    Despite the fact that Defendants knew their product was defective and that their pex systems would not perform as advertised, warranted or otherwise expressly represented, Defendants continued to sell the products to the public without correction and, in fact, concealed from the public the fact that their pex system and brass insert fittings were defective, not durable and would begin to fail immediately upon being placed into service.

158.    Because the pex plumbing systems related to the habitability of persons' homes, Defendants had a duty to the consumer and to the public to disclose the defective nature of their system and not to conceal and suppress the defective nature of the product from Plaintiffs and the putative class members.

159.    Defendants, however, have engaged in a scheme to cover up the true nature of the problem with their brass insert fittings and plumbing systems.

160.    To this day, Defendants continue in this pattern of concealment and suppression by deliberately and knowingly misrepresenting to the public the true nature of the problems with the brass insert fittings. In fact, many members of the putative class are still unaware that their plumbing system is prematurely failing and will continue to fail due to its design and manufacturing defects.

161.    That to the extent Defendants claim in this lawsuit -- contrary to their prior judicial admission -- that the premature failures of their plumbing systems and brass insert fittings was the result of characteristics of the water chemistry present in Plaintiffs or the members of the putative class's water supply, Defendants failed to warn of those characteristics or dangers. As the manufacturer, seller and distributor of consumer products, Defendants had a duty to provide such information.

162.    That to the extent Defendants claim in this lawsuit – contrary to their prior judicial admissions -- that the premature failures of their plumbing systems and brass insert fittings was the result of characteristics of the water chemistry present in Plaintiffs or the members of the putative class's water supply, Defendants failed to provide Plaintiffs and members of the putative class with any instructions, information or warnings about the types of water conditions likely to cause premature failures. As the manufacturer and seller of consumer products, Defendants had a duty to provide such information.

163.    That as a direct, proximate and foreseeable result of Defendants' failure to warn, Plaintiffs and the proposed members of the class suffered damage.

164.    As a result of Defendants' failure to warn, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that has caused damage to property other than the system itself and that is damaged upon its initial use.

165.    As a result of Defendants' failure to warn, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace their plumbing systems and brass insert fittings, but also include, without limitation, consequential and incidental damages.

166. That as a direct, proximate and foreseeable result of Defendants' negligence, Plaintiffs and the putative class members have been damaged, in the aggregate, in excess of $50,000.

## COUNT VII

### (NEGLIGENT MISREPRESENTATION)

167. Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

168. In making material misrepresentations of material facts regarding the characteristics and capabilities of their pex plumbing system through their advertising and product information and through their internet websites, Defendants knew or should have known they were misrepresenting material facts and that Plaintiffs and the putative class (and also Defendants' distributors and installers, and through them, Plaintiffs and the putative class), would be relying on Defendants' representations to their detriment and damage.

169. In concealing material facts regarding the characteristics and capabilities of their pex plumbing systems, Defendants knew or should have known they were not disclosing material facts and that Plaintiffs and the putative class (and also Defendants' distributors and installers, and through them, Plaintiffs and the putative class), would be relying on Defendants' representations to their detriment and damage.

170. Defendants made the material misrepresentations in the regular course of their business without exercising reasonable care in communicating the true characteristics and capabilities of their pex plumbing system, and / or with the intent that Plaintiffs and the putative class members would rely on the false representations and purchase Defendants' pex plumbing systems.

171.     Plaintiffs and the putative class and / or their agents were unaware of the falsity of Defendants' representations, and as a result, they justifiably relied on them in purchasing Defendants' pex plumbing systems.

172.     That as a direct, proximate and foreseeable result of Defendants' failure to fully disclose material facts and Defendants' making misrepresentations of material fact, Plaintiffs and members of the putative class suffered damage.

173.     As a result of Defendants' misconduct, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective, that has caused damage to property other than the system itself and that is damaged upon its initial use.

174.     As a result of Defendants' misconduct, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace plumbing systems and brass insert fittings, but also include, without limitation, consequential and incidental damages.

175.     That as a direct, proximate and foreseeable result of Defendants' negligent misrepresentations, Plaintiffs and the putative class members have been damaged, in the aggregate, in excess of $50,000.

