UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JOHN and HELEN McGREGOR, and AUTO-OWNERS INSURANCE COMPANY, as Subrogee of NORTH ANOKA PLUMBING, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Court No: 09 CV 1136ADM\JJK |
| Plaintiffs, | ) ) | **DEFENDANT UPONOR, INC.'S** |
| vs. | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'** |
| UPONOR, INC., successor to Uponor North America, Inc., and RADIANT TECHNOLOGY, INC., | ) ) ) ) | **FIRST AMENDED COMPLAINT** |
| Defendants. | ) ) ) | |

Defendant, UPONOR, INC. ("UPONOR"), incorrectly sued as successor to Uponor North America, Inc., by and through its attorneys, JOHN R. SCHLEITER and HOWARD L. LIEBER of FISHER KANARIS, P.C., and BRADLEY D. FISHER of FOLEY MANSFIELD, PLLP., for its Memorandum of Law submitted in support of its Motion to Dismiss Plaintiffs' First Amended Complaint, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) states as follows:

## I.    FACTUAL BACKGROUND

The original Plaintiffs, John and Helen McGregor ("the McGregors") have filed a nine count complaint against UPONOR and Radiant Technology, Inc. ("RTI") seeking to state a purported class action on behalf of themselves and other individuals whose homes contain a plumbing system that incorporates brass insert fittings identified by an industry standard known as ASTM F1807. It is Plaintiffs' contention that the F1807 fittings are

". . . susceptible to premature failure through various processes like dezincification and stress corrosion cracking". *See* Paragraph 46 of Plaintiffs' Complaint, a copy of which is attached hereto as Exhibit "A".

In response to the McGregors' filing of the original Complaint, UPONOR filed a Motion to Dismiss. That Motion to Dismiss, and its supporting Memorandum of Law, detailed how Counts I-IV and VI failed to set forth allegations with the specificity required by Federal Rule of Civil Procedure 9(b). UPONOR's Motion to Dismiss and supporting Memorandum of Law also sought dismissal of Counts V, VII, VIII and IX pursuant to Rule 12(b)(6) as those counts did not set forth viable causes of action pursuant to applicable Minnesota law.

In an acknowledgement of the deficiencies contained in the original Complaint, the McGregors chose not to present a substantive response to UPONOR's Motion to Dismiss, but rather to file a First Amended Complaint which added a new Plaintiff (Auto-Owners Insurance Company, as Subrogee of North Anoka Plumbing), multiple new paragraphs apparently intended to address the Rule 9(b) deficiencies in the original Complaint and to revise certain of the allegations in an effort to circumvent specific deficiencies noted by UPONOR in its Motion to Dismiss and supporting Memorandum of Law. However, the Amended Complaint maintains the same nine causes of action as set forth in the original Complaint. As set forth below, the changes incorporated in the Amended Complaint do not cure the deficiencies identified by UPONOR with respect to the original Complaint, and the Amended Complaint is equally subject to dismissal.

## A.   Factual Allegations Of The First Amended Complaint

Plaintiffs' have alleged that RTI sold a plumbing system that utilized brass insert fittings that "purportedly conformed to ASTM standard F1807". *See* Paragraph 36 of Plaintiffs' First Amended Complaint a copy of which is attached hereto as Exhibit "B". Plaintiffs' have further alleged that UPONOR purchased RTI, thereafter in early 2005 UPONOR closed RTI, and then "continued to sell the F1807 fittings under UPONOR's own name or label". *See* Paragraphs 35, 42 and 43 of Exhibit "B".

Plaintiffs have also alleged that the Defendants were negligent in the design and manufacture of the brass insert fittings and knew, or should have known, that the brass alloy ". . . made the fittings susceptible to premature failure through various processes like dezincification and stress corrosion cracking". *See* Paragraphs 45 and 46 of Exhibit "B".

The McGregors allege that they, through their plumber, purchased a plumbing system, which contained F1807 fittings and after installation of that plumbing system "several" of the fittings failed causing damage to their home. *See* Paragraphs 139 through 143 of Exhibit "B". However, the McGregors acknowledge at Paragraphs 141 and 143 of the Amended Complaint that they submitted warranty claims to UPONOR related to those failures, UPONOR honored those warranty claims, and compensated Plaintiffs for the damage they claimed to have sustained. *See* Paragraphs 141 and 143 of Exhibit "B". Subsequent to the alleged failure of those fittings, the McGregors now allege, unlike in their original Complaint, that they asked UPONOR "to replace all

UPONOR/RTI fittings in their home" and UPONOR refused that request.   (Emphasis added). *See* Paragraph 144 of Exhibit "B".

