UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John and Helen McGregor and Auto-Owners
Insurance Company, as subrogee of North
Anoka Plumbing, on behalf of themselves and
all others similarly situated,

                Plaintiffs,                **MEMORANDUM OPINION
                                                               AND ORDER**
     v.                                    Civil No. 09-1136 ADM/JJK

Uponor, Inc., successor to Uponor North
America, Inc., and Radiant Technology, Inc.,

                Defendants.

_____

Brendan Thompson, Esq., Charles J. LaDuca, Esq., Cuneo Gilbert & LaDuca, LLP, Washington D.C., David L. Black, Esq., Perkins & Coie LLP, Denver, CO, Michael A. McShane, Esq., Audet & Partners, LLP, San Francisco, CA, Robert K. Shelquist, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN, Shawn M. Raiter, Esq., T. Joseph Snodgrass, Esq., Larson King, LLP, St. Paul, MN on behalf of Plaintiffs.

Bradley D. Fischer, Esq., Foley & Mansfield, PLLP, Minneapolis, MN, Howard L. Lieber, Esq., John R. Schleiter, Esq., Joshua P. Haid, Esq., Lindsay E. Dansdill, Esq., Fisher Kanaris, PC, Chicago, IL on behalf of Defendants.
_____

I. INTRODUCTION

On October 7, 2009, the undersigned United States District Judge heard oral argument on Defendant Uponor, Inc.'s ("Uponor") Motion to Dismiss [Docket No. 22]. In its Amended Complaint [Docket No. 18], Plaintiffs John McGregor and Helen McGregor ("the McGregors") and Auto-Owners Insurance Company ("Auto-Owners") (collectively "Plaintiffs") assert state law claims of consumer fraud, unlawful trade practices, deceptive trade practices, false advertising, negligence, negligent failure to warn, negligent misrepresentation, breach of express warranties, and declaratory and injunctive relief. For the reasons set forth below, Uponor's Motion is granted in part and denied in part.

## II. BACKGROUND[1]

**A.      The Pex Plumbing System**

Uponor and its wholly-owned subsidiary Radiant Technology, Inc. ("RTI") (collectively "Defendants") are Minnesota corporations that advertise, warrant, manufacture, and sell plumbing components. Am. Compl. ¶¶ 4-7. The McGregors own a home in Mead, Washington. Id. ¶ 1. Auto-Owners is an insurance company that insured North Anoka Plumbing. Id. ¶ 2.

Sometime after Uponor acquired RTI in 1997, RTI began selling the product at issue—the pex plumbing system, also known by its trade name, "Plumb Pex." Id. ¶¶ 35-36, 40. Historically, potable water plumbing systems used copper pipes. Id. ¶ 25. The pex plumbing system, however, uses tubing made of cross-linked polyethylene, commonly referred to as "pex." Id. ¶ 33. Such systems are claimed to be easier to install, cheaper, and longer lasting than copper plumbing systems. Id. ¶ 34.

Uponor's pex plumbing system utilizes brass fittings and a crimp and stainless steel clamp connection design. Id. ¶ 37. The brass fittings were represented as conforming to an industry standard that typically requires use of a special tool to crimp copper rings or stainless steel clamps around the outside of the pex tubing, creating a seal between the pex tubing and the brass fittings. Id. When the pex plumbing system is properly assembled, the crimping and the stainless steel clamps place stress on the brass fittings. Id. ¶ 38. Because the brass fittings used in Uponor's pex plumbing system were made from brass with a high zinc content, the fittings are claimed to be susceptible to premature failings due to phenomena known as dezincification and

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

stress-corrosion cracking.  Id. ¶¶ 45-46.  In addition, the manufacturing process for the brass fittings is alleged to have resulted in residual stress and machining imperfections that cause stress-corrosion cracking and produce an inherently defective fitting that fails even when installed correctly.  Id. ¶¶ 47-51.

Plaintiffs allege Uponor has admitted that the fittings are inherently defective .  Id. ¶¶ 54-57.  Specifically, Plaintiffs assert that Uponor admitted the defect in an internal "talking points" memorandum, in public statements, and in its lawsuit in Texas federal court against Unique Industrial Product Company ("Unique Industrial"), the designer and manufacturer of the brass insert fittings sold to Uponor for use in the pex plumbing system.  Id. ¶¶ 53, 59-75.  Although Uponor replaced, at its own expense, plumbing systems in properties owned by customers of certain large home builders, it has refused to do the same for other property owners.  Id. ¶¶ 76-81.