## COUNT VIII

### (BREACH OF EXPRESS WARRANTIES)

176.     Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

177.     Defendants made certain express warranties to distributors, plumbers and consumers about the goods they would provide.

178.     The express warranties provided by Defendants included warranties that Defendants would provide properly designed and manufactured plumbing systems and a lengthy warranty on such systems. Defendants also made numerous other express warranties as previously set forth in this Complaint.

179.     Plumbing distributors, plumbers, Plaintiffs and the putative class members relied upon Defendants' express warranties.

180.     Defendants breached such express warranties by providing defective plumbing systems that have or are reasonably certain to fail well before the warranted or useful life of the system. Defendants also breached their warranties to Plaintiffs and the putative class by refusing to honor their express warranties when presented with claims and damage covered by the terms of the warranty.

181.     Defendants also breached such express warranties by refusing to replumb Plaintiffs' home and the properties of other members of the putative class.

182.     That as a direct, proximate and foreseeable cause of Defendants' breach of express warranty, Plaintiffs and the putative class members sustained damages, in the aggregate, in excess of $50,000.

## COUNT IX

### (DECLARATORY AND INJUNCTIVE RELIEF)

183.     Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

184.     Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and any applicable statute or rule providing for declaratory and / or injunctive relief, Plaintiffs and the putative class members seek a declaratory judgment as follows:

a.  To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the warranties fail of their essential purpose because the remaining remedies provided therein are inadequate and deprive the class of the benefit of the bargain of their purchases, because Defendants at the time of sale and thereafter concealed and suppressed that the systems were defective, and because the provisions are otherwise unconscionable;

b.  To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the same is unconscionable because the warranties do not provide adequate remedies because the defect in the plumbing systems is latent and because the Plaintiffs lack sufficient bargaining power;

c.  To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is unlawful and unenforceable;

d.  To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is barred by Defendants' failure to provide the alleged warranty disclaimers at the time of sale of the product;

e.  Any releases obtained by Defendants, that did not otherwise provide full compensation to the putative class, were fraudulently induced, are unconscionable, were obtained by suppression and concealment, were obtained under duress by persons needing to repair their plumbing systems, and are null and void; and

f.  To the extent Defendants have had an adverse adjudication against them arising from the subject matter of this Complaint, that the putative class may use offensive collateral estoppel against Defendants for the rulings and determinations therein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray

for relief against Defendants as follows:

1.  Certification of this matter as a class action and appointing Plaintiffs and their counsel to represent the class;

2.  Compensation for damages suffered by Plaintiffs and the putative class members;

3.  Award of reasonable attorneys' fees and costs and disbursements incurred herein;

4.      Enjoin Defendants from denying warranty claims for failed brass insert fittings;

5.      Declaring the rights and obligations of the parties as prayed for; and

6.      Such other and further relief the Court deems just and equitable.

Dated: May 15, 2009.


                                LARSON · KING, LLP


                                Shawn M. Raiter (240424)
                                T. Joseph Snodgrass (231071)
                                2800 Wells Fargo Place
                                30 East 7th Street
                                St. Paul, MN 55101
                                Telephone:     (651)312-6500
                                Email: sraiter@larsonking.com


                                Charles J. LaDuca
                                CUNEO GILBERT & LADUCA, LLP
                                507 C Street, N.E.
                                Washington, DC 20002
                                Telephone:     (202) 789-3960
                                Email: CharlesL@cuneolaw.com


                                Robert K. Shelquist #21310X
                                LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                100 Washington Avenue South, Suite 2200
                                Minneapolis, MN 55401-2197
                                Telephone:     (612) 339-6900
                                Email: rshelquist@locklaw.com


                                David L. Black
                                Perkins Coie LLP
                                1899 Wynkoop Street, Suite 700
                                Denver, CO  80202-1043
                                Telephone:     (303) 291-2309
                                Email: DBlack@perkinscoie.com

Michael A. McShane
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105-1906
Telephone:     (415) 568-2555
Email: MMcShane@audetlaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE
PUTATIVE CLASS**

Lk1256420