Auto-Owners has alleged in the Amended Complaint that its insured, North Anoka Plumbing, purchased and installed the fittings referred to in the Amended Complaint, certain of the fittings failed, and that Auto-Owners paid certain of the claims relating to those fittings.  *See* Paragraphs 146 and 149 of Exhibit "B".  Auto-Owners specifically identifies two such claims in the Amended Complaint: a claim involving Gold Star Kennel and a claim involving Aaron and Trisha Peterson.  *See* Paragraph 151 of Exhibit "B".  Auto-Owners asserts that UPONOR did not "honor" these claims but rather "tried to mislead Auto-Owners into believing that the Defendants were not the issuers of the warranty provided with the brass fittings . . .". *See* Paragraph 153 of Exhibit "B".  As will be shown in Section I. B. below, this statement by Auto-Owners is not only inaccurate, but appears to be part of an effort by the Plaintiffs to mislead the Court or, at a minimum, constitutes a failure to fulfill their obligation to investigate the facts of their claim to avoid misleading the Court and the public.

Additionally, at Paragraphs 86 through 120 Plaintiffs' claim to set forth allegations under the generic heading of "False Advertising of PEX Plumbing Systems", and at Paragraphs 121-132 claim to state allegations entitled "Defendants' Omissions About the Quality of Their Plumb-Pex Fittings".   See Exhibit "B".   However at no point in Paragraphs 86-132, or for that matter at any other point in the Amended Complaint, despite Plaintiffs' now apparent realization of the requirements of Rule 9(b), do they specifically set forth any facts, as opposed to conclusory assertions, showing who made

the purported representations, when those purported representations were made, or that the representations were false/untrue at the time they were made. Nor do the Plaintiffs make any allegations setting forth what conduct UPONOR supposedly undertook, as opposed to RTI. Simply making conclusory assertions, as Plaintiffs now appear to be attempting, is insufficient to satisfy the requirements of Rule 9(b) and the cases construing that Rule.

Furthermore, at no point in the Amended Complaint are facts alleged that the Plaintiffs actually saw, read, or were even aware of, any of the matters listed in Paragraphs 86 through 120 of the Amended Complaint. On the contrary, the McGregors allege at Paragraph 139 that "[a]fter receiving and relying on" the purported misrepresentations and omissions, their unidentified plumber purchased "Defendants' pex plumbing systems", and "[t]hrough their licensed plumber, the McGregors purchased and had a pex plumbing system installed in their home located in Meade, Washington". *See* Paragraph 139 of Exhibit "B".

As for Auto-Owners, the allegations are equally devoid of any factual foundation and constitute nothing more than conclusions. Thus at Paragraph 146, it is alleged that "[a]fter receiving and relying" upon the purported misrepresentations and omissions, "North Anoka Plumbing recommended, purchased and installed Defendants' pex plumbing systems in the homes and businesses of its customers". *See* Paragraph 146 of Exhibit "B".

Plaintiffs' Amended Complaint, like the original Complaint, contains nine counts. Count 1 is styled "Consumer Fraud"; Count II is styled "Unlawful Trade Practices",

Count III is styled "Deceptive Trade Practices"; Count IV is styled "False Advertising"; Count V is styled "Negligence"; Count VI is styled "Negligent Failure to Warn"; Count VII is styled "Negligent Misrepresentation"; Count VIII is styled "Breach of Express Warranties"; and Count IX is styled "Declaratory and Injunctive Relief". Counts I-IV each specifically contain allegations/assertions of "fraud". Count VI, in a conclusory fashion, alleges that the Defendants "engaged in a scheme to cover up the true nature of the problems with their brass insert fittings and plumbing systems". *See* Paragraph 226 of Exhibit "B".

The allegations being made in Counts I through IV and Count VI are subject to dismissal for failure to comply with pleading requirements of Rule 9(b). Additionally, Counts V, VII, VIII, and IX are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B.  Misstatements/Misrepresentations In The Amended Complaint

While UPONOR believes that the Amended Complaint contains a substantial number of factual inaccuracies, which are too numerous to list herein, certain of those misstatements/misrepresentations must be brought to the Court's attention as they are central to several of the counts of the Amended Complaint and serve as a further basis for the Amended Complaint to be dismissed.

### i.  Allegations Contained in Paragraphs 151-153.

In paragraphs 151-153 of the Amended Complaint the Plaintiffs make reference to claims made by Gold Star Kennels and Aaron and Trisha Peterson. It is further alleged that UPONOR refused to "honor the claims for the fittings. . ." (*See* Paragraph 152), and

that UPONOR ". . . purposely tried to mislead Auto-Owners into believing that the Defendants were not the issuers of the warranty provided with the brass fittings they sold under their Plumb-Pex trade name." *See* Paragraph 153 of Exhibit "B". Plaintiffs further claim that Auto-Owners " . . . has not been reimbursed . . ." in connection with these claims. See Paragraph 154 of Exhibit "B".