Plaintiffs also allege that Uponor made statements on RTI's website, in its Plumb-Pex brochures, and through its sales personnel regarding quality assurances, dedication to quality, careful engineering, proven reliability, and decades of experience that were false and misleading.  The statements are alleged to be false or misleading, in part, because Uponor did not test or ensure that the brass insert fittings had been tested, did not require its suppliers to perform testing, and made various assumptions when choosing or specifying the system's design and materials.  Id. ¶¶ 82-120.  Furthermore, Plaintiffs assert that Uponor made significant omissions about the tendency for the fittings to fail, the limitations of brass with high levels of zinc, the availability of materials that were more resistant than zinc, their lack of quality control or input,

the origin of the fitting's design and manufacture, and RTI's lack of experience in the plumbing industry. See id. ¶¶ 121-132.

### B.     The McGregors' Claims

The McGregors purchased and had installed in their home an Uponor pex plumbing system. Id. ¶ 139. The brass fittings failed, causing damage to the McGregors' property on two occasions. Id. ¶ 140. Uponor compensated the McGregors on their warranty claims for the out-of-pocket damages they sustained. Id. ¶¶ 141-43. Uponor refused, however, the McGregors' demand that Uponor replace all the remaining fittings in their home even though Uponor has admitted elsewhere that the fittings are defective, unreasonably dangerous, not merchantable, and are destined to fail in the future. Id. ¶ 144.

### C.     Auto-Owner's Claims

North Anoka Plumbing recommended and installed Uponor's pex plumbing systems in its customers' homes or businesses. Id. ¶ 146. North Anoka Plumbing, shortly thereafter, received reports from its customers of failed and leaking brass fittings that caused damage to their homes and personal property. Id. ¶¶ 147-48. After investigating and adjusting claims made by customers of its insured, North Anoka Plumbing, Auto-Owners paid the claims. Id. ¶ 149. Auto-Owners then submitted its own subrogation claims to Uponor. Id. ¶ 150. Uponor refused to pay on the claim and instead directed Auto-Owners to submit its claims to the manufacturer of the fittings, Unique Industrial, who in turn directed Auto-Owners back to Uponor. Id. ¶ 152-54.

Plaintiffs filed this putative class action in August 2009, seeking damages for wrongfully denied warranty claims, and declaratory and injunctive relief. The Amended Complaint asserts claims for alleged violations of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"),

Minn. Stat. §§ 325F.68-70 (Count I); the Minnesota Unlawful Trade Practices Act ("MUTPA"), Minn. Stat. § 325D.09-16 (Count II); the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. §§ 325D.43-48 (Count III); and the Minnesota False Statement in Advertising Act ("MFSAA"), Minn. Stat. § 325F.67 (Count IV). The Amended Complaint also asserts common law claims for negligence (Count V), negligent failure to warn (Count VI), negligent misrepresentation (Count VII), and breach of express warranties (Count VIII). Lastly, the Amended Complaint asserts a claim for declaratory and injunctive relief (Count IX).

## III. DISCUSSION

### A.    Motion to Dismiss for Failure to Plead with Particularity

Uponor argues that several of Plaintiffs claims fail because they allege fraud without meeting the specificity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Courts in this district have consistently held that Rule 9(b)'s pleading requirements apply to the statutory fraud claims such as those asserted by Plaintiffs in Counts I-IV.[2] See, e.g., Moua v. Jani-King of Minn., Inc., 613 F. Supp. 2d 1103,

---

[2] Uponor contends that Count VI, a claim for negligent failure to warn, also is subject to Rule 9(b) pleading standards. Defs.' Mem. in Supp. of Mot. to Dismiss [Docket No. 22, Attach. 1] at 16-17. In support, Uponor emphasizes that portions of Count VI include allegations that sound in fraud, charging that Uponor "concealed," "suppress[ed]," and engaged in a "scheme to cover up" the problems with its pex plumbing system. Id. But the majority of Count VI sounds in negligence, alleging that Uponor had a duty to notify customers of the problems or foreseeable dangers with the pex plumbing system and the brass fittings but failed to do so. See Am. Compl. ¶¶ 221-24, 228-33. In an analogous context involving a claim for violations of securities laws prohibiting persons from preparing and signing materially misleading registrations statements, the Eighth Circuit explained that even if a plaintiff alleges fraudulent conduct under a claim that requires mere negligence, such an allegation "would be mere surplusage" and "[t]he only