The allegations contained in paragraphs 152 and 153 are cited in Counts I and II as support for the claims relating to "warranty related misconduct" and "lying about their lack of obligations for warranty claims . . .". See Paragraphs 175 c. and 185 c. (sic) of Exhibit "B".

In fact, UPONOR paid Auto-Owners $15,227.26 in payment of the Gold Star Kennels claim and received a General Release executed by both a representative of Gold Star Kennels and Auto-Owners dated September 4, 2008. Copies of the settlement check and the General Release executed by Auto-Owners are attached hereto as Exhibit "C". These materials clearly were in the possession of Auto-Owners prior to the preparation of the Amended Complaint and prior to the making of the inflammatory and unfounded claim that UPONOR was attempting to mislead Auto-Owners regarding its warranty obligations. Whether this was an intentional attempt to mislead the Court and the public or was rather simply a negligent failure to properly investigate a claim/allegation prior to submitting the document, UPONOR will leave to the Court to decide.

Along the same lines, Plaintiffs' make reference in paragraph 151 to the claim of Aaron and Trisha Peterson. Once again, the implication is that UPONOR has refused to honor a warranty claim relating to the Petersons' home. In fact, UPONOR has paid the

Petersons for their warranty claim and the Petersons have executed a General Release in favor of UPONOR in exchange for that payment. A copy of the General Release and the payment made by UPONOR to the Petersons is attached hereto as Exhibit "D". Uponor has also made payment to North Anoka Plumbing, Auto-Owners' insured, in connection with the Peterson claim. See Exhibit "D".

Once again, the evidence of the payment of the Peterson warranty claim undermines any assertion that UPONOR has not honored its warranty obligations with respect to the Peterson home and reflects the further efforts of the Plaintiffs to be less than candid in their pleadings filed in this matter.

Consequently, the allegations contained in paragraphs 151-153 are baseless and undermine the claims set forth in Counts I and II.

**ii.  Allegations Relating To The McGregors' Request For Removal Of Fittings**

At paragraph 99 of the McGregors' original Complaint they allege that they ". . . asked UPONOR to replace all fittings in their home." See Exhibit "A".  In its Motion to Dismiss, UPONOR established that nowhere in the Complaint was it alleged that all of the fittings in the McGregors' home were supplied by UPONOR or covered by UPONOR's warranty.  In the Amended Complaint, the McGregors have now revised their allegation in this regard. At paragraph 144 of the Amended Complaint, the McGregors now claim that they "asked UPONOR to replace all **UPONOR/RTI** fittings that remained in their home." (Emphasis added.) See Exhibit "B".  Plaintiffs have failed to attach to either the original or Amended Complaint any request for replacement of fittings submitted by the McGregors to UPONOR.

Clearly, the McGregors knew at the time they met with their attorneys to discuss the facts of this matter, and prior to the filing of the original Complaint, what their request to UPONOR was in this regard. The fact that they have now changed the allegation made in paragraph 144, regarding what they asked UPONOR to replace, serves to raise questions regarding the veracity and good faith of the allegations contained in the Amended Complaint and whether they are simply tailoring/inventing allegations to circumvent issues raised by UPONOR.

## II.   **LEGAL ARGUMENT**

A.   Counts I Through IV and VI Are Subject To Dismissal For Failure to Comply With Rule 9(b) Pleading Requirements.

   1.   Applicable Law Regarding Pleading Requirements Pursuant To Rule 9(b)

It has previously been held by the Eighth Circuit Court of Appeals that Rule 9(b) requires that circumstances constituting fraud be pled with particularity. *See* Drobnak v. Andersen Corporation, 561 F.3d 778 (8th Cir. 2009). In Drobnak, the 8th Circuit Court stated that in order to satisfy the requirements of Rule 9(b) a complaint ". . . must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby". Drobnak supra *citing* Schaller Telephone Company v. Golden Sky Systems, Inc., 298 F.3d 736 (8th Cir. 2002). The 8th Circuit further ruled that "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule". See Drobnak, *supra* and Schaller, *supra*. Finally, in Drobnak, the 8th Circuit specifically stated that to satisfy the pleading requirement of Rule 9(b) a complaint must plead the "who, what, where, when and how of the alleged fraud".