1112-14 (D. Minn. 2009) (recognizing that MFSAA and MPCFA claims sounding in fraud are subject to the requirements of Rule 9(b)); Tuttle v. Lorillard Tobacco Co., 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (applying Rule 9(b) to claims under the MPCFA, MDTPA, and MUTPA); Masterson Pers., Inc. v. McClatchy Co., Civ. No. 05-1274, 2005 WL 3132349, at *4-5 (D. Minn. Nov. 22, 2005) (applying Rule 9(b) to claims under the MPCFA and the MDTPA). Additionally, Minnesota law holds that allegations of misrepresentation, whether styled as intentional misrepresentation or negligent misrepresentation, sound in fraud and therefore must satisfy the pleading requirements of Rule 9(b). Conwed Corp. v. Employers Reinsurance Corp., 816 F. Supp. 1360, 1363 (D. Minn. 1993).

In discussing Rule 9(b)'s requirement of pleading the circumstances that constitute fraud with particularity, the Eighth Circuit has explained:

> "Circumstances" includes such matters as time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.

Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). "Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud." United States v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (quotation omitted). However, a complaint need not be filled with precise detail to satisfy Rule 9(b); a

---

consequence of a holding that Rule 9(b) is violated with respect to [such a claim] would be that any allegations of fraud would be stripped from the claim. The allegations of [negligence], which [are] at the heart of [the claim] would survive." In re NationsMart Corp. Sec. Litig., 130 F.3d 309, 314-15 (8th Cir. 1997).

main purpose of the rule is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." Commercial Prop., 61 F.3d at 644. Thus, Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the "core" factual basis for the fraud claims. Id. at 646.

Uponor argues that Plaintiffs' fraud based claims are predicated on conclusory allegations of fraud, misrepresentation, and deceptive and unfair practices that have not been pleaded with sufficient particularity to satisfy Rule 9(b). Specifically, Uponor argues Plaintiffs have failed to plead exactly who made the purported wrongful statements, when the statements were made, or any facts to establish that the statements were known to be false at the time they were made. Defs.' Mem. in Supp. of Mot. to Dismiss at 11-13. Uponor also claims that Plaintiffs failed to set forth examples of allegedly "false advertising" in brochures or on a website. Id. at 12. Uponor contends Plaintiffs cannot simply identify a statement and allege it to be false to satisfy Rule 9(b). And the mere fact that a statement is subsequently found to be contradicted by "later-discovered facts" does not render the statement "fraudulent." Id. at 14.

Upon review of the Amended Complaint, the Court finds the allegations in support of the fraud based claims to be adequate under Rule 9(b). The Amended Complaint identifies with adequate particularity several instances of allegedly fraudulent conduct. For example, Plaintiffs allege that Defendants (the who) advertised between 1997 and 2004 (the when) on RTI's website (the where) that RTI is "a North American leader in the manufacture of both plumbing and heating products" (the what). Am. Compl. ¶ 88. Plaintiffs also allege "how" the statement was fraudulent, explaining that the statement was false because RTI had been in the plumbing business for only one year and Defendants knew that RTI was not manufacturing plumbing

7

systems or brass fittings.  Id.  Another example is Plaintiffs allegations that Defendants (the who) claimed between 1998 and 2004 (the when) on RTI's website and through a brochure and sales representatives Frank Bilotta and David Holdorf (the where and the who) that Plumb-Pex is carefully engineered, proven, reliable and completely safe for you and your family and has undergone thorough testing to pass strict quality standards (the what).  Id. ¶¶ 89-98.  Plaintiffs explain (the how) that this statement was false or misleading and that Defendants knew it to be false or misleading because RTI did not do any engineering of the system or testing of its reliability, neither company manufactured the fittings, and thus, neither company actually knew at the time the statements were made that the fittings were carefully engineered, tested and proven, and reliable.  Id.