Furthermore, it is well settled that "merely pointing to statements and alleging their falsity does not satisfy Rule 9(b)." *See* <u>In Re: Enron Corporation v. Marathon Electric Manufacturing Corporation</u>, 367 B.R. 384 (S.D. New York 2007) a copy of which is attached hereto as Exhibit "E", citing <u>Richardson v. Reliance National Indemnity Company</u>, 2000 U.S. Dist. LEXIS 2838, (N.D. Cal. 2000) a copy of which is attached hereto as Exhibit "F". On the contrary, as the 9th Circuit Court of Appeals has explained, a statement is not necessarily fraudulent merely because it is contradicted by later – discovered facts. *See* <u>In Re: GlenFed Inc.</u>, 42 F.3d 1541 (9th Cir. 1994). Rule 9(b) requires a plaintiff to plead facts establishing the falsity of a statement at the time the statement is made. *See* <u>In Re: Enron Corporation</u>, and <u>Richardson</u>, *supra*. Thus Rule 9(b) ". . . precludes plaintiff from simply pointing to a statement by a defendant, noting that the content of the statement 'conflicts with the current state of facts' and concluding that 'the charged statement must have been false' at the time it was made". <u>In Re: Enron Corporation</u> and <u>Richardson</u> *supra*.

Finally, Rule 9(b) has applicability to not only allegations of fraud, but also allegations of conspiracy, "averments to conditions of mind", and referrals to plans and schemes. Thus in <u>Hayduk,v. Lanna</u>, 775 F.2d 441 (1st Cir. 1985) the Court stated that ". . . mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated".

The allegations of Plaintiffs' Amended Complaint relating to Counts I through IV and Count VI fail to comply with the requirements of Rule 9(b) and, consequently, are subject to dismissal.

2.    The Allegations Of Counts I Through IV Fail To Meet The Requirement Of Rule 9(b) And Are Subject to Dismissal.

Counts I through IV seek to state causes of action pursuant to Minnesota statutory consumer protection laws. Each of those counts, with minor variations, contains a paragraph setting forth conclusory statements referencing "Defendants' fraudulent, misleading and deceptive statements and practices", "Defendants' warranty related misconduct, including their fraudulent, deceptive and unfair practice of lying about unenforceable warranty limitations", "Defendants' fraud and misrepresentation by omission of information about the defective nature of Defendants' pex plumbing systems and their brass insert fittings. . .". *See* for example Paragraph 175, including sub-paragraphs a through e, of Count I; Paragraph 185 – including sub-paragraphs a through e of Count II; Paragraph 196 – including sub-paragraphs a through c – of Count III; and Paragraph 207 – including sub-paragraphs a through c – of Count IV in Exhibit "B". While Counts I through IV of the Amended Complaint incorporate allegations previously made in that pleading, each of those Counts fails to comply with Rule 9(b)'s heightened pleading requirements.

Specifically, nowhere in the Amended Complaint are facts (as opposed to conclusions) stated to show exactly who made the purported wrongful statements; when those statements were made, or any facts alleged to establish that the statements were

known to be false at the time they were made.  On the contrary, Plaintiffs have not attached to the Amended Complaint any purported examples of the claimed "false advertising". Although Plaintiffs repeatedly make reference to a purported website of RTI, they do not provide any text from the website. Furthermore, while the Plaintiffs make reference to two former employees of RTI by name, Frank Bilotta and David Holdorf, they simply state as a bare conclusion that "[e]ach of the false statements and misrepresentations made in the preceding paragraph were repeatedly made by Defendants' sales personnel . . . in the course of virtually every sale of the brass fittings at issue here." *See* paragraph 97 of Exhibit "B". Not a single factual statement is made in the Amended Complaint to support the foregoing conclusions.  Thus there are no specific facts pled or documents supplied that reflect statements by any UPONOR/RTI employee, including Mr. Bilotta and Mr. Holdorf. There are no facts set out to reflect when these statements were made, who the statements were made to and whether the statements actually played a roll in any decision whether to buy this product.

Furthermore, even a cursory examination of the allegations which supposedly constitute the "false advertising" reflect the lack of facts and foundation for those allegations. At paragraphs 86-120 Plaintiffs supposedly set forth the allegations being offered to support the claims which fall within the ambit of Rule 9(b).  Plaintiffs make much of the fact that in 1997 RTI was represented to be a company "in the business of selling radiant heating systems". However, the next year, 1998, RTI began claiming that it was "a leader in the manufacture of both plumbing and heating products". See Paragraph 88 of Exhibit "B".  Despite Plaintiffs attempts to portray this change as

somehow sinister, Plaintiffs' own Amended Complaint alleges at paragraph 35 that "in approximately 1997 UPONOR purchased RTI and that after the purchase RTI began selling the pex plumbing system." See Paragraph 36 of Exhibit "B". The Amended Complaint further alleges that UPONOR and RTI "acted in concert with each other". See Paragraph 9 of Exhibit "B". Nowhere is it alleged that UPONOR did not have a substantial history or experience with plumbing systems or that UPONOR's knowledge in that regard was not shared with RTI after 1997.