Rule 9(b) does not require that a "complaint be suffused with every minute detail of a misrepresentation . . . ." Carlson v. A.L.S. Enterprises, Inc., No. 07-3970, 2008 WL 185710, at *3 (D. Minn. Jan. 18, 2008).  Thus, a complaint has been found sufficient when it stated the misrepresentations were made "in advertising, marketing, and promotional materials, on [the defendants'] website, catalogs, on clothing tags, in packaging materials, in magazines and at point of purchase displays."  Id.  Here too, the Amended Complaint cites specific alleged misrepresentations on RTI's web sites, in Plumb-Pex brochures, and through sales representatives, and it specifically pleads when the alleged misrepresentations were made. Although many of Plaintiffs allegations do not identify a specific date or month, a plaintiff is not required to plead the exact dates on which misrepresentations were made.  See Solvay Pharms., Inc. v. Global Pharms., 298 F. Supp. 2d 880, 885-86 (D. Minn. 2004) (allegation that defendants had been improperly marketing their products as "generic" versions of plaintiff's drugs on

ongoing basis for the past "several years" sufficient under Rule 9(b)). The Amended Complaint provides adequate information about events and their chronology to allow Uponor to ascertain what is alleged and to adequately craft a response.

The Court also rejects Uponor's argument that the allegations supporting the fraud based claims fail to plead reliance on the allegedly fraudulent conduct with adequate particularity.[3] Uponor explains that the Amended Complaint fails to "specify how these Plaintiffs . . . had any contact with any representations supposedly made by the Defendants, nor does the Amended Complaint describe any materials that the named Plaintiffs reviewed . . . or otherwise came in contact with [that] supposedly led them to purchase the plumbing components and plumbing systems at issue." Defs.' Reply Mem. in Supp. of Mot. to Dismiss [Docket No. 37] at 14. But the Amended Complaint specifically sets forth that the McGregor's agent, the plumber they hired to purchase and install the plumbing system, received and relied on the allegedly fraudulent, misleading, or deceptive conduct by Defendants and that the McGregors were consequently damaged. Am. Compl. ¶ 176. Similarly, the Amended Complaint alleges that Auto-Owner's insured, North Anoka Plumbing, received and relied upon the allegedly

---

[3] For Plaintiffs claims under Minnesota's consumer protection statutes in Chapter 325D and Chapter 325F, "[a]llegations that the plaintiff relied on the defendant's conduct are not required to *plead* a violation." Group Health Plan, Inc. v. Phillip Morris Inc., 621 N.W.2d 2, 12 (Minn. 2001) (emphasis added). Rather, such claims require only that a plaintiff "plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby." Id.; see also Ansari v. NCS Pearson, Inc., Civil No. 08-5351, 2009 WL 2337137, at *9 (D. Minn. July 23, 2009) (stating that the MFSAA and the MCFA require that a plaintiff plead a "causal relationship between the misrepresentation and the actions of those affected by the misrepresentations").

9

fraudulent conduct when deciding to purchase and install pex plumbing systems in the homes and properties of its customers.[4]  Id.

In sum, the Amended Complaint's allegations in support of Plaintiffs' fraud based claims are pleaded with adequate particularity.  Therefore, Uponor's Motion to Dismiss Count I-IV and VII on the basis of Rule 9(b) is denied.

**B.     Motion to Dismiss for Failure to State a Claim**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief."  A pleading must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal,

---

[4] Taken to its logical conclusion, Uponor's argument contends that the Amended Complaint fails to plead reliance with particularity because, although it describes numerous instances of allegedly fraudulent or misleading conduct and alleges reliance on such conduct generally, it does not identify with exact precision which of those instances on which Plaintiffs relied.  However, Rule 9(b) does not require such "surgical precision."  Carlson v. A.L.S. Enters., Inc., Civ. No. 07-3970, 2008 WL 185710, at *3 (D. Minn. Jan. 18, 2008) (quotation omitted).

129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### 1. Failure to Plead Damages

Plaintiffs have alleged that poor manufacturing practices caused cracks in the brass fittings before they were even used. Pls.' Mem. in Opp'n to Mot. to Dismiss [Docket No. 32] at 2. The McGregors twice submitted warranty claims to Uponor, and Uponor compensated them for out-of-pocket damages. Am. Compl. ¶ 141. Plaintiffs allege that they have suffered additional uncompensated damage from (1) the decreased value of the plumbing system itself, due to its inherent defects, and (2) the cost of replacing the inherently defective system. Pls.' Mem. in Opp'n to Mot. to Dismiss at 9. In essence, Plaintiffs allege they have been damaged by Uponor's refusal to replace plumbing system components it knows are inherently defective. Id.