Along the same lines, the Amended Complaint repeatedly states that UPONOR/RTI ". . . bought the fittings from manufacturers in Asia" and therefore the fittings were somehow universally defective because of that source. Yet the Amended Complaint fails to provide any facts to support an assertion that either: a) <u>all</u> F1807 fittings were purchased from Asian manufacturers, or b) that all fittings supplied by Asian companies were defective.  While the Amended Complaint goes to great lengths to make reference to UPONOR's suit against a supplier that provided certain fittings manufactured at a Korean facility, UPONOR never alleged in that lawsuit that either all of the fittings it received from the Asian supplier were defective, that Asian suppliers were the only source for F1807 fittings.  Thus the Amended Complaint, once again, asserts conclusions that lack any factual basis as required by Rule 9(b) and the cases cited by UPONOR construing it.

The Amended Complaint further seeks to claim that the Defendants must have known statements regarding the quality of the fittings were false because RTI did not do quality testing in 2002. See for example Paragraph 94 of Exhibit "B".  Yet Plaintiffs do

not allege that UPONOR did no testing, or that RTI had no access to any testing that UPONOR may have done, given the fact that Plaintiffs claim that UPONOR and RTI "acted in concert". See Paragraph 9 of Exhibit "B".

With the foregoing allegations in mind, it is apparent that Counts I-IV and VI do not comply with the pleading requirements of Rule 9(b). Thus in Paragraph 175 b, Plaintiffs refer to "Defendants' warranty related misconduct, including their fraudulent, deceptive and unfair practice about lying about their lack of obligations for warranty for warranty claims . . .". As a threshold matter, Plaintiffs have set forth no facts in the Amended Complaint to explain what constitutes "warranty related misconduct". The McGregors have alleged that they submitted a warranty claim and that warranty claim was honored. Auto-Owners alleged that its insured had two claims and both of those claims were paid by UPONOR—one directly to Auto-Owners and the other to the homeowner and the insured. See Exhibits "C" and "D". What Plaintiffs consider to constitute "warranty related misconduct" remains a mystery.

Furthermore, that same sub-paragraph makes reference to a fraudulent practice of "lying about their lack of obligations for warranty claims . . .". Yet nowhere in the Amended Complaint do the Plaintiffs set forth any facts stating what the specific conduct is that constitutes "lying about their lack of obligations for warranty claims . . .". In fact the exhibits UPONOR has submitted herein reflect facts completely to the contrary. Those same allegations are not only set forth in Count I but also carry forward into Count II as Paragraph 185 c (sic).

Furthermore, in sub-paragraph c of Paragraphs 175 and 185, in Counts I and II respectively, Plaintiffs have alleged fraud and misrepresentation by omission relating to "the defective nature of their pex plumbing system and brass insert fittings. . .". By way of this allegation, Plaintiffs appear to be claiming that there is a defect in the plumbing system, separate and apart from the brass insert fittings.   The Amended Complaint is devoid of any allegation that the plumbing system itself did not function properly, caused any form of damage to Plaintiffs, or failed in its operation.  Thus it goes unstated what would constitute the fraud and misrepresentation relating to the plumbing system itself, separate from Plaintiffs' claims relating to brass insert fittings. Additional examples of the Plaintiffs' failure to plead with specificity, are present in sub-paragraph d of Paragraphs 175 and 185 in Counts I and II.  In this sub-paragraph Plaintiffs set forth allegations regarding "Defendants' concealment of the true nature of their defective plumbing system".

Once again nowhere in the Amended Complaint do Plaintiffs provide any facts to specifically identify and support their allegations regarding the purported concealment, when the purported concealment occurred, or what actions constitute the purported concealment. The allegations contained in paragraphs 121-132 suffer from the same lack of factual specificity and conclusory nature as those relating to the purported "false advertising" in paragraphs 88-120. Just as the court stated in Hayduk, supra., it does not matter how many times a deficient allegation is made, it remains deficient each time.

With respect to Counts III and IV of the Amended Complaint, Paragraphs 196 and 207 are relevant.  The same principles discussed above regarding Paragraphs 175 and 185

are applicable to paragraphs 196 and 207.  The allegations contained in sub-paragraphs a-c of Paragraphs 196 and 207 mirror those set forth in Paragraphs 175 and 185.  UPONOR hereby adopts and reiterates the points previously made with respect to the allegations set forth in Counts I and II regarding the allegations contained in Counts III and IV.