Auto-Owners paid claims brought against North Anoka Plumbing after it concluded that North Anoka Plumbing had installed Uponor's defective brass insert fittings. Am. Compl.¶¶ 145-55. Plaintiffs allege that Uponor has not fully reimbursed Auto-Owners for the claims it paid to North Anoka Plumbing's customers. Id. Plaintiffs allege that putative class members have suffered similar out-of-pocket damages. Id.

Uponor moves to dismiss all of Plaintiffs' claims, arguing that Plaintiffs have failed to plead damages. Uponor contends that Plaintiffs have been fully compensated for damages suffered as a result of failed brass fittings and the only damages sought in this lawsuit are

damages for the replacement of brass fittings that have functioned without a problem. Defs.' Reply Mem. in Supp. of Mot. to Dismiss at 4-7. Uponor argues that when a product performs satisfactorily and does not exhibit an alleged defect, Eighth Circuit precedent holds that "no cause of action exists, whether the cause of action is claimed to be based [on] fraudulent misrepresentation, fraudulent concealment, breach of express warranty, violation of state consumer protections statutes, or breach of contract." Id. at 4 (citing Briehl v. Gen. Motors Corp., 172 F.3d 623 (8th Cir. 1999)).

In Briehl, the Eighth Circuit cited with approval a line of cases that dismissed products liability claims for failure to state any damages when the plaintiff could state only that the failed product was "likely to cause" damage, likely to "fail in the future," "inherently defective," or "yet to manifest itself." Id. at 627-28 (citations omitted). One of the cases cited in Briehl involved facts similar to those here. In Zamora v. Shell Oil Co., 34 homeowners alleged defects in polybutylene pipes used in their homes' plumbing systems. 55 Cal. App. 4th 204 (1997). Fourteen of the 34 homeowners stipulated that they had not experienced any leaks in their plumbing system and their "damage" consisted of the degradation and "micro-cracking" of the polybutylene pipes. Id. at 211. The Zamora court found that inherently defective micro-cracking was not the requisite amount of damage to support a claim. Id. at 212-13.

Briehl and Zamora are distinguishable on their facts. Unlike in those cases where the product had yet to exhibit an alleged defect causing damage, the McGregors' plumbing system, which is the only plumbing system about which facts have been alleged at this procedural

juncture,[5] has experienced leaking as a result of the alleged defect. Thus, this is not a case posing only a potential that the plumbing system includes defective brass fittings; instead, the Amended Complaint alleges that the defect to the brass fittings has already manifested itself in the McGregors' plumbing system on two separate occasions.

With regard to Auto-Owners, the Amended Complaint alleges that Uponor has refused to fully reimburse claims Auto-Owners paid to certain North Anoka Plumbing customers damaged by plumbing systems which included the allegedly defective brass fittings. Am.Compl. ¶¶ 147-54. On a motion to dismiss, the Court must accept these alleged facts as true.

**2. Count V**

Uponor also argues that Plaintiffs' negligence claim fails because the damages pleaded are precluded by the "economic loss doctrine." Under Minnesota law, "[a] buyer may not bring a product defect tort claim against a seller for compensatory damages unless a defect in the goods sold or leased caused harm to the buyer's tangible personal property other than the goods or to the buyer's real property." Minn. Stat. § 604.101, subd. 3. If the damages sought regarding an allegedly defective product consist only of damages to the product itself, a buyer is limited to contract and warranty remedies. Minn. Stat. § 604.10(c); State Farm Mut. Auto Ins. Co. v. Ford Motor Co., 572 N.W.2d 321, 324 (Minn. App. 1997).

The Amended Complaint alleges that "brass fittings failures caused substantial damage to the homes and personal property of North Anoka Plumbing's customers" and that Uponor has not reimbursed Auto-Owners for "the approximately $95,000 it paid for damage caused by

---

[5] The Court expresses no opinion on the viability of claims by individuals whose plumbing systems have not manifested any signs of the alleged defect to the brass fittings or on the inclusion of such individuals in the putative class.