>       3.       Count VI Fails To Comply With The Pleading Requirements Of Rule 9(b).

While the allegations contained in Count VI do not directly mirror those set forth in Counts I through IV, nevertheless they are equally subject to dismissal for failure to comply with the heightened pleading requirements of Rule 9(b).

Thus although Count VI is styled "negligent failure to warn", that Count contains allegations that the "Defendants. . . concealed from the public the fact that their pex system and brass insert fittings were defective, not durable and would begin to fail immediately upon being placed into service".  *See* Paragraph 224 of Exhibit "B". Paragraph 225 also alleges that Defendants had a duty "not to conceal and suppress the defective nature of the product from Plaintiffs and putative class members".  *See* Paragraph 225 of Exhibit "B".  Nowhere in the Amended Complaint do Plaintiffs offer any facts or basis for the conclusory allegations contained in paragraphs 121-132, which Plaintiffs presumably intended to serve as a remedy for the lack of any allegations of omission in the original Complaint. These new allegations do not satisfy the requirements of Rule 9(b) as they do nothing more than assert conclusions and fail to set forth any actual facts that support the conclusions.

Even more troubling than the inflammatory allegations referenced above, are the conclusory and unsupported allegations contained in Paragraphs 226 and 227 of

Count VI. Specifically, in Paragraph 226 Plaintiffs' allege that the Defendants ". . . have engaged in a scheme to cover up the true nature of the problem with their brass insert fittings and plumbing systems". Additionally, in Paragraph 227 it is stated that the Defendants "continue in this pattern of concealment and suppression". Despite the specific reference in Paragraph 226 to a "scheme", the Plaintiffs fail to allege any facts such as meetings, telephone conferences, or any specific indicia, of activities planned/designed to "conceal and suppress" the "true nature of the problem". Plaintiffs' sole reference is to a "talking points" memorandum which does not reflect the existence of a "scheme" to intentionally deceive the Plaintiffs, or anyone else. The fact that Plaintiffs needed, in paragraph 226, to cite to UPONOR's interest in having a protective order entered constitutes evidence of a "scheme" reflects the utter lack of any basis for this allegation/claim. As a result of the foregoing, Count VI fails to comply with the pleading requirements of Rule 9(b).

In light of the foregoing applicable law, and the allegations of Plaintiffs' Amended Complaint, it is clear that Counts I through IV and Count VI fail to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and those counts are subject to dismissal.

B.    Count V Is Subject To Dismissal Pursuant To The Economic Loss Doctrine.

As mentioned above, Count V of Plaintiffs' Amended Complaint seeks to state a negligence cause of action. Specifically, Plaintiffs state that UPONOR was negligent in failing to ". . . use reasonable care when they created, marketed and sold their pex plumbing systems with F1807 brass insert fitting". See Paragraph 214 of Exhibit "B".

It has previously been held that the Economic Loss Doctrine provides that losses arising out of commercial transactions are generally unrecoverable in tort unless there is personal injury or damage to property other than the goods themselves. Milwaukee Mutual Insurance Company v. Deere & Company, Inc., 205 U.S. Dist. LEXIS 37134 (D.C. Mn. 2005), a copy of which is attached hereto as Exhibit "G". Thus the Economic Loss Doctrine provides that ". . . where the damage is to the product itself and includes no damage to other property, then the Uniform Commercial Code is the exclusive remedy – precluding tort claims". *See* Milwaukee Mutual Insurance Company, *supra* and cases cited therein. In the present case, the Economic Loss Doctrine is applicable to Count V of Plaintiffs' Amended Complaint.

The McGregors allege at Paragraph 140 of the Amended Complaint that certain of the F1807 fittings installed in their home failed "causing damage to property other than the pex plumbing system". However, at Paragraphs 141 and 143 the McGregors admit that they submitted warranty claims to UPONOR "for these failures" and UPONOR "compensated Plaintiffs for the damage caused by the failure". *See* Exhibit "B". The purported damage "to other property" has already been paid by UPONOR prior to this lawsuit being filed. The McGregors further acknowledge in Paragraph 99 of their original Complaint that they "asked UPONOR to replace all fittings in their home" and "UPONOR has refused". *See* Exhibit "A". However now, in the Amended Complaint, they claim that they asked UPONOR to replace all of the "UPONOR/RTI" fittings in their home. See Paragraph 144 of Exhibit "B". As UPONOR has already noted, these

new allegation rings hollow given the prior allegations made by the McGregors in their original Complaint.

Furthermore, with respect to Auto-Owners, UPONOR has established that the claims referred to in the Amended Complaint have been paid already and no facts have been offered to indicate that any damage to "other property" has occurred.