13

Defendants' defective brass fittings." Am. Compl. ¶¶ 148, 154. This disputed factual allegation cannot be resolved on a motion to dismiss for failure to state a claim. Therefore, dismissal of Auto-Owners's negligence claim is denied.

Plaintiffs aver that "[w]hether the McGregors have sustained other out-of-pocket damage related to the first two [brass fittings] failures is a subject for discovery." Pls.' Mem. in Opp'n to Mot. to Dismiss at 18. Thus, Plaintiffs contend there is an unresolved fact issue about whether Uponor fully reimbursed the McGregors for damage to property other than the plumbing system itself for the two occasions when brass fittings failed. But Plaintiffs' suggestion that there is a fact issue as to whether the McGregors were fully compensated for damage to other property caused by the two previous brass fittings failures is not supported—rather is contradicted—by the allegations of Amended Complaint. The portions of the Amended Complaint that discuss the two prior failures allege that "Uponor therefore compensated the McGregors for the out-of-pocket damage caused by the failure" and "Uponor therefore again compensated [the] McGregors for the out-of-pocket damage caused by the failure." Am. Compl. ¶¶ 141, 143.

Plaintiffs also argue that the Amended Complaint alleges that the McGregors' brass fittings "have and will in the future cause water leaks," which will "in turn cause extensive damage to other property including the homes and personal property of the owners," and that expenses will be incurred in connection with the proactive removal of the remaining allegedly defective brass fittings. Am. Compl. ¶¶ 21, 140, 148; Pls.' Mem. in Opp'n to Mot. to Dismiss at 18. Plaintiffs conclude that such alleged damage constitutes damage to property other than the plumbing system itself that is not precluded by the economic loss doctrine. Although, as discussed previously, the allegation that the brass fittings will fail in the future and will cause

14

damage to other property is sufficient to show that Plaintiffs have pleaded damages for purposes of certain of their claims, it does not show that Plaintiffs have, at present, suffered uncompensated damage to other property necessary to show that the damages sought on their negligence claim are not precluded by the economic loss doctrine.  The divergent result lies in the difference between Plaintiffs' tort claim for products liability based on negligence and their other claims, specifically, the warranty claim.  In a classic product liability claim, whether based on negligence or strict liability, the sale of a defective product, in and of itself, is not an actionable tort; but for a breach of warranty claim, the breach occurs and thus the claim accrues when tender of delivery of a nonconforming good is made or, if the warranty explicitly extends to future performance, when discovery of the breach is or should have been made.  See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 155 F. Supp. 2d 1069, 1086, 1099-1100 (S.D. Ind. 2001) (explaining the distinction between the damages element required of a tort claim based on products liability and the damages element required of a breach of warranty claim and questioning the holding in Briehl, which failed to acknowledge the distinction).

      The expenses incurred in removing and replacing the remaining allegedly defective brass fittings amount to consequential economic loss arising directly from the product itself and are therefore barred by the economic loss doctrine.  See Praktika Design & Projectos Ltd. v. Marvin Lumber & Cedar Co., Civ. No. 06-957, 2006 WL 2788182, at *4 (D. Minn. Sept. 26, 2006) (citing Minn. Forest Prods. v. Ligna Mach., 17 F. Supp. 2d 892, 907, n.9 (D. Minn. 1998)).  Plaintiffs have failed to allege cognizable damages on the McGregors' negligence claim, and, therefore, that claim is dismissed.

### 3. Count VI

The Minnesota Supreme Court has held that failure to warn claims are "based on a concept of negligence." Bilotta v. Kelley Co., Inc., 346 N.W.2d 616, 622 (Minn. 1984). Thus, the Court concludes that the preceding analysis regarding the economic loss doctrine also applies to the McGregors' negligent failure to warn claim. Courts applying versions of the economic doctrine similar to Minnesota's have held that failure to warn claims are subject to preclusion of consequential economic damages. See Sea-Land Serv., Inc. v. Gen. Elec. Co., 134 F.3d 149, 155-56 (3d Cir. 1998) (applying the Supreme Court's articulation of the economic loss doctrine in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986),[6] and holding that the rule against a tort action when the damage from an alleged product defect is limited to the product itself and is solely economic "is as true for strict liability and negligence cases as it is for failure to warn cases."); Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628, 632 (Fla. 1995) (holding that under Florida's economic loss doctrine, "failure to warn, without the requisite harm, will not circumvent the economic loss rule to allow a cause of action where the plaintiffs allege a duty to warn which arose from facts which came to the knowledge of the company after the manufacturing process").