Thus, based on the allegations contained in Plaintiffs' Amended Complaint, it is clear that the McGregors' dispute with UPONOR relates solely to their request that UPONOR replace fittings in their home, and the Auto-Owner's claims have already been paid/compromise or lack any allegation of damage to "other property". Since the fittings are the item that the McGregors have claimed to be defective, and constitute the product which is the subject of the commercial transaction, the Economic Loss Doctrine is applicable to Plaintiffs' negligence claim against UPONOR and Count V is subject to dismissal.

C.      Count VII Is Subject to Dismissal Pursuant to Rule 12(b)(6) For Failure to Sufficiently Plead a Negligent Misrepresentation Cause of Action.

In Count VII Plaintiffs' seek to state a cause of action for "negligent misrepresentation". It is recognized in Minnesota that to state such a cause of action a plaintiff must establish "reliance" on the allegedly false representation. Yarrington v. Solvay Pharmaceuticals, Inc., 206 LEXIS 1102 (Minn. Ct. App. 2006) citing In Re: Strid, 487 N.W.2d 891 and Florenzano v. Olson, 387 N.W.2d 168 (Minnesota 1986). A copy of Yarrington is attached hereto as Exhibit "H". Additionally, in order to maintain a

negligent misrepresentation claim, a plaintiff must show damages attributable to the false representation. *See* Yarrington, and Florenzano *supra*.

In the present case, Plaintiffs fail to set forth any facts to reflect reliance, nor have Plaintiffs set forth any allegations to establish that they currently have any damages as a result of the purported negligent misrepresentation.   At no point in the Amended Complaint is it specifically alleged that the McGregors, the plumbers at North Anoka Plumbing or even anyone acting on their behalf, actually read, saw, or heard any purported material facts relating to the pex plumbing system in general, or the F1807 fittings in particular. Rather the Amended Complaint simply contains the conclusory statement that the McGregors' unnamed plumber relied on the statements and that North Anoka Plumbing did so as well. The Amended Complaint artfully avoids any reference to materials purportedly reviewed, shown to, or discussed with the Plaintiffs' themselves.

Although the Amended Complaint contains a section entitled "Plaintiffs' Circumstances" at Paragraphs 139 through 156, nowhere in those paragraphs, or anywhere else, do the Plaintiffs state facts reflecting that they actually saw, read, heard, or otherwise became aware of any advertising, product information or internet websites containing information regarding the pex plumbing system or F1807 fittings.  Thus the Amended Complaint fails to set forth any allegations reflecting reliance, which would support the negligent misrepresentation claim they seek to state in Count VII.

Additionally, Count VII is defective as Plaintiffs have failed to allege any damages sustained as a result of the purported "negligent misrepresentation".  As noted previously, Paragraph 141 and 143 of the Amended Complaint establish that, to the

extent it is claimed that F1807 fittings installed in the McGregors' home have failed, UPONOR has compensated the McGegors for the damage caused by the failure. Furthermore, the facts reflect that UPONOR has made payment to Auto-Owners for one of the claims referenced and has made payment to the homeowner and insured for the other claim related to Auto-Owners.

In light of the foregoing Count VII is subject to dismissal pursuant to Rule 12(b)(6).

D.    <u>Count VIII Is Subject to Dismissal Pursuant to Rule 12(b)(6).</u>

Count VIII of Plaintiffs' Amended Complaint alleges that the "Defendants" made express warranties with respect to the plumbing system at issue. See Paragraph 244 of Exhibit "B". Plaintiffs fail to attach to their Amended Complaint any written warranty provided by UPONOR with respect to either the F1807 fittings in particular or the plumbing system in general. At Paragraph 247 Plaintiffs allege that UPONOR has breached "their warranties to Plaintiffs and the putative class by refusing to honor their express warranties when presented with claims and damage covered by the terms of the warranty". Furthermore, Paragraph 249 alleges that the Defendants ". . . breached such express warranties by refusing to re-plumb Plaintiffs' home and the properties of other members of the putative class".

In order to establish a breach of warranty claim, a party must show the existence of a warranty, a breach of that warranty agreement, and evidence of a causal connection between the breach and the damages allegedly suffered. <u>Peterson v. Bendix Home Systems, Inc</u>, 318 N.W.2d 50 (Minn. 1982).