### 4. Count VIII

Uponor next seeks dismissal of Plaintiffs' breach of warranty claim, arguing that (1) Plaintiffs have not attached to the Amended Complaint a copy of the warranty or warranties that

---

[6] Minnesota's economic loss doctrine shares a common foundation with the doctrine articulated by the Supreme Court in East River. See Suneel Arora, Notes, Fraud and Negligent Mispresenation Claims Under Minnesota's Economic Loss Doctrine After AKA Distributing Co. v. Whirlpool Corp., 137 F.3d 1083 (8th Cir. 1998) and the 1998 Legislative Amendments for Marvin Windows, 25 Wm. Mitchell L. Rev. 1501, 1508-1510, n.43.

were allegedly breached and (2) Plaintiffs have already been compensated for the out-of-pocket damages caused by the failure.  Defs.' Mem. in Supp. of Mot. to Dismiss at 22.  Plaintiffs respond that attaching a copy of a warranty to a complaint is not required to state a claim for breach of warranty and that they have not been compensated for the damages that will be incurred in replacing the remaining allegedly defective brass fittings.

A claim for breach of warranty requires a plaintiff to show (1) the existence of a warranty, (2) breach of the warranty, and (3) a causal link between the breach and the alleged harm.  Peterson v. Bendix Home Systems, 318 N.W.2d 50, 52-53 (Minn. 1982).  An express warranty is created when a seller makes "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain."  Minn. Stat. § 336.2-313(1)(a).  The word "warranty" need not be used so long as a clear representation of the quality of a thing sold is made by a seller to the buyer as part of a contract for sale and the buyer relied upon the statement.  Meshbesher v. Channellene Oil & Mfg. Co., 119 N.W. 428, 429 (Minn. 1909).  Furthermore, statements in advertising can give rise to an express warranty. See Baumgartner v. Glesener, 214 N.W. 27, 28 (Minn. 1927) (finding that an advertisement claiming that 95% of a tested portion of seed corn had germinated constituted an express warranty).

Plaintiffs have sufficiently pleaded the existence of a warranty regarding the quality of the pex plumbing system.  Plaintiffs have pleaded numerous instances where Defendants "warranted" the quality of their plumbing system through marketing materials, which allegedly led Plaintiffs to purchase the brass fittings.  See Am. Compl. ¶¶ 88-97.  The Amended Complaint also alleges (1) that Defendants breached the warranties by providing pex plumbing systems that failed to conform to the quality warranted and by failing to replace such allegedly

17

nonconforming plumbing systems and (2) that Plaintiffs were damaged as a result of the breach. Id. ¶¶ 246-50. For the reasons previously discussed, see supra Part III.B.1, Uponor's argument that Plaintiffs have not pleaded damages is without merit. If Plaintiffs can prove that the pex plumbing systems include brass fittings that are indeed defective and not of the quality warranted, Plaintiffs have a plausible claim for breach of warranty. The Motion to Dismiss Count VIII is denied.

### 5. Count IX

Lastly, Uponor argues that because Count IX is a claim for "declaratory and injunctive relief," it should be dismissed as there is an adequate remedy at law available to Plaintiffs. Despite the title, "declaratory and injunctive relief," all of the paragraphs under Count IX seek declaratory, not injunctive, relief about the scope of the coverage of Defendants' warranties and the validity and enforceability of any limitations, restrictions, or disclaimers in the warranties. Although the Amended Complaint adequately pleads the existence of warranties, the warranties have not actually been presented to the Court, which makes it difficult to rule on a Rule 12(b)(6) demur to a claim asserting that certain provisions within those warranties are unenforceable or otherwise invalid. Dismissal of Count IX is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 22] is **GRANTED** in part and **DENIED** in part;

2. Count V of the Amended Complaint [Docket No. 18] is **DISMISSED** with respect to the McGregors' negligence claim; and

3. Count VI of the Amended Complaint [Docket No. 18] is **DISMISSED** with respect to the McGregors' negligent failure to warn claim

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 4, 2010.