In the present case, the allegations contained in the Amended Complaint do not set forth a breach of any warranty issued by UPONOR, nor do those allegations establish any damages on the part of these Plaintiffs.  On the contrary, Plaintiffs have alleged that UPONOR breached warranties "by refusing to honor their express warranties when presented with claims and damage covered by the terms of the warranty".  This allegation is set forth in Paragraph 247, despite the fact that in Paragraphs 141 and 143 it is stated that the McGregors submitted a warranty claim to UPONOR and that UPONOR "compensated Plaintiffs for the damage caused by the failure".  As reflected in Exhibits "C" and "D", the facts also reflect that UPONOR has paid warranty claims relating to Auto-Owners as well.  Thus the allegations contained in Count VIII are undermined by other allegations set forth in the Amended Complaint and facts that the Plaintiffs have chosen not to share with the Court in the Amended Complaint.

Furthermore, Plaintiffs do not allege that they have sustained any damages which would satisfy the damage element necessary to maintain a breach of warranty claim.  As alleged by the McGregors, the purported damage they sustained has been covered by UPONOR's warranty and they have been compensated for that damage.  The facts reflect that Auto-Owners received payment directly from UPONOR as well. The McGregors do not allege that they have submitted a warranty claim for damage to either a fitting or their home, and that UPONOR has failed to honor any such warranty claim.  On the contrary, they have simply alleged that UPONOR refused to replace all of the fittings in their home.  *See* Paragraph 144 and 249.

For its part, although Auto-Owners appears to be claiming that it has submitted a warranty claim and UPONOR has not paid it, the facts clearly show that UPONOR has paid monies to Auto-Owners, its insured and homeowners who have claimed the failure of fittings installed by Auto-Owners' insured. The Amended Complaint offers no evidence to show damages to Auto-Owners from a purportedly unpaid warranty claim.

Based upon the foregoing law and allegations set forth in the Amended Complaint, Plaintiffs have failed to set forth any allegations reflecting a causal connection between a purported breach of warranty and their having sustained uncompensated damages.   In light of the foregoing Count VIII is subject to dismissal.

E.    Count IX Is Subject to Dismissal Pursuant to Rule 12(b)(6) As There Is An Adequate Remedy At Law.

Count IX is styled "Declaratory and Injunctive Relief".   Within Count IX, at Paragraph 252, Plaintiffs have set forth in a conclusory fashion sub-paragraphs a-f seeking some form of an order by this Court against potential allegations or arguments that UPONOR may make at a future time.   A review of the statements contained in sub-paragraphs a-f of paragraph 252 reflects the speculative and unsupported nature of those allegations justifying, in and of itself, the dismissal of Count IX.

However, Counts IX is subject to dismissal based upon the fact that Plaintiffs are seeking equitable relief and such remedies are only available when no adequate legal remedy exists. *See* Drobnak, *supra* citing ServiceMaster of St. Cloud v. GAB Business Services, Inc., 544 N.W.2d 302 (Minn. 1996) and Southtown Plumbing Inc. v. Har-Ned Lumber Inc., 493 N.W.2d 137 (Minn. Ct. App. 1992).   In Drobnak, the Court noted that

the plaintiffs in that matter would have had an adequate legal remedy against the defendant if they had adhered to the statutory notice and Rule 9(b) pleading requirements. Consequently, claims for injunctive and other equitable relief were appropriately dismissed with prejudice.

In the present case Plaintiffs, by their own admission, are seeking equitable relief in Count IX. As is apparent from the allegations contained in Counts I through VIII, with the exception of Count IV, Plaintiffs are seeking to recover monetary damages. Count IV, in Paragraph 212, also seeks an injunction with respect to advertising by UPONOR relating to fittings that Plaintiffs themselves concede UPONOR is no longer selling. *See* Paragraphs 212 and 58 of the Amended Complaint. Given the fact that an adequate remedy at law exists, Plaintiffs are not entitled to maintain a claim for equitable remedies in this case.

Thus UPONOR seeks dismissal of Count IX of Plaintiffs' Amended Complaint, as well as the purported relief sought in Paragraph 212 of Count IV relating to an injunction.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, UPONOR seeks dismissal of Counts I through IV and Count VI pursuant to Rule 9(b) and dismissal of Counts V and VII through IX pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

WHEREFORE Defendant, UPONOR, INC. prays that this Court will grant its Motion to Dismiss Plaintiffs' Amended Complaint for the reasons set forth above, and grant such other and further relief as the Court may deem appropriate.

**UPONOR, INC.**

By:   /s/Howard L. Lieber
John R. Schleiter, Esq.
Howard L. Lieber, Esq.
Fisher Kanaris, P.C.
200 South Wacker Drive, Suite 2200
Chicago, IL 60606
(312) 474-1400 (Telephone)
(312) 474-1410 (Fax)

Bradley D. Fisher
Foley & Mansfield, PLLP
250 Marquette Avenue
Suite 1200
Minneapolis, MN 55401
(612) 349-9845 (Telephone)
(612) 338-8690 (Fax)