UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John and Helen McGregor, on behalf of themselves and all others similarly situated, et. al. | Court File No. 09cv1136/ADM/JJK |
| | Class Action |
| Plaintiffs, | |
| v. | UPONOR, INC.'s and RADIANT TECHNOLOGY, INC.'s ANSWER TO PLAINTIFFS' AMENDED COMPLAINT |
| Uponor, Inc., successor to Uponor North America, Inc., and Radiant Technology, Inc., | |
| Defendants. | |

COMES NOW, Defendants, UPONOR INC. (hereinafter "UPONOR") and RADIANT TECHNOLOGY, INC. (hereinafter "RTI"), by and through their attorneys John R. Schleiter, Esq. and Howard L. Lieber, Esq. of the law firm FISHER KANARIS, P.C. and Bradley D. Fisher of the law firm Foley & Mansfield, PLLP, and hereby answer and respond to Plaintiffs' Amended Complaint as follows:

## **THE PLAINTIFFS AMENDED COMPLAINT**

1.     Plaintiffs and putative class representatives John and Helen McGregor are husband and wife and are residents of and the owners of property in Mead, Washington.

**ANSWER:**   UPONOR and RTI (collectively referred to as "Defendants"), lack knowledge sufficient to form a belief as to the truth of the allegations contained within paragraph 1 and, therefore, deny the same and demand strict proof thereof.

2.     Plaintiff and putative class representative Auto-Owners Insurance Company ("Auto-Owners") is a corporation in the business of issuing insurance. Auto-Owners insured and has paid claims on behalf of North Anoka Plumbing. By way of its contractual agreements with North Anoka Plumbing, Auto-Owners is subrogated to the claims of North Anoka Plumbing and has standing to seek reimbursement for damage caused by Defendants' defective products.

**ANSWER:**     UPONOR and RTI deny the allegations contained herein pertaining to any defective UPONOR and RTI products.  In answering further UPONOR and RTI lack knowledge as to the truth of the remaining allegations contained within paragraph 2 and, therefore, deny same and demand strict proof thereof.

3.     Plaintiffs John and Helen McGregor and Auto-Owners (collectively "Plaintiffs") bring this case on behalf of themselves and a class of similarly situated persons and entities.

**ANSWER:**     UPONOR and RTI  admit that the named parties have brought this action on their own behalf.  UPONOR and RTI, deny those allegations contained in paragraph 3 alleging that there are other similarly situated persons and entities.

## THE DEFENDANTS

4.     Defendant Uponor, Inc. is a publicly-held entity that is in the business, among other things, of advertising, warranting, manufacturing, and selling plumbing components.

**ANSWER:**     RTI makes no response to the allegations of paragraph 4 as they are not directed to it.  Should any further or other response be deemed necessary RTI reserves the right to respond in detail.  UPONOR admits that it manufactures, sells and warrants certain products, but denies that it is a publicly held entity.

2

5.      Uponor, Inc. is the successor to Uponor North America, Inc. and is a Minnesota corporation that maintains its principal place of business in Minnesota.

**ANSWER:**    RTI makes no response to the allegations contained in paragraph 5 as they are not directed to it.  Should any further or other response be deemed necessary RTI reserves the right to respond in detail.  UPONOR admits that its principal place of business is in Minnesota, however, UPONOR denies that it is a Minnesota corporation or that it is "the successor" to Uponor North America, Inc.

6.      Defendant Radiant Technology, Inc. ("RTI") is a foreign entity that is or was in the business, among other things, of advertising, warranting, manufacturing, and selling plumbing components.

**ANSWER:**    UPONOR makes no response to the allegations contained in paragraph 6 as they are not directed to it.  Should any further or other response be deemed necessary UPONOR reserves the right to respond in detail.  RTI admits that it was not a Minnesota based entity.  RTI further admits that it sold and warranted certain products.

7.      RTI is or was a wholly owned subsidiary of Uponor. RTI is believed to currently maintain its principal place of business in Minnesota.

**ANSWER:**    UPONOR and RTI make no answer to the allegations regarding the corporate relationship referenced in this paragraph as those allegations call for a legal conclusion.  In answering further, UPONOR and RTI lack knowledge as to what is "believed" regarding RTI's principal place of business is in Minnesota.

3

8.    Uponor and RTI are responsible for some or all of the acts and omissions alleged herein.

**ANSWER:**    UPONOR and RTI make no answer to the allegations of Paragraph 8 as they state conclusions of law as opposed to allegations of fact.  Should any further response be deemed necessary RTI and UPONOR deny those allegations and demand strict proof thereof.

9.    Uponor and RTI have acted in concert with each other with the respect to the actions and omissions alleged herein.

**ANSWER:**    UPONOR and RTI make no answer to the allegations of Paragraph 9 as they state conclusions of law as opposed to allegations of fact.  Should any further response be deemed necessary RTI and UPONOR deny those allegations and demand strict proof thereof.

10.    Uponor and RTI are jointly and/or severally liable to Plaintiffs and the putative class members as joint venturers, or in the alternative, operate such that any pretend corporate formalities amongst and between the two should be disregarded or pierced, or in the alternative, are subject to an agency relationship, or in the alternative, are subject to predecessor and successor liability theories, or in the alternative, are otherwise jointly and severally liable for all acts and omissions alleged herein.

**ANSWER:**    UPONOR and RTI, make no answer to the allegations of Paragraph 10 as they state conclusions of law as opposed to allegations of fact.  Should any further response be deemed necessary RTI and UPONOR deny those allegations and demand strict proof thereof.

## JURISDICTION AND VENUE

11      This Court has jurisdiction over the parties, the putative class, and the causes of action asserted herein pursuant to Rule 23 of the Federal Rules of Civil Procedure and under the Class Action Fairness Act as the amount in controversy exceeds $5 million.

**ANSWER:**   UPONOR and RTI make no answer to the allegations of paragraph 11 as they state conclusions of law as opposed to allegations of fact. Should any further or other response be deemed necessary, UPONOR and RTI deny those allegations and demands strict proof thereof.

12.      Venue in this forum is proper in that Uponor and RTI reside in Minnesota, some of the putative class members reside in Minnesota, the causes of action for the class representatives arose, in part, in Minnesota, the causes of action for putative class members arose, in part, in Minnesota, and Uponor and RTI transact business within Minnesota.

**ANSWER:**   UPONOR and RTI make no answer to the allegations of paragraph 12 as they state conclusions of law as opposed to allegations of fact. Should any further or other response be deemed necessary, UPONOR and RTI deny those allegations and demands strict proof thereof.

13.      Jurisdiction is also appropriate in Minnesota because the warranties provided by Uponor and RTI for their F1807 style fittings purport to require that suits be brought in Minnesota and that Minnesota law be applied to all tort, contract or other claims.

**ANSWER:** UPONOR and RTI can neither admit nor deny the allegations of Paragraph 13 as Plaintiffs have not attached the warranties they are referring to and those allegations state conclusions of law. Should any further or other response be deemed necessary UPONOR and RTI deny those allegations and demand strict proof thereof.

## SUMMARY OF CLASS ACTION

14. Plaintiffs on behalf of themselves and all other persons and entities similarly situated bring this action for and on behalf of the owners of homes and buildings with Uponor and/or RTI plumbing systems with cross-linked polyethylene ("Pex") tubing as well as any person or entity who has paid for the repairs of or damage caused by such systems. These systems are defective.

**ANSWER:** UPONOR and RTI states that they lack knowledge as to what Plaintiffs' believe constitutes the "UPONOR and/or RTI plumbing systems with cross-linked polyethylene ("Pex") tubing" and therefore are without sufficient information to form a belief as to the truth of the allegations contained within this paragraph and, therefore, deny same and demand strict proof thereof.

15. Plaintiffs and the putative class members have been damaged as a result of the design, development, advertisement, marketing, sale, and warranty misconduct of Uponor and RTI in connection with Uponor and RTI pex plumbing systems that utilize brass insert fittings.

**ANSWER:** UPONOR and RTI deny the allegations of paragraph 15 and demands strict proof thereof.

16.     Uponor and RTI have sold brass insert fittings for pex plumbing systems throughout the United States.

**ANSWER:**     UPONOR and RTI lack knowledge as to what constitutes the "Pex plumbing systems" as referred to by Plaintiffs in paragraph 16 as the phrase is not defined and, therefore are without sufficient information to form a belief as to the truth of those allegations and demands strict proof thereof.

17.     Uponor and RTI warranted and advertised that their pex plumbing systems with brass insert fittings had a 25-year warranty that expressly covered consequential damages arising from leaks or failures in the plumbing systems.

**ANSWER:**     UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes "their Pex plumbing systems" as referred to in Paragraph 17 and therefore, deny the allegations of this paragraph and demand strict proof thereof.

18.     Uponor and RTI have warranted and advertised their brass insert fittings as being "proven," "carefully engineered," "reliable" and resistant to corrosion.

**ANSWER:**     UPONOR and RTI states that they lack knowledge as to what Plaintiffs believe constitutes "their brass insert fittings" as referred to in Paragraph 18 and, therefore, deny those allegations and demand strict proof thereof.

19.     These representations, however, proved untrue and Uponor and RTI's brass insert fittings began to prematurely fail across the country. These failures resulted in substantial damage to property other than the plumbing system.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "brass insert fittings" as referred to in Paragraph 19 and therefore, deny same and demand strict proof thereof.


20.   After selling these brass insert fittings across the country, Uponor now admits that the fittings are "defective," "unreasonably dangerous," and not merchantable. Uponor and RTI, however, refuse to replace the plumbing systems of all persons and entities who own properties containing the admittedly defective fittings.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "brass insert fittings" as referred to in Paragraph 20 and therefore, deny those allegations and demand strict proof thereof. In answering further Defendants deny that Uponor has admitted that "the fittings are 'defective,' 'unreasonably dangerous,' and not merchantable" or that Uponor has "refused to replace the plumbing systems" as alleged in this paragraph.


21.   The failures of the Uponor and RTI brass insert fittings have and will in the future cause water leaks. These leaks have and will in turn cause extensive damage to other property including the homes and personal property of the owners.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "brass insert fittings" as referred to in Paragraph 21 and therefore deny same and demand strict proof thereof. Defendants deny the remaining allegations of this paragraph.


22.   Plaintiffs and the putative class members seek damages arising from and proximately caused by Uponor and RTI's breach of consumer protection statutes, fraud and

misrepresentations, negligence, breach of contract and breach of warranties. Plaintiffs and the putative class members also seek declaratory and injunctive relief, as described below.

**ANSWER:**   UPONOR and RTI, state that they lack knowledge as to what Plaintiffs seek damages for other than as set forth in allegations contained in the Amended Complaint. UPONOR and RTI are without sufficient information to form a belief as to the truth of the allegations contained within this paragraph and, therefore, deny same and demand strict proof thereof.

## FACTUAL BACKGROUND

**Uponor and RTI Pex Plumbing Background**

23.    Uponor and RTI sell various plumbing products including pex plumbing systems and their components.

**ANSWER:**   UPONOR admits that it sells various plumbing products.   RTI denies that it currently sells any plumbing products.   In answering further, UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "Pex plumbing systems" referred to in this paragraph and, therefore, deny those allegations and demand strict proof thereof.

24.    Pex is an acronym for cross-linked polyethylene. Polyethylene is the raw material and the "X" in the generic name "Pex" refers to the cross-linking of the polyethylene across its molecular chains.

**ANSWER:**   UPONOR and RTI, admit the allegations contained in paragraph 24.

9

25.     For decades, plumbers and homeowners used copper piping for potable water plumbing systems.

**ANSWER:**     UPONOR and RTI admit that copper based piping has been used for potable water plumbing systems.

26.     Copper is and has been accepted by virtually all plumbing codes throughout the United States.

**ANSWER:**     UPONOR and RTI, are presently without sufficient information to form a belief as to the truth of the allegations contained within Paragraph 26 and, therefore, deny same and demand strict proof thereof.

27.     In the 1980's, manufacturers in the United States began selling and plumbers began installing potable water plumbing systems with tubing made from polybutylene plastic.

**ANSWER:**     UPONOR and RTI, state that they lack knowledge as to what/who constitute the "manufacturers" as referred to by Plaintiffs and therefore are without sufficient information to form a belief as to the truth of those allegations,  deny same and demand strict proof thereof.

28.     Plumbing systems using tubing made from polybutylene plastic were touted by manufacturers as being easier to install, cheaper and longer-lasting than copper plumbing systems.

**ANSWER:**     UPONOR and RTI state that they lack knowledge as to what/who constitute the "manufacturers" as referred to by Plaintiffs in Paragraph 28 and therefore are without sufficient information to form a belief as to the truth of those allegations, therefore they deny same and

demand strict proof thereof.  In answering further UPONOR and RTI state that the allegations of Paragraph 28 state opinions and conclusions as opposed to allegations of fact.

29.     Polybutylene plumbing systems quickly proved to be poorly conceived, designed and manufactured systems. Those polybutylene systems began to fail prematurely in the field causing substantial property damage.

**ANSWER:**     UPONOR and RTI state that the allegations contained within paragraph 29 constitute opinions and conclusions as opposed to allegations of fact and, therefore, UPONOR and RTI deny same and demand strict proof thereof.

30.     A substantial amount of litigation ensued as a result of the widespread, premature failure of polybutylene plumbing systems. Several class actions were filed and settlements in those cases exceeded $1.25 billion.

**ANSWER:**     UPONOR and RTI state that the allegations contained within paragraph 30 constitute opinions and conclusions as opposed to allegations of fact and, therefore, UPONOR and RTI deny same and demand strict proof thereof.

31.     At least in part in response to the failure of polybutylene plumbing systems, virtually all manufacturers ceased manufacturing polybutylene plumbing systems for sale in the United States. In addition, most plumbing codes eventually prohibited the installation of polybutylene plumbing systems.

11

**ANSWER:**   UPONOR and RTI state that the allegations contained within paragraph 31 constitute opinions and conclusions as opposed to allegations of fact and therefore, UPONOR and RTI deny same and demand strict proof thereof.

32.   Following the demise of polybutylene systems, Uponor, RTI and other companies began selling alternative, non-copper plumbing products in the United States.

**ANSWER:**   UPONOR and RTI admit only that they sold non-copper plumbing products in the United States.

33.   Specifically, Uponor and RTI marketed and sold plumbing systems using pex tubing for use in residential and commercial settings.

**ANSWER:**   UPONOR and RTI admit that they have marketed and sold plumbing components for residential use.

34.   Uponor and RTI touted their pex plumbing systems as being easier to install, cheaper and longer-lasting than copper plumbing systems.

**ANSWER:**   UPONOR and RTI deny Plaintiffs' characterization that they "touted" products.

**Uponor and RTI Pex Brass Insert Fittings**

35.   In approximately 1997, Uponor and / or its parent company purchased RTI. In doing so, Uponor purchased RTI's assets and liabilities, its entire product line and the rights to RTI's intellectual property.

12

**ANSWER:**   UPONOR and RTI admit that Uponor purchased RTI, and acquired various of RTI's assets.   In further answering, Uponor and RTI deny that UPONOR purchased RTI's liabilities.

36.    Although RTI was previously involved only in the sale of radiant heating systems, after RTI was acquired by Uponor it began selling a pex plumbing system utilizing brass insert fittings that purportedly conformed to ASTM standard F1807.

**ANSWER:**   UPONOR and RTI admit that RTI sold radiant heating systems and later sold plumbing systems utilizing brass insert fittings which were to be manufactured in conformity with ASTM standards.   In further answering, UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "pex plumbing systems" as referred to by Plaintiffs and therefore deny the remaining allegations contained within paragraph 36 and demand strict proof thereof.

37.    F1807 insert fitting systems typically use a crimp or stainless steel clamp connection design in which insert fittings made of brass alloy are inserted into the pex tubing. The brass fittings are secured by using a special tool that crimps copper rings or stainless steel clamps around the outside of the tubing, which in turn, creates a seal between the pex tubing and the brass fittings.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "F1807 insert fitting systems" as referred to in this paragraph and therefore are without sufficient information to form a belief as to the truth of those allegations, deny same and demand strict proof thereof.   In answering further UPONOR and RTI make no response to

Plaintiffs' allegations regarding how such systems "typically" connect components as those allegations state opinions and conclusions as opposed to facts. Should any further or other response be deemed necessary UPONOR and RTI deny such allegations.

38.     The crimp and stainless steel clamp system design used by Uponor and RTI for their pex plumbing systems places a great deal of stress on the brass insert fittings when the system is assembled as intended.

**ANSWER:**     UPONOR and RTI state that they lack knowledge as to what constitutes "a great deal of stress" as referred to by Plaintiffs in paragraph 38 and therefore, deny the allegations contained in this paragraph and demand strict proof thereof.

39.     The design, choice of material and manufacturing methods of the F1807 brass insert fittings also result in residual stress within the fittings following the manufacturing process but before the system is assembled in the field.

**ANSWER:**     UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "residual stress" as referred in paragraph 39 and therefore, deny the allegations contained within this paragraph and demand strict proof thereof.

40.     For some period of time, RTI sold the plumbing components and systems using the F1807 brass insert fittings under its own name or label. However, employees of Uponor, RTI's parent company, also promoted, marketed and sold RTI systems to, for example, the manufactured structures market. These fittings and systems were sold at least in part under the trade name "Plumb-Pex."

14

**ANSWER:**   UPONOR and RTI admit only that RTI sold plumbing components and systems using F1807 brass insert fittings, that certain plumbing systems were sold under the trade name "Plumb-Pex," and that systems using F1807 fittings were sold to entities that manufactured homes.

41.   On October 27, 2004, Uponor issued a press release that stated that it would close the RTI operations in early 2005. In that press release, Uponor's executive vice president, Jim Bjork, promised that Uponor "will honor existing RTI and Plasco warranties."

**ANSWER:**   UPONOR and RTI admit that a statement was issued regarding RTI's status and operations as well as UPONOR's position regarding RTI warranties.

42.   By December 2004, Uponor began receiving RTI's inventory, including brass fittings, and began handling the ongoing purchase and distribution of RTI's Plumb-Pex system.

**ANSWER:**   UPONOR and RTI  admit that a transition of business activities between RTI and UPONOR was occurring by "December 2004."

43.   Upon information and belief, Uponor closed the RTI operations in early 2005 and thereafter continued to sell the F1807 Plumb-Pex fittings and system.

**ANSWER:**   UPONOR and RTI lack knowledge as to what Plaintiffs believe constitutes "the RTI operations" as referred to in paragraph 43 and, therefore, deny those allegations and demand strict proof thereof.

15

44.     Defendants' F1807 fittings are easily identified by a "P-Pex" stamp placed on the brass insert fittings and stainless steel clamps ("SSC").

**ANSWER:**     UPONOR and RTI deny that the fittings referred to in Paragraph 49 are "Defendants' F1807 fittings".


45.     Defendants were negligent in selling these fittings for a number of reasons, including their decision to actively market, promote and sell fittings made from brasses with high zinc content, known as "yellow brass."

**ANSWER:**     UPONOR and RTI, deny the allegation contained in Paragraph 45 and demand strict proof thereof.


46.     Defendants knew or should have known that the brass alloy used for the brass insert fittings they sold and marketed made the fittings susceptible to premature failure through various processes like dezincification and stress corrosion cracking.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 46 and demand strict proof thereof.


47.     Defendants knew or should have known that the fitting design, pex system design, and choice of brass alloy also made the brass insert fittings susceptible to premature failure through stress corrosion cracking and / or dezincification.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 47 and demand strict proof thereof.

48.     Defendants knew or should have known that the manufacturing process used for the brass insert fittings left residual stress and machining imperfections that would cause premature failure through stress corrosion cracking.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 48 and demand strict proof thereof.

49.     The design, materials choices, and manufacturing practices of the brass fittings marketed and sold by Defendants have created a product that is damaged and begins to fail on its first day of use, even if perfectly installed in its intended environment.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 49 and demand strict proof thereof.

50.     Because of their defective design and manufacture, Defendants' F1807 brass insert fittings failed in their intended purpose.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 50 and demand strict proof thereof.

51.     Because of their defective design and manufacture, Defendants' F1807 brass insert fittings are inherently defective and are substantially certain to fail within the express warranty provided with the fittings and / or the useful life of the fittings.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 51 and demand strict proof thereof.

52.     Plaintiff and Class members own, have installed, or have paid for damages caused by Uponor and RTI plumbing systems with brass insert fittings that have already or are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of their plumbing systems.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 52 and demand strict proof thereof.


53.     Although they never told consumers, plumbers, or plumbing distributors that they were not the designers and manufacturers of the fittings, Defendants now claim that neither Uponor nor RTI actually designed or manufactured the F1807 brass insert fittings they sold to consumers. Defendants instead purchased the fittings from foreign companies, including Unique Industrial Product Company ("Unique Industrial").

**ANSWER:**     UPONOR and RTI admit that F1807 brass insert fittings were purchased from various sources including Unique Industrial Product Company ("Unique").  In further answering, UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "the fittings" as referred to in Paragraph 53 and are without sufficient information to form a belief as to the truth of the allegations relating to "reports" as contained within this paragraph. Therefore Defendants deny those allegations and demands strict proof thereof.  In answering further UPONOR and RTI deny that F1807 fittings were "their" fittings.


54.     No later than 2006, Uponor and RTI began receiving reports that their F1807 fittings were failing prematurely when used as intended.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes "reports" as referred to in this paragraph and therefore are without sufficient information to form a belief as to the truth of the remaining allegations contained within this paragraph, deny same and demand strict proof thereof. In answering further UPONOR and RTI deny that F1807 fittings were "their" fittings.

55.   For example, Defendants received reports from NVR, a large national homebuilder, that numerous F1807 fittings had failed prematurely in homes in the State of Virginia.

**ANSWER:**   UPONOR and RTI admit that UPONOR had communications with NVR regarding plumbing system components. However Defendants deny that they received reports that "numerous F1807 fittings had failed prematurely".

56.   Uponor and/or RTI agreed to reimburse NVR for the cost of replacing the fittings and/or plumbing systems in more than seven hundred homes. The cost of those replacements totaled approximately $5 million.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 56.

57.   Defendants also received similar reports of prematurely failing F1807 fittings in Minnesota, Wisconsin, Washington, Oregon, Utah, Montana, Missouri, Vermont, Iowa, Michigan, Louisiana, Idaho, Indiana and other of the United States.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitute "reports" and "prematurely failing" as referred to in this paragraph and therefore are

19

without sufficient information to form a belief as to the truth of the remaining allegations herein, deny same and demand strict proof thereof.

58.     As a result of the premature failures of the F1807 fittings, Defendants stopped selling F1807 fittings. Uponor now only sells insert fittings manufactured to comply with ASTM F1960 or other ASTM standards.

**ANSWER:**   UPONOR admits only that it no longer sells F1807 fittings and denies all implications in paragraph 58 as to it no longer sells that product.

59.     After deciding to stop selling the Plumb-Pex system, Uponor issued a confidential "talking points" memorandum to its employees and sales representatives. In that memo, Uponor explained the reasons it stopped selling the Plumb-Pex system. Uponor admitted the product design and quality was one of the reasons: "More importantly, the quality and design of the brass insert fitting used in the [Plumb-Pex system] does not measure up to Uponor's high quality standards."

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in Paragraph 59 and therefore denies those allegations and demands strict proof thereof. UPONOR denies that it "issued" the memorandum referred to in Paragraph 59 and further denies that it "admitted" anything regarding the "design and quality" of products.

60.     Knowing that these fittings were defective, Uponor allowed its distributors and contractors to return unused Plumb-Pex components for a complete refund in late 2006.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes "these fittings" as referred to in Paragraph 60 and therefore deny same and demand strict proof thereof.  In answering further UPONOR and RTI deny Plaintiffs' generalization that "these fittings were defective".

61.   At some point in 2006, Uponor sought reimbursement from Unique Industrial for the money Uponor paid as a result of premature failures of the F1807 fittings.

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits that it had conversations with Unique regarding batches of product it had received from Unique.

62.   In seeking reimbursement from Unique Industrial, Uponor claimed that the F1807 fittings it and RTI had obtained from Unique Industrial, and which Uponor and RTI had sold to the public, were defectively designed or manufactured.

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR denies Plaintiffs' characterization of its claim relating to Unique as set forth in Paragraph 62 and demands strict proof thereof.

63.   Ultimately, Uponor sued Unique Industrial in federal court in Texas. In that complaint, Uponor admitted that the F 1807 fittings were "defectively manufactured" and "were not merchantable, or suited for their reasonable, expected and intended use in residential plumbing systems, and which were not free from defects in materials, design and workmanship."

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits it filed suit in Federal Court in Texas against Unique.  UPONOR denies Plaintiffs' characterization of its claim relating to Unique as set forth in Paragraph 63, and demands strict proof thereof.

64.   Uponor also admitted in the complaint against Unique Industrial that the F1807 fittings were "defective and unreasonably dangerous." A copy of the Uponor Amended Complaint is attached as Exhibit A.

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits it filed suit in Federal Court in Texas against Unique.  UPONOR denies Plaintiffs' characterization of its claim relating to Unique as set forth in Paragraph 64, and demands strict proof thereof.

65.   In the course of its lawsuit against Unique Industrial for the premature failures of the F1807 fittings, Uponor retained the services of Cynthia L. Smith, an engineer and one of Uponor's former employees.

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits it retained Cynthia Smith in connection with its suit against Unique.

66.   Ms. Smith issued reports and opinions in which she concluded that the F1807 fittings bought from Unique Industrial and sold by Defendants were defectively designed and manufactured. She concluded that the fittings were failing because of stress corrosion cracking

that was the result of improper manufacturing practices and off-specification materials. A copy of Ms. Smith's report is attached hereto as Exhibit B.

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits Ms. Smith offered professional opinions in connection with the suit against Unique.  UPONOR denies Plaintiffs' characterization of Ms. Smith's opinions as alleged in Paragraph 66.

67.   Ms. Smith also issued reports and opinions in which she concluded that the F1807 fittings bought from Unique Industrial and sold by Defendants had not failed because of installation practices or water conditions. She so concluded after analyzing fittings that had never been installed — i.e. were still in their original bag -- and yet displayed manufacturing, materials and other defects.

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits Ms. Smith offered professional opinions in connection with the suit against Unique.  UPONOR denies Plaintiffs' characterization of Ms. Smith's opinions as alleged in Paragraph 67.

68.   Ms. Smith also issued reports and opinions in which she concluded that the F1807 fittings bought from Unique Industrial and sold by Defendants had failed not because of water conditions and stated: "My conclusion that faulty installation was not a cause of failure in the brass fittings supplied by Unique Industrial was further supported by the history of fittings failures. A sudden rash of failures occurred in multiple states (where varying water chemistry conditions existed) during a narrowly defined time period, involving various plumbing

contractors who had previous experience successfully installing these components. This fact also undermines any question of installation error."

**ANSWER:**   RTI lacks knowledge regarding the truth of the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR admits Ms. Smith offered professional opinions in connection with the suit against Unique.  UPONOR denies Plaintiffs' characterization of Ms. Smith's opinions as alleged in Paragraph 68.


69.     In the course of its lawsuit against the Unique Industrial, Uponor also submitted a report and opinion from engineer Thomas Eagar. Like Ms. Smith, Mr. Eagar also concluded that the fittings sold by RTI and Uponor were defectively manufactured. A copy of Mr. Eagar's report is attached as Exhibit C.

**ANSWER:**   RTI lacks knowledge regarding the allegations set forth in this paragraph and, therefore deny them and demand strict proof thereof.  UPONOR admits that Dr. Eagar offered professional opinions in connection with UPONOR's claim against Unique.


70.     Mr. Eagar concluded that the fittings had failed because of improper machining practices, improper alloy composition and microstructure.

**ANSWER:**   RTI lacks knowledge regarding the allegations set forth in this paragraph and, therefore deny them and demand strict proof thereof.  UPONOR admits that Dr. Eagar offered professional opinions in connection with UPONOR's claim against Unique.  In answering further UPONOR denies that Plaintiffs' characterization of Dr. Eagar's opinions is complete and reflects the context of those opinions.

71.     Like Ms. Smith, Mr. Eagar also concluded that the composition of many of the fittings failed to comply with the ASTM standards governing F1807 fittings. Fittings that do not comply with that standard cannot be passed off and sold as being eligible for use in potable water systems in the United States.

**ANSWER:**   RTI lacks knowledge regarding the allegations set forth in this paragraph and, therefore deny them and demand strict proof thereof.  UPONOR admits that Dr. Eagar offered professional opinions in connection with UPONOR's claim against Unique.  In answering further UPONOR denies that Plaintiffs' characterization of Dr. Eagar's opinions is complete and reflects the context of those opinions.  In answering further UPONOR makes no answer to those allegations in Paragraph 71 regarding fittings being "passed off" as they state conclusions and opinions as opposed to allegations of fact.  Should any further answer be required UPONOR denies those allegations.

72.     Mr. Eagar also concluded that inappropriately elevated finish hardness and other residual stress from manufacture had contributed to the premature failure of the fittings.

**ANSWER:**   RTI lacks knowledge regarding the allegations set forth in this paragraph and, therefore deny them and demand strict proof thereof.  UPONOR admits that Dr. Eagar offered professional opinions in connection with UPONOR's claim against Unique.  In answering further UPONOR denies that Plaintiffs' characterization of Dr. Eagar's opinions is complete and reflects the context of those opinions.

73.     In addition to these judicial admissions, Uponor now publicly criticizes the F1807 fitting design. In a document currently available on its website, Uponor compares its P1960 fittings with the F1807 style fitting both Defendants previously sold.

**ANSWER:**   RTI lacks knowledge regarding the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.  UPONOR denies the legal conclusion in this paragraph regarding "judicial admissions".   UPONOR further denies that it has "publicly criticized the F1807 fitting design."


74.     In that product comparison, Uponor is critical of the thinner wall thickness of the F1807 fittings and states that: "Thinner wall offers less resistance to stress and corrosion." A copy of that advertisement is attached as Exhibit D.

**ANSWER:**   RTI lacks knowledge regarding the allegations contained in this paragraph and therefore denies them and demands strict proof thereof.   UPONOR denies Plaintiffs' characterization of the content of the document attached to the Amended Complaint as Exhibit "D".


75.     Uponor therefore itself now publicly criticizes the design flaws in the F1807 fittings and, as it did in its 2006 talking points memorandum, concedes that "the quality and design of the brass insert fitting used in the [Plumb-Pex system] does not measure up to Uponor's high quality standards."

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 75.


**Replacement of F1807 Fittings and Pex Systems**

76.     Recognizing that the F1807 fittings they sold were defective, Defendants have paid for or authorized the replumbing of certain properties containing those systems.

**ANSWER:**     UPONOR and RTI deny Plaintiffs' characterization of their conduct regarding F1807 fittings as referenced in Paragraph 76.


77.     For example, Defendants have paid for or authorized the replumbing of properties containing systems with F1807 fittings in the State of Virginia.

**ANSWER:**     UPONOR and RTI deny Plaintiffs' characterization of their conduct as set forth in paragraph 77.


78.     In addition, Defendants have paid for or authorized the replumbing of properties containing systems with F1807 fittings in the State of Nevada. In that replumbing program, Defendants agreed to replumb all homes built by D.R. Horton in which Defendants' F1807 fittings are installed.

**ANSWER:**     UPONOR and RTI deny the accuracy of Plaintiffs' characterization of "replumbing of properties" as described in Paragraph 78.


79.     In an October 2008 letter to homeowners, RTI advised homeowners "of the risk that the plumbing system in your home may be susceptible to future leaks." In that same letter, RTI offered to pay for complete repiping of plumbing systems owned by the purchasers of D. R. Horton homes. A copy of the RTI letter is attached as Exhibit E.

**ANSWER:**     UPONOR and RTI admit that Exhibit E is a copy of an October 2008 letter. In further answering, UPONOR and RTI deny that the allegations contained in Paragraph 79

27

accurately reflect the context of the letter or the circumstances at issue and therefore deny the remaining allegations of Paragraph 79.

80.     Unfortunately, Defendants refuse to repipe or replumb the homes or properties of all persons or entities who own systems with Defendants' F1807 fittings. Defendants instead apparently offer that work to only the customers of large home builders, leaving other consumers without the benefit of the same replacement.

**ANSWER:**     UPONOR and RTI deny the allegations contained in this paragraph.

81.     Defendants have refused the requests of property owners to replumb their homes to replace the fittings Defendants themselves have admitted are defective, unreasonably dangerous and not merchantable.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 81.

**Inadequate Testing of Brass Insert Fittings**

82.     Contrary to statements made in their advertising and marketing, Defendants did not test and did not ensure that the F1807 brass insert fittings had been tested in their anticipated environments before selling those fittings to the public. Defendants also failed to require their suppliers to perform such testing.

**ANSWER:**     UPONOR and RTI, deny the allegations contained in Paragraph 82 of the Amended Complaint.

28

83. Defendants did not "end use" test the brass insert fittings in pex plumbing systems and instead they or their suppliers used various assumptions when choosing or specifying the design and materials for this system. Such a practice violates engineering and manufacturing standards and accepted practice. Defendants also failed to require their suppliers to perform such testing.

**ANSWER:** UPONOR and RTI deny the allegations contained in Paragraph 83.

84. Defendants and / or their suppliers also conducted inadequate testing on their F1807 brass insert fittings and failed to test things that they knew or should have known would lead to premature failure of the brass fittings. Defendants also failed to require their suppliers to perform such testing.

**ANSWER:** UPONOR and RTI, deny the allegations contained in Paragraph 84.

85. Defendants and / or their suppliers also failed to investigate or test whether well-known and expected water conditions would lead to premature failure of the brass insert fittings. Defendants also failed to require their suppliers to perform such testing.

**ANSWER:** UPONOR and RTI deny the allegations contained in Paragraph 85 and demand strict proof thereof.

**False Advertising of Pex Plumbing Systems**

86.     Defendants falsely advertised that their pex plumbing systems — including their F1807 brass insert fitting components -- were reliable despite never testing and determining the reliability of the product when used in real world conditions.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 86 and, therefore, deny same and demand strict proof thereof.

87.     Defendants also falsely advertised that RTI had a long history in the plumbing industry and falsely claimed that the Plumb-Pex system was proven, reliable and the result of rigorous engineering and quality control.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 87 and demand strict proof thereof.

88.     For example, on RTI's web site, www.radiant-tech.com, Defendants advertised Radiant Technology in 1997 as company only in the business of selling radiant heating systems. Yet the very next year in 1998, RTI began claiming on the same web site that "Radiant Technology is a North American leader in the manufacture of both plumbing and heating products." Defendants knew that this statement was false and misleading because, among other things, RTI had just started selling plumbing systems for potable water. In addition, Defendants knew that they were not in fact manufacturing plumbing systems and knew that they were not the manufacturer of the Plumb-Pex brass fittings. Defendants continued to make these false statements on the www.radiant-tech.com web site until the fall of 2002. They then continued to

make the same or similar false statements on RTI's new web site, www.rti-systems.com , until the fall of 2004 when they announced that RTI would be closed.

**ANSWER:**   UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 88 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 88 regarding advertising, knowledge and the basis for statements made.


89.    On RTI's web site, www.radiant-tech.com , Defendants falsely claimed in 1998 that "Plumb-Pex is proven, reliable and completely safe for you and your family." Defendants knew that this statement was false and misleading because, among other things, RTI apparently did not do any engineering of the Plumb-Pex system and instead simply bought the fittings from manufacturers located in Asia. Defendants now claim that they did not design or manufacture the Plumb-Pex fittings and had absolutely no idea whether this system was "reliable" as they advertised to the public. In addition, this statement falsely claims that the Plumb-Pex system, which had just been developed and had little or no track record in the field, was "proven" or "reliable." Defendants continued to make these false statements on the www.radiant-tech.com web site until at least the fall of 2002. They then continued to make the same or similar false statements on RTI's new web site, www.rti-systems.com , until the fall of 2004 when they announced that RTI would be closed.

**ANSWER:**   UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 89 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 89 regarding advertising, knowledge and the basis for statements made.

90.     On RTI's web site. www.radiant-tech.com , Defendants falsely claimed in 1998 that "Our Plumb-Pex system is a carefully engineered flexible piping system that provides a durable, proven, and guaranteed solution to all your plumbing needs. RTI maintains the highest quality standards in the industry." Defendants knew that this statement was false and misleading because, among other things, RTI apparently did not do any engineering of the Plumb-Pex system and instead simply bought the fittings from manufacturers located in Asia. Defendants now claim that they did not design or manufacture the Plumb-Pex fittings and had absolutely no idea whether this system was "carefully engineered" as they advertised to the public. In addition, this statement falsely claims that the Plumb-Pex system, which had just been developed and had little or no track record in the field, was "proven" or "durable." In addition, RTI knew it did not have "the highest quality standards in the industry" when it did no quality control on the fittings in question. Defendants continued to make these false statements on the www.radianttech.com, web site until at least the fall of 2002. They then continued to make the same or similar false statements on RTI's new web site, www.rti-systems.com, until the fall of 2004 when they announced that RTI would be closed.

**ANSWER:**     UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 90 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 90 regarding advertising, knowledge and the basis for statements made.


91.     On 1998 RTI's web site, www.radiant-tech.com, Defendants falsely claimed that "With Radiant Technology's dedication to quality, you're assured of a long lasting and trouble free plumbing system." Defendants continued to make these false statements on the www.radiant-tech.com web site until at least the fall of 2002. They then continued to make the

same or similar false statement on RTI's new web site, www.ru-svstems.com, until the fall of 2004 when they announced that RTI would he closed. Defendants knew that this statement was false and misleading because, among other things, RTI did not do any quality control of the manufacturing process of the Plumb-Pex fittings and instead simply bought the fittings from third party manufacturers in Asia. Defendants therefore had no basis to represent that the quality standards used for the manufacture of the Plumb-Pex fittings would assure a long lasting and trouble free plumbing system. Defendants have since admitted in their lawsuit against Unique Industrial that Unique Industrial did not use acceptable quality standards and instead used substandard and unacceptable quality control and manufacturing processes.

**ANSWER:**   UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 91 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 91 regarding advertising, knowledge and the basis for statements made. Defendants further deny any admissions in connection with the lawsuit against Unique in Texas.


92.    In November 2002, Defendants published a Plumb-Pex brochure they distributed to consumers and made available on the RTI web site, www.rtisystems.com . In that brochure, Defendants falsely claimed that the Plumb-Pex system was a "carefully engineered flexible piping system which provides a durable, proven, and guaranteed solution to all your plumbing needs." Defendants continued to distribute the same or similar statements in that brochure for at least several years. Defendants knew that this statement was false and misleading because, among other things, RTI apparently did not do any engineering of the Plumb-Pex system and instead simply bought the fittings from manufacturers in Asia. Defendants have since admitted that they did not design or manufacture the fittings used in this system and have absolutely no

idea whether this system was "carefully engineered" as they advertised to the public. In addition, this statement falsely claims that the Plumb-Pex system, which had only been sold for a few years, was "durable" and "proven."

**ANSWER:**   UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 92 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 92, regarding advertising, knowledge and basis for statements made. Defendants further deny any admissions in connection with the lawsuit against Unique in Texas.


93.     In November 2002, Defendants published a Plumb-Pex brochure they distributed to consumers and made available on the RTI web site, www.rtisystems.com. In that brochure, Defendants falsely claimed that "We have the highest quality standards in the industry." Defendants continued to distribute the same or similar statements in that brochure for at least several years. Defendants knew that this statement was false and misleading because, among other things, RTI did not do any quality control of the manufacturing process of the Plumb-Pex fittings and instead simply brought the fittings from third party suppliers in Asia. Defendants therefore had no basis to represent that the quality standards used for the manufacture of the Plumb-Pex fittings were "the highest quality standards in the industry." Defendants have since admitted in their lawsuit against Unique Industrial that Unique Industrial did not use the highest quality standards in the industry and instead used substandard and unacceptable quality control and manufacturing processes.

ANSWER:     UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 93 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 93, regarding advertising, knowledge and basis for statements made.  In

answering further UPONOR and RTI deny Plaintiffs' characterization of what has been "admitted" in the lawsuit against Unique, as well as the sourcing and quality of fittings.

94.     In November 2002, Defendants published a Plumb-Pex brochure they distributed to consumers and made available on the RTI web site, www.rtisystems.com. In that brochure, Defendants falsely claimed that "With RTI's dedication to quality, you're assured of a long lasting and trouble free plumbing system." Defendants continued to distribute the same or similar statements in that brochure for at least several years. Defendants knew that this statement was false and misleading because, among other things, RTI did not do any quality control of the manufacturing process of the Plumb-Pex fittings and instead simply bought the fittings manufacturers in Asia, Defendants therefore had no basis to represent that the quality standards used for the manufacture of the Plumb-Pex fittings would assure a long lasting and trouble free plumbing system. Defendants have since admitted in their lawsuit against Unique Industrial that Unique Industrial did not use acceptable quality standards and instead used substandard and unacceptable quality control and manufacturing processes.

**ANSWER:**     UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 94 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 94, regarding advertising, knowledge and basis for statements made.  In answering further UPONOR and RTI deny Plaintiffs' characterization of what has been "admitted" in the lawsuit against Unique, as well as the sourcing and quality of fittings.

95.     Beginning no later than 2003, the "Who we are" section of the RTI web site, www.rtisystems.com falsely claimed that "Our Radiant Technology Heating and Plumb-Pex

Plumbing Systems are a result of over 20 years of experience and are backed by RTI's steadfast commitment to quality, product innovation, engineering and manufacturing technology." Defendants continued to make this statement on that site for at least several years. Defendants knew that this statement was false and misleading because, among other things, the Plumb-Pex system was new and had not been in existence for 20 years. Nor did RTI have 20 years' of experience in the plumbing industry. Defendants also knew that this statement was false and misleading because RTI did not do any quality control of the manufacturing process of the Plumb-Pex fittings and instead simply bought the fittings from manufacturers in Asia. Defendants therefore had no basis to represent that the quality and engineering standards used for the manufacture of the Plumb-Pex fittings were acceptable or of high quality, Defendants have since admitted in their lawsuit against Unique industrial that Unique Industrial did not use acceptable quality standards and instead used substandard and unacceptable quality control and manufacturing processes.

**ANSWER:**     UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 95 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 95 regarding advertising, knowledge and basis for statements made.  In answering further UPONOR and RTI deny Plaintiffs' characterization and allegations regarding the sourcing and quality of fittings.


96.     Beginning no later than 2003, the "Who we are" section of the RTI web site, www.rtisystems.com falsely claimed that "All RTI products undergo thorough testing to pass not only our strict quality standards, but to assure that we exceed those set by independent quality assurance agencies both in America and abroad." Defendants continued to make this statement

on that site for at least several years. Defendants knew that this statement was false and misleading because, among other things, because RTI did not do any quality control of the manufacturing process of the Plumb-Pex fittings and instead simply bought the fittings through manufacturers in Asia. Defendants therefore had no basis to represent that fittings had undergone thorough testing to pass RTI's "strict quality standards." Defendants knew that they did nothing to test the quality of the fittings and had no idea whether any testing or quality assurance was being done by the suppliers of the fittings.

**ANSWER:**   UPONOR and RTI deny that any "false and misleading" statements were made as alleged in Paragraph 96 and further deny the characterizations and conclusions set forth by Plaintiffs in Paragraph 96 regarding advertising, knowledge and basis for statements made.  In answering further UPONOR and RTI deny Plaintiffs' characterization and allegations regarding the sourcing and quality of fittings.


97.     Each of the false statements and misrepresentations made in the preceding paragraphs were repeatedly restated by Defendants' sales personnel, including but not limited to Frank Bilotta and David Holdorf, as well as Defendants' manufacturer's representatives, in the course of virtually every sale of the brass fittings at issue here. All of the sales and product literature provided by Defendants falsely implied that the Plumb-Pex system was proven, reliable, time tested, and the result of rigorous engineering and quality control practices. Defendants, however, knew at the time these statements were provided to consumers, suppliers, and contractors that the statements were false and unsupported.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 97 and demand strict proof thereof.

98.     At all times and in all communications with consumers, suppliers and contractors, Defendants and their representatives knowingly misrepresented RTI's experience in the plumbing industry. Contrary to the statements referenced herein, RTI was new to the potable water plumbing industry and had no experience in the design, manufacture and quality control of potable water plumbing systems and the brass fittings used for those systems.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 98 and demand strict proof thereof.

99.     At all times and in all communications with consumers, suppliers and contractors, Defendants and their representatives knowingly misled consumers into believing that RTI and/or Uponor actually designed, manufactured and quality controlled the Plumb-Pex system. In reality, Defendants knew that they had delegated all of those tasks to foreign manufacturers without any oversight by Defendants about the materials selections and manufacturing practices used to make the brass insert fittings used in those systems.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 99 and demand strict proof thereof.

100.    The falsity of Defendants' representations set out above can be seen from Defendants' judicial admissions. For example, Uponor states in its Amended Complaint in its lawsuit against Unique Industrial that: "Unique industrial selected Duksan Metal Co. of Korea to design, engineer and manufacture the Fittings. Neither RTI nor Uponor participated in the

38

selection of Duksan nor did they have contact with Duksan relating to the means, methods or circumstances regarding the manufacture of the fittings."

**ANSWER:**   UPONOR and RTI deny any false representations and deny Plaintiffs' characterization of "judicial admissions" contained in Paragraph 100, as well as denying that the language quoted accurately reflects the context of the statements made in the litigation with Unique.

101.   The falsity of Defendants' representations set out above can be seen from Defendants' judicial admissions. For example, Uponor states in its Amended Complaint in its lawsuit against Unique Industrial that Unique Industrial:

a)   defectively manufactured the subject Fittings;

b)   failed to take reasonable steps to ensure that the Fittings would not be subject or prone to fracturing post-manufacture in expected and intended residential use;

\* \* \*

d)   failed to properly test, inspect and evaluate the Fittings. . . prior to distributing those products to determine that they were suitable and fit for installation in residential plumbing systems;

e)   supplied RTI and UPONOR with. . . Fittings that were not merchantable, or suited for their reasonable, expected and intended use in residential plumbing systems, and which were not free from defects in materials, design and workmanship;

\* \* \*

g)   failed to supply Fittings that complied with ASTM standard Fl 807 and the chemical composition requirements specified in the attachments thereto;

See Exhibit A attached hereto. These admissions about the engineering, quality control, and compliance with ASTM standards starkly contrast the false statements made by Defendants to sell the Plumb-Pex systems.

**ANSWER:**   UPONOR and RTI deny any false representations and deny Plaintiffs' characterization of "judicial admissions" contained in Paragraph 101 as well as denying that the language quoted accurately reflects the context of the statements made in the litigation with Unique.

102.   At all times and in all communications with consumers, suppliers and contractors, Defendants and their representatives knowingly misled consumers into believing that the Plumb-Pex system was designed, manufactured and quality controlled in the United States. In reality, Defendants knew that they had sourced all of those tasks to foreign manufacturers without any oversight by Defendants about the materials selections and manufacturing practices used to make the brass insert fittings used in those systems.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 102 and demand strict proof thereof.

103.   At all times and in all communications with consumers, suppliers and contractors, Defendants and their representatives knowingly misled consumers into believing that the Plumb-Pex system was designed, manufactured and quality controlled in the United States by virtue of Defendants' placement of a stamp on those fittings that read "US-PW." Defendants knew and intended that such a stamp would mislead U.S. consumers into believing that the fittings were manufactured in the United States for use in potable water ("PW") systems. Defendants did this

40

to conceal the fact that they did not in fact manufacture the fillings and that they had instead purchased the fittings cheaply from Asia and instructed that the manufacturers in Korea and Taiwan affix these stamps to the fillings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 103 and demand strict proof thereof.

104.   At all times and in all communications with consumers, suppliers and contractors, Defendants and their representatives knowingly misled consumers into believing that the Plumb-Pex system was designed, manufactured and quality controlled in the United States by virtue of Defendants' placement of a stamp on those fittings that read "P-Pex," to indicate Defendants' trademarked Plumb-Pex brand. Defendants knew and intended that such a stamp would mislead U.S. consumers into believing that the fittings were manufactured by them in the United States for use in potable water systems. Defendants did this to conceal the fact that they did not in fact manufacture the fittings and that they had instead purchased the fittings cheaply from Asia and instructed that the manufacturers in Korea and Taiwan affix these stamps to the fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 104 and demand strict proof thereof.

105.   Whether the fittings were manufactured in the United States was a material fact for the consumers and purchasers of Plumb-Pex systems. Defendants both intentionally and by omission concealed the country of origin of the fittings with the intent that consumers and purchasers rely on those representations and omissions.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 105 and demand strict proof thereof.


106.   Plaintiffs   and   their   representatives   believed,   based   on   Defendants' representations, that Defendants designed, manufactured and quality controlled the Plumb-Pex fittings. Plaintiffs and their representatives would not have purchased or used Plumb-Pex fittings if they had known the truth about who designed, manufactured and quality controlled the fittings.

**ANSWER:**   UPONOR and RTI lack knowledge as to the truth of the allegations contained in Paragraph 106 and therefore, deny same and demand strict proof thereof.


107.   When Defendants and their representatives made each of the affirmative misrepresentations outlined above, Defendants knew the representations were false and / or misleading. Defendants and their representatives intended that consumers and purchasers of the Plumb-Pex system would rely on the false and misleading statements. The McGregors' plumber and North Anoka Plumbing in fact received and relied on such representations in their decision to purchase and install Defendants' Plumb-Pex plumbing systems.


**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 107 and demand strict proof thereof.


108.   Defendants also falsely stated in their advertising brochures and web site listings that the brass insert fittings used in the Plumb-Pex systems complied with ASTM Fl 807. For example, the April 2003 Plumb-Pex Plumbing Systems Design and Installation brochure states

that "Plumb-Pex fittings are manufactured of solid brass to ASTM F1807 'Metal Insert Fittings' specifications. Other literature produced by Defendants makes similar representations and similar representations were repeatedly made throughout the years on Defendants' www.radianttech.com and www.rti-systems.com web sites.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 108 and demand strict proof thereof.

109.   In addition to the representations made in their advertising materials and on their web sites, every one of the brass insert fittings sold by Defendants had a stamp on the side of the fitting which indicated that the fittings conformed to ASTM F877 and ASTM F1807. When a product or packaging is marked with the ASTM designation F1807, the product is represented to have been manufactured, tested, inspected and sampled in accordance with F1807 and has been found to meet F1807 requirements.

**ANSWER:**   UPONOR and RTI admit that fittings manufactured in accordance with ASTM standards contain markings placed by the manufacturer to that effect.   In further answering UPONOR and RTI deny any inferences sought to be drawn by Plaintiffs in the remaining allegations contained in Paragraph 109 and demand strict proof thereof.

110.   Defendants' fittings, however, did not comply with various aspects of the F1807 requirements including alloy composition and dimensions. Defendants knew or should have known that their advertising statements about compliance with ASTM standards were false. Defendants knew or should have known that their certification of compliance with ASTM standards by stamping those designations on the fittings were false.

43

**ANSWER:**   UPONOR and RTI state they lack knowledge as to what Plaintiffs' believe constitutes "Defendants' fittings" in the context of Paragraph 110 and, therefore, lack knowledge sufficient to form a belief as to the truth of the allegations contained within this paragraph, deny same and demand strict proof thereof.  In answering further UPONOR and RTI deny any "false" advertising/statements as alleged in this paragraph.


111. At all times and in all communications with consumers, suppliers and contractors, Defendants and their representatives knowingly misled consumers into believing that the brass insert fittings in their Plumb-Pex system complied with ASTM standards. Plaintiffs, their representatives and other consumers relied on these misrepresentations because the Plumb-Pex fittings could not have been used in potable water systems in the United States without compliance with those standards, Defendants, therefore, passed off brass fittings as being of a particular quality, standard or grade that they were in fact not.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 111 and demand strict proof thereof.


112.   Contrary to their representations about the fittings having been manufactured, tested, inspected and sampled in accordance with F1807, Uponor's experts Ms. Smith and Mr. Eagar have concluded that the Plumb-Pex fittings failed to meet F1807 requirements.

**ANSWER:**   UPONOR and RTI deny Plaintiffs' characterization of the conclusions and opinions of Ms. Smith and Dr. Eagar and deny any knowing representations contrary thereto.

113.    Defendants also falsely represented that owners of their pex plumbing systems "can rest assured that your new plumbing . . . system will provide a lifetime of reliable service."

**ANSWER:**    UPONOR and RTI deny the allegations in Paragraph 113 and demand strict proof thereof.

114.    Defendants also falsely advertised and represented that their pex plumbing systems and their F1807 brass insert fittings had been subject to decades of "rigorous testing and testing and testing and testing."

**ANSWER:**    UPONOR and RTI deny the allegations in Paragraph 114 and demand strict proof thereof.

115.    Defendants also falsely marketed their pex plumbing systems as being safe, reliable, and corrosion-resistant.

**ANSWER:**    UPONOR and RTI deny the allegations in Paragraph 115 and demand strict proof thereof.

116.    Defendants also falsely marketed and warranted their pex plumbing systems as being extensively tested, and that based on the results of those tests, the pex plumbing system and their F1807 brass insert fittings were properly designed, developed, marketed, and manufactured so as to perform adequately, reliably and as represented.

**ANSWER:**    UPONOR and RTI deny the allegations in Paragraph 116 and demand strict proof thereof.

45

117.   Defendants also falsely marketed and warranted that their pex plumbing systems were superior to copper plumbing systems.

**ANSWER:**   UPONOR and RTI deny the allegations in Paragraph 117 and demand strict proof thereof.

118.   Defendants also falsely marketed and warranted that their pex plumbing systems and the Fl807 brass insert fittings were of superior design and materials than similar products made by competitors.

**ANSWER:**   UPONOR and RTI deny the allegations in Paragraph 118 and demand strict proof thereof.

119.   When Defendants and their representatives made each of the affirmative misrepresentations outlined above, Defendants knew the representations were false and / or misleading. Defendants and their representatives intended that consumers and purchasers of the Plumb-Pex system would rely on the false and misleading statements.

**ANSWER:**   UPONOR and RTI deny the allegations in Paragraph 119 and demand strict proof thereof.

120.   Defendants and their authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing plumbing suppliers, builders, plumbers, and consumers to purchase and install pex plumbing systems and their F1807 brass insert fittings in their properties throughout the country.

46

**ANSWER:**   UPONOR and RTI deny the allegations in Paragraph 120 and demand strict proof thereof.

**Defendants' Omissions About the Quality of Their Plumb-Pex Fittings**

121.   Defendants also made numerous material omissions and uniformly withheld important information relating to the design, reliability and performance of their brass insert fittings and pex plumbing systems.

**ANSWER:**   UPONOR and RTI deny the allegations in Paragraph 121 and demand strict proof thereof.

122.   Among these omissions were the failure to inform purchasers and consumers about the tendency for these fittings to fail because of stress corrosion cracking or dezincification and to inform them that Defendants and their suppliers had done little or no testing to determine whether these fittings and the systems in which they were used would perform well in real world conditions.

**ANSWER:**   UPONOR and RTI deny any "omissions as alleged by Plaintiffs in this paragraph. In answering further, Defendants state that they lack knowledge as to what Plaintiffs believe constitutes "these fittings and the systems in which they were used" as referred to by Plaintiffs herein, are without sufficient information to form a belief as to the truth of the allegations contained within paragraph 122 and therefore, deny the allegations in this paragraph and demand strict proof thereof.

123.    Defendants also omitted material information about the limitations of the high zinc content yellow brass fittings including, for example, that the published literature going back as far as the 1940's had shown the propensity of that type of brass to crack in even pure water.

**ANSWER:**    UPONOR and RTI deny the allegations contained in Paragraph 123 and demands strict proof thereof.


124.    Defendants also omitted material information about the limitations of the high zinc content yellow brass fittings including, for example, that the propensity of that type of brass to crack exponentially increases following rough machining or finish practices like those used by Defendants and / or their suppliers.

**ANSWER:**    UPONOR and RTI deny the allegations contained in Paragraph 124 and demands strict proof thereof.


125.    Defendants also omitted material information from consumers about their lack of quality control or input about the design and manufacturing practices used to make the Plumb-Pex fittings.

**ANSWER:**    UPONOR and RTI deny the allegations contained in Paragraph 125 and demands strict proof thereof.


126.    Defendants also omitted material information from consumers including the fact that Defendants had completely delegated the design, manufacture and quality control of the Plumb-Pex fittings to foreign manufacturers located in Asia or elsewhere.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 126 and demands strict proof thereof.


127.   Defendants also omitted material information about their belief that "the quality and design of the brass insert fitting used in the [Plumb-Pex system] does not measure up to Uponor's high quality standards."

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 127 and demands strict proof thereof.


128.   Defendants also omitted material information from consumers about the country of origin and origin of the design and manufacture of the Plumb-Pex fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 128 and demands strict proof thereof.


129.   Defendants also omitted material information from consumers about the availability of materials that were more resistant to stress corrosion cracking than the high zinc content yellow brass used to make the Plumb-Pex fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 129 and demands strict proof thereof.


130.   Defendants also omitted material information from consumers about RTI's lack of experience in the plumbing industry and the fact that it had never manufactured or sold pex plumbing products before it began selling the Plumb-Pex system.

49

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 130 and demands strict proof thereof.

131.   Each of the omissions made in the preceding paragraphs were repeatedly made by Defendants' sales personnel, including but not limited to Frank Bilotta and David Holdorf, as well as Defendants' manufacturer's representatives, in the course of virtually every sale of the brass fittings at issue here. All of the sales and product literature provided by Defendants, Defendants' web sites, and their sales presentations all omitted the material facts recited herein. Defendants never disclosed the true facts they omitted as described above.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 131 and demands strict proof thereof.

132.   Had Defendants not withheld and omitted this material information about the design, reliability and performance of their Fl807 brass insert fittings and pex plumbing systems, Plaintiffs, their representatives and the members of the putative class would not have purchased those products or allowed them to be installed in their homes or properties.

**ANSWER:**   UPONOR and RTI lack knowledge as to the truth of the allegations contained in Paragraph 132 regarding the actions of Plaintiffs and therefore, deny same and demand strict proof thereof.   In answering further UPONOR and RTI deny withholding or omitting information as alleged in Paragraph 132 and demand strict proof thereof.

50

**Field Failures of Defendants' Pex Plumbing systems**

133.    By 2006 at the latest, Defendants received notice that their brass insert fittings were failing prematurely.

**ANSWER:**    UPONOR and RTI deny the overbroad and unlimited allegations contained in Paragraph 133 and demands strict proof thereof.


134.    Defendants' brass insert fittings have failed prematurely in numerous locations throughout the United States, including Arizona, Florida, Minnesota, Virginia, Washington, Wisconsin, Oregon, Utah, Montana, Missouri, Vermont, Iowa, Michigan, Louisiana, Idaho, and Indiana.

**ANSWER:**    UPONOR and RTI deny the overbroad and unlimited allegations contained in Paragraph 134 and demands strict proof thereof.


135.    Defendants analyzed the cause of these failures and concluded that the fittings were failing because of stress corrosion cracking and/or dezincification.

**ANSWER:**    UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes "these failures" and "the fittings" as referred to in Paragraph 135 and therefore deny same and demand strict proof thereof.


136.    To-date, Defendants have received hundreds of warranty claims for the failed Fl807 style fittings.

**ANSWER:**    UPONOR and RTI deny the allegations contained in Paragraph 136 and demand strict proof thereof.

137.   Because of these failures, Defendants have completely stopped selling F1807 style fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 137 and demand strict proof thereof..

138.   In recognition of the problems with its choice of high zinc content brass, Uponor now offers different materials for use in its pex plumbing fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 138 and demand strict proof thereof.

**Plaintiffs' Circumstances**

139.   After receiving and relying on the misrepresentations and omissions described herein, the McGregor's plumber purchased Defendants' pex plumbing systems through Defendants' authorized distributors. Through their licensed plumber, the McGregors purchased and had a pex plumbing system installed in their home located in Mead, Washington. That pex plumbing system used the brass fittings marketed and sold by Defendants and described herein.

**ANSWER:**   UPONOR and RTI deny any misrepresentations and omissions as alleged in Paragraph 139 and further deny that "the McGregor's plumber" made any purchases of fittings as a result thereof.  UPONOR and RTI further deny that the McGregor's plumbing system was fully plumbed with fittings distributed by UPONOR or RTI.

140.    Less than one year after installation, one of the F1807 fittings sold by Defendants failed at the McGregor home causing damage to property other than the pex plumbing system.

**ANSWER:**    UPONOR and RTI are presently without sufficient information to form a belief as to the truth of the allegations contained within Paragraph 140 and therefore, deny same and demand strict proof thereof.

141.    The McGregors submitted a warranty claim to Uponor for this failure and Uponor confirmed that the fittings were defective. Uponor therefore compensated the McGregors for the out-of-pocket damage caused by the failure.

**ANSWER:**    UPONOR and RTI admit only that the McGregor's submitted a warranty clam and UPONOR agreed to make a payment to the McGregor's in connection with that claim.

142.    Shortly thereafter, another of the F1807 fittings sold by Defendants failed at the McGregor home causing damage to property other than the pex plumbing system.

**ANSWER:**    UPONOR and RTI admit only that the McGregor's claimed another fitting failure had occurred at their home.

143.    The McGregors submitted another warranty claim to Uponor for this failure and Uponor confirmed that the fittings were defective. Uponor therefore again compensated McGregors for the out-of-pocket damage caused by the failure.

**ANSWER:**    UPONOR and RTI admit only that the McGregor's submitted a warranty clam and UPONOR agreed to make a payment to the McGregor's in connection with that claim.

144. Because of ongoing problems with the brass fittings in their home, the McGregors asked Uponor to replace all Uponor/RTI fittings that remained in their home. Uponor refused, leaving the McGregors with brass fittings in their home that Defendants have conceded are defective, unreasonably dangerous and not merchantable and which are destined to fail in the future.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 144 and demand strict proof thereof

145. Plaintiff Auto-Owners is the subrogee of North Anoka Plumbing, a plumbing contractor located in Minnesota. Pursuant to its subrogation rights, Auto-Owners is subrogated to the rights of and stands in the shoes of North Anoka Plumbing.

**ANSWER:**   UPONOR and RTI admit that North Anoka Plumbing is a plumbing contractor located in Minnesota. UPONOR and RTI are presently without sufficient information to form a belief as to the truth of the remaining allegations contained within this paragraph and therefore, deny same and demand strict proof thereof.

146. After receiving and relying upon the misrepresentations and omissions described herein, North Anoka Plumbing recommended, purchased and installed Defendants' pex plumbing systems in the homes or businesses of its customers.

**ANSWER:**   UPONOR and RTI deny any misrepresentations and omissions as alleged in Paragraph 146 and further deny that North Anoka Plumbing "recommended, purchased and installed" pex plumbing systems as a result thereof.

147.   Not long thereafter, North Anoka Plumbing began receiving reports about damage caused by the premature failure and leaking of Defendants' brass fittings.

**ANSWER:**   UPONOR and RTI are presently without sufficient information to form a belief as to the truth of the allegations contained within this Paragraph 147 and, therefore, deny same and demand strict proof thereof.

148.   A number of the brass fittings failures caused substantial damage to the homes and personal property of North Anoka Plumbing's customers. Some of those customers or their insurers made claims against North Anoka Plumbing.

**ANSWER:**   UPONOR and RTI are without sufficient information to form a belief as to the truth of the allegations contained within Paragraph 148 and, therefore, deny same and demand strict proof thereof.

149.   North Anoka Plumbing's insurer, Auto-Owners, investigated and adjusted the claims made by the customers of its insured, North Anoka Plumbing. After concluding that the claims were well documented and were the result of the failures of Defendants' brass fittings that had been installed by North Anoka Plumbing, Auto-Owners paid the claims.

**ANSWER:**   UPONOR and RTI admit only that Auto-Owners has represented itself to be North Anoka's insurer and that it has paid claims on behalf of North Anoka Plumbing. UPONOR and RTI are without sufficient information to form a belief as to the truth of the remaining allegations contained within this paragraph and therefore, deny same and demand strict proof thereof.

150.    Auto-Owners then submitted notices of subrogation and subrogation claims to Uponor for the amounts paid to resolve the claims brought against North Anoka Plumbing.

**ANSWER:**    UPONOR and RTI admit that UPONOR has received claims from Auto-Owners relating to North Anoka Plumbing.


151.    Those claims included claims for damage to property owned by Aaron and Treisha Peterson and property owned by Gold Star Kennels. Uponor assigned the following claim numbers to those claims RMA7 1775 and RMA721 15. The dollar amounts at issue in those claims totaled approximately $95,000.

**ANSWER:**    UPONOR and RTI admit claims have been submitted to UPONOR relating to Aaron and Treisha Peterson and Gold Star Kennels.  UPONOR and RTI deny the accuracy of the alleged value of those claims.


152.    Instead of honoring the claim for the fittings it and RTI sold and marketed, Uponor corresponded to Auto-Owners claiming that it was not the manufacturer of the failed brass fittings. Rather than honor its warranty, Uponor instead told Auto-Owners to submit its claims to Unique Industrial. A copy of the June 29, 2007 letter of Uponor employee Stacey Tix denying one of the Auto Owners claims is attached as Exhibit F.

**ANSWER:**    UPONOR and RTI deny the characterization of the letter attached as Exhibit "F" as described in Paragraph 152 and further deny any failure to honor a warranty.


153.    In the June 29, 2007, Uponor fraudulently claimed that because "we are not the manufacturer of the part..., the claim should not be sent to us." In doing so, Uponor purposely

tried to mislead Auto-Owners into believing that Defendants were not the issuers of the warranty provided with the brass insert fittings they had sold under their Plumb-Pex trade name.

**ANSWER:**     UPONOR and RTI deny the allegations contained in Paragraph 153 and demand strict proof thereof.

154.     Following Uponor's direction, Auto-Owners submitted its claims to Unique Industrial who in turn denied the claims by pointing the finger back at Uponor in a letter dated January 29, 2008. A copy of the January 29, 2008 letter from Unique Industrial is attached as Exhibit G. Auto-Owners has therefore not been reimbursed the approximately $95,000 it paid for damage caused by Defendants' defective brass fittings.

**ANSWER:**     UPONOR and RTI, admit that a copy of a January 29, 2008 letter is attached to the Amended Complaint as Exhibit "G".  UPONOR and RTI deny that Auto-Owners has not been reimbursed for either of the claims referred to in Paragraph 151.

155.     Plaintiffs, like many class members, have already suffered out-of-pocket damage to repair their home or the properties of others following the premature failures of Defendants' brass insert fittings. Likewise, all putative class members have incurred or are reasonably certain to incur, the cost of repairing their homes because of fittings failures and / or prematurely replacing their plumbing systems.

**ANSWER:**     UPONOR and RTI are without sufficient information to form a belief as to the truth of the allegations in Paragraph 155 regarding Plaintiffs themselves and, therefore, deny same and demand strict proof thereof.  UPONOR and RTI deny the remaining allegations contained in this paragraph.

156.   Plaintiffs and the proposed class members suffered general and specific compensatory and contractual damages including, without limitation consequential, incidental, loss of use, diminution of value, attorneys' fees, costs and disbursements.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 128 and demand strict proof thereof.

## DEFINITION OF PROPOSED CLASSES

157.   Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The first proposed class is defined as:

> All persons and entities that own a structure that contains a pex plumbing system with F1807 brass insert fittings sold by Uponor or RTI. The proposed class includes, without limitation, all such persons or entities who contacted Defendants or their representatives about their pex plumbing system and were denied or partially denied warranty coverage and/or replacement of their pex plumbing system.

**ANSWER:**   UPONOR and RTI admit that the Plaintiffs have brought the instant action in the form described therein.  In further answering, UPONOR and RTI deny that there are similarly situated class members, deny the remaining allegations contained in this paragraph and demand strict proof thereof.

158.   Alternatively, Plaintiffs bring this class action on behalf of themselves and all others similarly situated, for all claims alleged herein, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for a second proposed class defined as:

All persons and entities that own a structure, within certain of the United States, which contains a pex plumbing system with F1807 brass insert fittings sold by Uponor or RTI. The proposed class includes, without limitation, all such persons or entities who contacted Defendants or their representatives about their pex plumbing system and were denied or partially denied warranty coverage and /or replacement of their pex plumbing system.

**ANSWER:**   UPONOR and RTI admit that the Plaintiffs have brought the instant action in the form described therein.  In further answering, UPONOR and RTI deny that there are similarly situated class members, deny the remaining allegations contained herein and demand strict proof thereof.

159.   Plaintiffs specifically exclude Defendants or their related entities from the putative class, all subsidiaries or affiliates of Uponor; any entity in which Defendants have a controlling interest; and any and all of Defendants' employees, affiliates, legal representatives, heirs, successors or assignees.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that the Plaintiffs have brought the instant action in the form described therein.

160.   Plaintiffs also specifically exclude from the putative class any person or entity that has previously commenced and concluded a lawsuit against Defendants arising out of the subject matter of this lawsuit.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that the Plaintiffs have brought the instant action in the form described therein.

161.    Plaintiffs also specifically exclude from the putative class the judge assigned to this case and any member of the judge's immediate family.

**ANSWER:**    Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that the Plaintiffs have brought the instant action in the form described therein.

162.    Plaintiffs specifically include in the putative class the claims of all persons or entities, like insurance companies, that have paid for the repair, replacement and / or damage caused by prematurely failed brass insert fittings sold by Defendants.

**ANSWER:**    Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that the Plaintiffs have brought the instant action in the form described therein.

## SATISFACTION OF CLASS PREREQUISITES

163.    This class action satisfies numerosity, commonality, typicality, adequacy and superiority requirements for maintaining a class.

**ANSWER:**    UPONOR and RTI deny the allegations contained in Paragraph 163 and demand strict proof thereof.

164.    **Numerosity.** Pursuant to Rule 23(a)(1) of the Federal Rules of Civil Procedure, the putative class "is so numerous that joinder of all members is impracticable." The number of members of the putative class is believed to be tens of thousands of individuals and/or entities that own properties with Defendants' pex plumbing systems with F1807 brass insert fittings.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that Rule 23(a)(1) contains a numerosity requirement.  In further answering, UPONOR and RTI deny the remaining allegations contained in Paragraph 164 and demand strict proof thereof.

165.   Joinder of the persons and entities into whose properties the Defendants' pex plumbing systems were installed is impractical and not feasible.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 165 and demand strict proof thereof.

166.   **Commonality**. Pursuant to Rule 23(a)(2) of the Federal Rules of Civil Procedure, the putative class shares "questions of law or fact" that predominate and individualized issues. The common questions include, but are not limited to, the following:

- Were Defendants' brass insert fittings defectively designed for their intended application?

- If so, what is the nature of the design defect?

- Were Defendants' brass insert fittings defectively manufactured?

- Did Defendants fail to warn consumers that the brass insert fittings were not properly tested during design and development process?

- Did Defendants adequately warn consumers about any types of installations that may cause premature failure of the brass insert fittings?

- Did Defendants make fraudulent, false, deceptive and/or misleading statements in connection with the sale of pex plumbing systems in their product literature, including those relating to standards and reliability?

- Did Defendants omit material information when they sold their pex plumbing systems and F1807 brass insert fittings?

- Did Defendants properly account for foreseeable variations in installation in the development and design of their pex plumbing system and brass insert fittings?

- Did Defendants exercise reasonable care in the design, manufacture and testing of their pex plumbing system and F 1807 brass insert fittings?

- Are the brass insert fittings progressively deteriorating at an accelerated rate?

- Will the brass insert fittings fail prematurely?

- Did Defendants deliberately sell or allow brass insert fittings to be distributed after they knew the fittings were failing at an increased rate?

- Did Defendants engage in fraudulent, false, deceptive and/or misleading misconduct with respect to the handling of warranty claims?

- What categories of damages are recoverable for owners of structures with Defendants' pex plumbing systems and brass insert fittings, e.g., replacement, consequential, incidental or other damages?

- Are Plaintiffs entitled to relief under Defendants' express warranty?

- Can the class obtain a declaration concerning the types and categories of damages and remedies available to putative class members?

- Should Defendants be enjoined from denying warranty claims based on alleged warranty disclaimers or limitations?

- Are Plaintiffs' claims barred in whole or in part by any of Defendants' affirmative defenses?

**ANSWER:**  Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that Rule 23(a)(2) contains a commonality requirement.  In further answering, UPONOR and RTI deny the allegations contained in Paragraph 166 including all subparts and demand strict proof thereof.

167.  **Typicality**. Pursuant to Rule 23(a)(3) of the Federal Rules of Civil Procedure, the claims of the putative class representatives, Plaintiffs, "are typical of the claims ... of the class." Plaintiffs and all members of the putative class who own Defendants' defective pex plumbing systems with F1807 brass insert fittings have suffered damages as a result of Defendants' wrongful acts and misconduct. Pursuant to corporate directives, Defendants engaged in a similar pattern of misconduct towards both the Plaintiffs and all the other putative class members.

**ANSWER:**  Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that Rule 23(a)(3) contains a typicality requirement.  In further answering, UPONOR and RTI deny the allegations contained in Paragraph 167 including all subparts, and demand strict proof thereof.

168.  **Adequacy**. Pursuant to Rule 23(a)(4) of the Federal Rules of Civil Procedure, the putative class representatives "will fairly and adequately protect the interests of the class." Plaintiffs have no adverse interests to the putative class members, Plaintiffs were sold or installed plumbing systems with defective brass insert fittings. Plaintiffs have retained lawyers who have substantial resources, experience and success in the prosecution and defense of class

63

action, mass tort and complex litigation, and the insurance coverage and settlement issues attendant to the same.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that Rule 23(a)(4) contains an adequacy requirement.  In further answering, UPONOR and RTI deny the allegations contained in Paragraph 168  including all subparts, and demand strict proof thereof.


169.   **Superiority**. Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method of resolving this action for the following reasons: A class action in this instance conserves the resources of the putative class, Defendants and the Court. The damages of most putative class members are not, in isolation, significant enough to hire an attorney on a contingency basis, and the burden and expense of hiring an attorney on a per diem basis for Plaintiffs and most putative class members, makes it difficult if not impossible for the class members to seek redress. On information and belief, no Attorney General of any state has brought an enforcement action against Defendants to remedy the claims asserted herein.

Because the nature of the claims involved, the class members need swift and uniform resolution of their claims before additional damage is caused by plumbing system failures. Defendants have refused to pay Plaintiffs and the putative class members their full damages.

Further, there may or will be other cases pending against Defendants. Serial adjudications in numerous venues are not efficient, timely, or proper. Judicial resources throughout Minnesota and the United States will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in any one suit would be impractical or impossible. Individualized judgments and rulings could result in inconsistent relief for similarly

situated plaintiffs. Individualized lawsuits could also establish incompatible standards of conduct for Defendants in creating, marketing, sale and post-sale conduct in connection with their pex plumbing systems and brass insert fittings.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit that Rule 23(b)(3) contains a superiority requirement.  In further answering, UPONOR and RTI deny the allegations contained in Paragraph 169 including all subparts, and demand strict proof thereof.

## COUNT I

### (CONSUMER FRAUD)

170.   Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI repeat and restate their answers to paragraphs 1 through 169 of Plaintiffs' Amended Complaint inclusive, and incorporates the same by reference, as though fully set forth herein.

171.   Minnesota Statutes § 325F.69, subd. 1 makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit the existence of

Minnesota Statutes § 325F.69, subd. 1. UPONOR and RTI make no answer to the remaining allegations of Paragraph 171 as § 325F.69 speaks for itself.

172.    By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325F.69, subd. 1.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

173.    By making the misrepresentations set out in Paragraphs 86 through 118 of this Complaint which are hereby incorporated, Defendants used false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others rely on those statements, in the course of the sale of their F1807 fittings.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

174.    By making the omissions set out in Paragraphs 121 through 130 of this Complaint, which are hereby incorporated, Defendants used false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others rely on those statements, in the course of the sale of their F1807 fittings.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

66

175.   Defendants' wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, also includes, by way of example and not by limitation:

a.   Defendants' fraudulent, misleading, and deceptive statements and practices relating to their pex plumbing system and F1807 brass insert fittings;

b.   Defendants' warranty related misconduct, including their fraudulent, deceptive and unfair practice of lying about their lack of obligation for warranty claims for the F1 807 fittings (as described in Paragraphs 152 and 153 herein);

c.   Defendants' fraud and misrepresentation by omission, of information about the defective nature of their pex plumbing system and brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects,

d.   Defendants' concealment of the true nature of their defective plumbing system, and

e.   Defendants' continued sale of F1807 fittings after they knew about problems with their design and manufacture.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 175 and its subparts "a" through "e" and demand strict proof thereof.


176.   Plaintiffs John and Helen McGregor's licensed plumber received and relied upon the misrepresentations and omissions made by Defendants and described herein when deciding to purchase and install a Plumb-Pex system in the McGregor's home. North Anoka Plumbing received and relied upon the misrepresentations and omissions made by Defendants and

described herein when deciding to purchase and install Plumb-Pex systems in the homes and properties of its customers.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

177.   As a result of Defendants' fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practice practices relating to the sale of their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged from its first use.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

178.   As a result of Defendants' fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices, the Plaintiffs and putative class will suffer damages that include not only the full cost to replace their brass insert fittings, but also include, without limitation, consequential and incidental damages.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

179.   That as a direct, proximate and foreseeable result of Defendants' violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

## COUNT II

## (UNLAWFUL TRADE PRACTICES)

180.   Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI, answering Paragraph 180 of the Amended Complaint, repeat and restate their answers to paragraphs 1 through 179 of the Amended Complaint inclusive, and incorporates the same by reference, as though fully set forth herein.

181.   Minnesota Statutes § 325D. 13 provides that, "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit the existence of Minnesota Statute § 325D. 13.

182.   By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325D.13.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 182 and demand strict proof thereof.

183.    By making the misrepresentations set out in Paragraphs 86 through 118 of this Complaint, which are hereby incorporated, Defendants knowingly misrepresented the true quality and origin of their Plumb-Pex system with the intent that others would rely on those statements.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

184.    By making the omissions set out in Paragraphs 121 through 130 of this Complaint, which are hereby incorporated, Defendants knowingly misrepresented. the true quality and origin of their Plumb-Pex system with the intent that others would rely on those statements.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

185.    Defendants' wrongful conduct and misrepresentation of the true quality and origin of their pex plumbing systems and brass insert fittings, also includes, by way of example and not by limitation:

    a.    Defendants' fraudulent, misleading, and deceptive statements and practices relating to their pex plumbing system and Fl807 brass insert fittings;

    c.    Defendants' warranty related misconduct, including their fraudulent, deceptive and unfair practice of claiming that they were not responsible for warranty claims for the Fl807 fittings (as described in Paragraphs 152 and 153 herein);

c.   Defendants' fraud and misrepresentation by omission, of information about the defective nature of their pex plumbing system and brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects,

d.   Defendants' concealment of the true nature of their defective plumbing system, and

e.   Defendants' continued sale of F1807 fittings after they knew about problems with their design and manufacture.

**ANSWER:**   UPONOR and RTI deny the allegations contained in Paragraph 186 and its subparts "a" through "e" of the Amended Complaint and demand strict proof thereof.

186.   Defendants and their agents and distributors also misrepresented the true quality and origin of Defendants' pex plumbing system and their brass insert fittings by making the various statements about the alleged quality of the systems and brass insert fittings referenced throughout this Amended Complaint.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

187.   Plaintiffs John and Helen McGregor's licensed plumber received and relied upon the misrepresentations and omissions made by Defendants and described herein when deciding to purchase and install a Plumb-Pex system in the McGregor's home, North Anoka Plumbing received and relied upon the misrepresentations and omissions made by Defendants and described herein when deciding to purchase and install Plumb-Pex systems in the homes and properties of its customers.

71

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

188.    As a result of Defendants' practices relating to misrepresentation of the true quality of their pex plumbing systems and their brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged the first time it is used.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

189.    As a result of Defendants' practices relating to misrepresentation of the true quality of their pex plumbing systems and their brass insert fittings, the Plaintiffs and putative class will suffer damages that include not only the hill cost to replace their brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

190.    That as a direct, proximate and foreseeable result of Defendants' violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

## COUNT III

## (DECEPTIVE TRADE PRACTICES)

191.   Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI, answering Paragraph 191 of the Complaint, repeat and restate their answers to paragraphs 1 through 190 of Plaintiffs' Amended Complaint inclusive, and incorporate the same by reference, as though fully set forth herein.

192.   Minnesota Statutes § 325D.44, subd. 1 provides in part:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(5)   Represents that goods or services have.., characteristics, ingredients, uses, benefits.. .that they do not have...

(7)   Represents that goods or services are of a particular standard, quality, or grade,.. if they are of another.

(13)   Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations UPONOR and RTI admit the existence of Minnesota Statutes § 325D.44, subd. 1.

193.   By engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325D.44.

**ANSWER:**       UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

194.    By making the misrepresentations set out in Paragraphs 86 through 118 of this Complaint, which are hereby incorporated, Defendants knowingly misrepresented the true characteristics, standards, quality, and grade of their pex plumbing systems and brass insert fittings with the intent that others would rely on those statements.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

195.    By making the omissions set out in Paragraphs 121 through 130 of this Complaint, which are hereby incorporated, Defendants knowingly misrepresented the true characteristics, standards, quality, and grade of their pex plumbing systems and brass insert fittings with the intent that others would rely on those statements.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

196.    Defendants' wrongful conduct and misrepresentation of the true characteristics, standards, quality, and grade of their pex plumbing systems and brass insert fittings, also includes, by way of example and not by limitation:

a.    Defendants' fraudulent misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of their pex plumbing system and their brass insert fittings;

b.    Defendants' fraud and misrepresentation by omission, of information about the defective nature of Defendants' pex plumbing systems and their brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects, and

c.        Defendants' concealment of the true nature of their defective plumbing systems

**ANSWER:**        UPONOR and RTI deny the allegations contained in Paragraph 196 and its subparts "a" through "c" of the Amended Complaint and demand strict proof thereof.


197.    Defendants and their agents and distributors also misrepresented the true characteristics, standards, quality, and grade of their pex plumbing systems and their brass insert fittings by making the various statements about the alleged quality of the systems and brass insert fittings referenced throughout this Amended Complaint.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


198.    Plaintiffs John and Helen McGregor's licensed plumber received and relied upon the misrepresentations and omissions made by Defendants and described herein when deciding to purchase and install a Plumb-Pex system in the McGregor's home. North Anoka Plumbing received and relied upon the misrepresentations and omissions made by Defendants and described herein when deciding to purchase and install Plumb-Pex systems in the homes and properties of its customers.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


199.    As a result of Defendants' practices relating to misrepresentation of the true characteristics, standards, quality, and grade of their pex plumbing systems and its brass insert fittings, the Plaintiffs and putative class have suffered actual damages in that they have

purchased and installed in homes and structures a plumbing system that is defective and that is damaged the first time it is used.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


200.   As a result of Defendants' practices relating to misrepresentation of the true characteristics, standards, quality, and grade of their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class will suffer damages that include not only the Ml cost to replace their brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


201.   That as a direct, proximate and foreseeable result of Defendants' violation of statute, the Plaintiffs and putative class members sustained damages, in the aggregate, in excess of $50,000.00.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


## COUNT IV

### (FALSE ADVERTISING)

202.   Plaintiffs and proposed class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI, answering Paragraph 202 of the Amended Complaint, repeat and restate their answers to paragraphs 1 through 201 of Plaintiffs' Amended Complaint inclusive, and incorporate the same by reference, as though fully set forth herein.

      203.    That Minnesota Statutes § 325F.67 provides in part:

> Any person, firm, corporation, or association who, with intent to sell or in any way dispose of merchandise, . . . service, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or places before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise,... service or anything so offered to the public for use, consumption, purchase, or sale, which advertising contains any material assertion, representation or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any other person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

**ANSWER:**   Without admitting/conceding the legal sufficiency of the allegations made in this paragraph, or the appropriateness of those allegations, UPONOR and RTI admit the existence of Minnesota Statutes § 325F.67.

      204.    That by engaging in the conduct described herein, Defendants violated and continue to violate Minn. Stat. § 325F.67.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

205.   By making the misrepresentations set out in Paragraphs 86 through 118 of this Complaint, which are hereby incorporated, Defendants made untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and brass insert fittings with the intent that others would rely on those statements.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

206.   By making the omissions set out in Paragraphs 121 through 130 of this Complaint, which are hereby incorporated, Defendants knowingly made untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and brass insert fittings with the intent that others would rely on those statements.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

207.   Defendants' untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and brass insert fittings, also include, by way of example and not by limitation:

a.   Defendants' fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of Defendants' pex plumbing systems and their brass insert fittings;

b.   Defendants' fraud and misrepresentation by omission, of information about the defective nature of their pex plumbing systems and brass insert fittings, the improper design of the products, and Defendants' knowledge of those defects, and

c.   Defendants' concealment of the true nature of their defective plumbing systems

**ANSWER:**        UPONOR and RTI deny the allegations contained in Paragraph 207 and

its subparts "a" through "c" of the Amended Complaint and demand strict proof thereof.


208.    Defendants and their agents and distributors also made untrue, deceptive, and

misleading assertions and representations about their pex plumbing systems and their brass insert

fittings by making the various statements about the alleged quality of the systems and brass

insert fittings referenced throughout this Amended Complaint.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand

strict proof thereof.


209.    Plaintiffs John and Helen McGregor's licensed plumber received and relied upon

the untrue, deceptive, and misleading assertions and representations made by Defendants and

described herein when deciding to purchase and install a Plumb-Pex system in the McGregor's

home. North Anoka Plumbing received and relied upon the untrue, deceptive, and misleading

assertions and representations the misrepresentations made by Defendants and described herein

when deciding to purchase and install Plumb-Pex systems in the homes and properties of its

customers.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand

strict proof thereof.


210.    As a result of Defendants' untrue, deceptive, and misleading assertions and

representations about their pex plumbing systems and brass insert fittings, the Plaintiffs and

putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective and that is damaged the first time it is used.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


211.   As a result of Defendants' untrue, deceptive, and misleading assertions and representations about their pex plumbing systems and brass insert fittings, the Plaintiffs and putative class will suffer damages that include not only the flail cost to replace their brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


212.   Plaintiffs seek to enjoin Defendants from untrue, deceptive, and misleading assertions and representations about the pex plumbing systems.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


## COUNT V

## (NEGLIGENCE)

In light of the District Court's January 4, 2010 Memorandum Order and Opinion granting Defendants' Motion to Dismiss Count V as to the McGregor's, Defendants Answer the allegations of Count V only as to Auto-Owners.

213.   Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI, answering Paragraph 213 of the Amended Complaint, repeat and restate their answers to paragraphs 1 through 212, and incorporate the same by reference, as though fully set forth herein.


214.   Defendants were negligent in that they failed to use reasonable care when they created, marketed and sold their pex plumbing systems with F1807 brass insert fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


215.   As the manufacturer and / or seller of consumer products, Defendants owed a duty to Plaintiffs and the putative class members to provide a safe and quality product, and a duty to provide a product that would perform as it was advertised. Defendants breached those duties.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


216.   That as a direct and proximate result of Defendants' negligence, lack of care, and other wrongful acts, Plaintiffs and the putative class members sustained and will sustain damages.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

217.    As a result of Defendants' negligence, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in their homes and structures, or the homes and structures of their customers, a plumbing system that is defective and is damaged upon its initial use.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

218.    As a result of Defendants' negligence, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace brass insert fittings and plumbing systems, but also include, without limitation, consequential and incidental damages.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

219.    That as a direct, proximate and foreseeable result of Defendants' negligence, Plaintiffs and the putative class members have been damaged, in the aggregate, in excess of $50,000.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

## COUNT VI

## (NEGLIGENT FAILURE TO WARN)

In light of the District Court's January 4, 2010 Memorandum Order and Opinion granting Defendants' Motion to Dismiss Count VI as to the allegations of the McGregor's, Defendants answer Count VI only as to Auto-Owners.

220.    Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**    UPONOR and RTI, answering Paragraph 220 of the Amended Complaint, repeat and restate their answers to paragraphs 1 through 219 and incorporate the same by reference, as though fully set forth herein.

221.    As the manufacturer and seller of a consumer product, Defendants had a duty to provide instructions for proper use of their products.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

222.    As the manufacturer and seller of a consumer product, Defendants had a duty to warn of foreseeable dangers inherent in the proper use of their products and also had a duty to warn of dangers associated with foreseeable misuse of their products.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

83

223.    Defendants became aware through various claims and reports that the brass insert fittings they were selling, distributing and advertising were subject to premature failures, problems and deterioration.

**ANSWER:**    UPONOR and RTI lack knowledge as to what Plaintiffs believe constitutes "premature failures, problems and deterioration" as referred to in this paragraph and therefore are without sufficient information to form a belief as to the truth of those allegations, deny same and demand strict proof thereof.


224.    Despite the fact that Defendants knew their product was defective and that their pex systems would not perform as advertised, warranted or otherwise expressly represented, Defendants continued to sell the products to the public without correction and, in fact, concealed from the public the fact that their pex system and brass insert fittings were defective, not durable and would begin to fail immediately upon being placed into service.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


225.    Because the pex plumbing systems related to the habitability of persons' homes, Defendants had a duty to the consumer and to the public to disclose the defective nature of their system and not to conceal and suppress the defective nature of the product from Plaintiffs and the putative class members.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


84

226.    Defendants, however, have engaged in a scheme to cover up the true nature of the problem with their brass insert fittings and plumbing systems. This scheme included the concealment of Defendants' marking as "confidential" their 2006 talking points memorandum which concedes that "the quality and design of the brass insert fitting used in the [Plumb-Pex system] does not measure up to Uponor's high quality standards." This scheme also includes Uponor's attempts to keep information about its admissions of the defective nature of the fittings out of the public domain by trying to seal court files and by engaging in replumbing programs for some large home builders utilizing secured web sites and other methods of communication to preclude others from learning about the problems with the Plumb-Pex systems.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


227.    To this day, Defendants continue in this pattern of concealment and suppression by deliberately and knowingly misrepresenting to the public the true nature of the problems with the brass insert fittings. In fact, many members of the putative class are still unaware that their plumbing system is prematurely failing and will continue to fail due to its design and manufacturing defects.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.


228.    That to the extent Defendants claim in this lawsuit -- contrary to their prior judicial admission — that the premature failures of their plumbing systems and brass insert fittings was the result of characteristics of the water chemistry present in Plaintiffs or the

85

members of the putative class's water supply, Defendants failed to warn of those characteristics or dangers. As the manufacturer, seller and distributor of consumer products, Defendants had a duty to provide such information.

**ANSWER:** UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

229. That to the extent Defendants claim in this lawsuit — contrary to their prior judicial admissions --that the premature failures of their plumbing systems and brass insert fittings was the result of characteristics of the water chemistry present in Plaintiffs or the members of the putative class's water supply, Defendants failed to provide Plaintiffs and members of the putative class with any instructions, information or warnings about the types of water conditions likely to cause premature failures. As the manufacturer and seller of consumer products, Defendants had a duty to provide such information.

**ANSWER:** UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

230. That as a direct, proximate and foreseeable result of Defendants' failure to warn, Plaintiffs and the proposed members of the class suffered damage.

**ANSWER:** UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

231. As a result of Defendants' failure to warn, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in homes and structures a

plumbing system that is defective and that has caused damage to property other than the system itself and that is damaged upon its initial use.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

232.   As a result of Defendants' failure to warn, Plaintiffs and the putative class will suffer damages that include not only the full cost to replace their plumbing systems and brass insert fittings, but also include, without limitation, consequential and incidental damages.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

233.   That as a direct, proximate and foreseeable result of Defendants' negligence, Plaintiffs and the putative class members have been damaged, in the aggregate, in excess of $50,000.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

## COUNT VII

### (NEGLIGENT MISREPRESENTATION)

234.   Plaintiffs and the putative class members re-allege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**    UPONOR and RTI repeat and restate their answers to paragraphs 1 through 233 of Plaintiff's Amended Complaint inclusive, and incorporate the same by reference, as though fully set forth herein.

235.    In making material misrepresentations of material facts regarding the characteristics and capabilities of their pex plumbing system through their advertising and product information and through their internet websites, Defendants knew or should have known they were misrepresenting material facts and that Plaintiffs and the putative class (and also Defendants' distributors and installers, and through them, Plaintiffs and the putative class), would be relying on Defendants' representations to their detriment and damage.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

236.    In concealing material facts regarding the characteristics and capabilities of their pex plumbing systems, Defendants knew or should have known they were not disclosing material facts and that Plaintiffs and the putative class (and also Defendants' distributors and installers, and through them, Plaintiffs and the putative class), would be relying on Defendants' representations to their detriment and damage.

**ANSWER:**    UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

237.    Defendants made the material misrepresentations in the regular course of their business intentionally, recklessly or without exercising reasonable care in communicating the

true characteristics and capabilities of their pex plumbing system, and / or with the intent that Plaintiffs and the putative class members would rely on the false representations and purchase Defendants' pex plumbing systems.

**ANSWER:**     UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

238.     Plaintiffs and the putative class and / or their agents were unaware of the falsity of Defendants' representations, and as a result, they justifiably relied on them in purchasing Defendants' pex plumbing systems.

**ANSWER:**     UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

239.     That as a direct, proximate and foreseeable result of Defendants' failure to fully disclose material facts and Defendants' making misrepresentations of material fact, Plaintiffs and members of the putative class suffered damage.

**ANSWER:**     UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

240.     As a result of Defendants' misconduct, Plaintiffs and the putative class have suffered actual damages in that they have purchased and installed in homes and structures a plumbing system that is defective, that has caused damage to property other than the system itself and that is damaged upon its initial use.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

241.   As a result of Defendants' misconduct, Plaintiffs and the putative class will suffer damages that include not only the hill cost to replace plumbing systems and brass insert fittings, but also include, without limitation, consequential and incidental damages.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

242.   That as a direct, proximate and foreseeable result of Defendants' negligent misrepresentations, Plaintiffs and the putative class members have been damaged, in the aggregate, in excess of $50,000.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

## COUNT VIII

### (BREACH OF EXPRESS WARRANTIES)

243.   Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI, answering Paragraph 243 of the Amended Complaint, repeat and restate their answers to paragraphs 1 through 242 of Plaintiff's Amended Complaint inclusive, and incorporates the same by reference, as though fully set forth herein.

244.   Defendants made certain express warranties to distributors, plumbers and consumers about the goods they would provide.

**ANSWER:**   UPONOR and RTI state that they lack knowledge as to what Plaintiffs believe constitutes the "goods they would provide" as referred to by Plaintiffs in this Paragraph 244 and therefore are without sufficient information to form a belief as to the truth of the allegations contained within herein, deny same and demand strict proof thereof.

245.   The express warranties provided by Defendants included warranties that Defendants would provide properly designed and manufactured plumbing systems and a lengthy warranty on such systems. Defendants also made numerous other express warranties as previously set forth in this Amended Complaint.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

246.   Plumbing distributors, plumbers, Plaintiffs and the putative class members relied upon Defendants' express warranties.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

247.   Defendants breached such express warranties by providing defective plumbing systems that have or are reasonably certain to fail well before the warranted or useful life of the system. Defendants also breached their warranties to Plaintiffs and the putative class by refusing

to honor their express warranties when presented with claims and damage covered by the terms of the warranty.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

248.   Defendants also breached such express warranties by refusing to handle warranty claims submitted to them for failed Plumb-Pex systems and instead falsely stating that the "claim should not be sent to us" and should instead be sent to Unique Industrial or some other supplier of the fittings.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

249.   Defendants also breached such express warranties by refusing to replumb the McGregors' home and the properties of other members of the putative class.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

250.   That as a direct, proximate and foreseeable cause of Defendants' breach of express warranty, Plaintiffs and the putative class members sustained damages, in the aggregate, in excess of $50,000.

**ANSWER:**   UPONOR and RTI deny the allegations contained in this paragraph and demand strict proof thereof.

## COUNT IX

## (DECLARATORY AND INJUNCTIVE RELIEF)

251.   Plaintiffs and the putative class members reallege the foregoing paragraphs, inclusive, as though fully set forth herein.

**ANSWER:**   UPONOR and RTI, answering Paragraph 251 of the Amended Complaint, repeat and restate their answers to paragraphs 1 through 250 of Plaintiffs' Amended Complaint inclusive, and incorporate the same by reference, as though fully set forth herein.

252.   Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure and any applicable statute or rule providing for declaratory and/or injunctive relief, Plaintiffs and the putative class members seek a declaratory judgment as follows:

a.   To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the warranties fail of their essential purpose because the remaining remedies provided therein are inadequate and deprive the class of the benefit of the bargain of their purchases, because Defendants at the time of sale and thereafter concealed and suppressed that the systems were defective, and because the provisions are otherwise unconscionable;

b.   To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of express warranty preclude full recovery of damages, the same is unconscionable because the warranties do not provide adequate remedies because the defect in the plumbing systems is latent and because the Plaintiffs lack sufficient bargaining power;

c.   To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is unlawful and unenforceable;

d.   To the extent Defendants allege that any pretend limitations, restrictions or disclaimers of implied warranty preclude full recovery of damages, the same is

barred by Defendants' failure to provide the alleged warranty disclaimers at the time of sale of the product;

e.   Any releases obtained by Defendants, that did not otherwise provide full compensation to the putative class, were fraudulently induced, are unconscionable, were obtained by suppression and concealment, were obtained under duress by persons needing to repair their plumbing systems, and are null and void; and

f.   To the extent Defendants have had an adverse adjudication against them arising from the subject mailer of this Complaint, that the putative class may use offensive collateral estoppel against Defendants for the rulings and determinations therein.

ANSWER:   UPONOR and RTI deny the allegations contained in Paragraph 252 and its subparts "a" through "f" of the Amended Complaint and deny that Plaintiffs are entitled to any declaratory or injunctive relief.

WHEREFORE, UPONOR, INC. and RADIANT TECHNOLOGY, INC. pray for judgment against the Plaintiffs as follows:

a)   That the Plaintiffs take nothing by virtue of the Amended Complaint;

b)   That Defendants be awarded their costs of suit incurred herein;

c)   That Defendants be awarded their attorney's fees and costs; and

d)   For such other and further relief as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.   UPONOR and RTI deny the allegations of the Amended Complaint, each cause of action, each paragraph in each cause of action, and each and every part thereof, including a denial that the Plaintiffs were damaged in the sum or sums alleged, or to be alleged, or any other sum or sums whatsoever.

## SECOND AFFIRMATIVE DEFENSE

2.      UPONOR and RTI deny that by reason of any act or omission, fault, conduct or liability on their part, whether negligent, careless, unlawful or whether as alleged, or otherwise, the Plaintiffs were injured or damaged in any of the amounts alleged, or in any other manner or amount whatsoever; these Defendants further deny that they were negligent, careless, reckless, wanton, acted unlawfully or are liable, whether in the manner alleged or otherwise.

## THIRD AFFIRMATIVE DEFENSE

3.      UPONOR and RTI are informed and believe, and thereon allege, that the Amended Complaint, and each and every cause of action stated therein, fails to state facts sufficient to constitute a cause of action, or any cause of action, as against them.

## FOURTH AFFIRMATIVE DEFENSE

4.      UPONOR and RTI are informed and believe, and thereon allege, that if the Plaintiffs herein suffered or sustained any loss, injury, damage or detriment, the same is directly and proximately caused and contributed to, in whole or in part, by the breach of warranty, conduct, acts, omissions, activities, carelessness, recklessness, negligence, and/or intentional misconduct of the Plaintiffs, thereby completely or partially barring the Plaintiffs' recovery herein.

## FIFTH AFFIRMATIVE DEFENSE

5.      UPONOR and RTI are informed and believe, and thereon allege, that they are not legally responsible in any fashion with respect to the damages and injuries claimed by the Plaintiffs; however, if either of these Defendants are subjected to any liability to the Plaintiffs, it will be due, in whole or in part, to the breach of warranty, acts, omissions, activities, carelessness, recklessness, and negligence of others; wherefore any recovery obtained by the Plaintiffs or any other Party herein against these answering Defendants should be reduced in proportion to the respective negligence and fault and legal responsibility of all other parties,

persons and entities, their agents, servants and employees who contributed to and/or caused any such injury and/or damages, in accordance with the law of comparative negligence; consequently, these answering Defendants are informed and believe, and thereon allege, that their liability, if any, is limited in direct proportion to the percentage of fault actually attributed, individually, to these answering Defendants.

## SIXTH AFFIRMATIVE DEFENSE

6.    If these Defendants are found responsible in damages to Plaintiffs or some other party, whether as alleged or otherwise, then these answering Defendants are informed and believe, and thereon allege, that the liability will be predicated upon the active conduct of the Plaintiffs, whether by negligence, breach of warranty, strict liability in tort or otherwise, which conduct proximately caused the alleged damage and that the Plaintiffs' action against the answering Defendants is therefore barred by that active and affirmative conduct.

## SEVENTH AFFIRMATIVE DEFENSE

7.    These Defendants are informed and believe, and thereon allege, that the Amended Complaint, and each and every cause of action contained therein, is barred by the applicable Statute(s) of Repose.

## EIGHTH AFFIRMATIVE DEFENSE

8.    These Defendants are informed and believe, and thereon allege, that as to each alleged cause of action, the Plaintiffs have failed, refused and neglected to take reasonable steps to mitigate their alleged damages, if any, thus barring or diminishing the Plaintiffs' recovery herein.

## NINTH AFFIRMATIVE DEFENSE

9.    These Defendants are informed and believe, and thereon allege, that the Amended Complaint, and each and every cause of action contained therein, is barred by the applicable Statute(s) of Limitation.

## TENTH AFFIRMATIVE DEFENSE

10.     These Defendants are informed and believe, and thereon allege, that the Plaintiffs unreasonably delayed both the filing of the Original Complaint and notification to the Defendants of the alleged defects, any alleged negligence and the basis for the causes of action alleged against these answering Defendants, all of which has unduly and severely prejudiced these answering Defendants in their defense of the action, thereby barring or diminishing the Plaintiffs' recovery herein under the Doctrine of Estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     These Defendants are informed and believe, and thereon allege, that the Plaintiffs unreasonably delayed both the filing of the Original Complaint and notification to the Defendants of the alleged defects, any alleged negligence and the basis for the causes of action alleged against these answering Defendants, all of which has unduly and severely prejudiced these answering Defendants in their defense of the action, thereby barring or diminishing the Plaintiffs' recovery herein under the Doctrine of Waiver.

## TWELFTH AFFIRMATIVE DEFENSE

12.     These Defendants are informed and believe, and thereon allege, that the Plaintiffs unreasonably delayed both the filing of the Original Complaint and notification to the Defendants of the alleged defects, any alleged negligence and the basis for the causes of action alleged against these answering Defendants, all of which has unduly and severely prejudiced these answering Defendants in their defense of the action, thereby barring or diminishing the Plaintiffs' recovery herein under the Doctrine of Laches.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.     These Defendants are informed and believe, and thereon allege, that the Plaintiffs have failed to join all necessary and indispensable parties to this lawsuit.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.     These Defendants are informed and believe, and thereon allege, that the injuries and damages of which the Plaintiffs complain were proximately caused, or contributed to, by the acts of other persons and/or other entities, and that said acts were an intervening and superseding cause of the injuries and damages, if any, of which the Plaintiffs complain, thus barring the Plaintiffs from any recovery against these answering Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.     These Defendants are informed and believe, and thereon allege, that the Plaintiffs, or other persons or entities, without the knowledge or consent of these answering Defendants, altered the plumbing products referred to by Plaintiffs, and to the extent that the Plaintiffs have incurred or suffered any damages, which these Defendants deny, such alleged damages were solely and proximately caused by such alteration.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.     It has been necessary for these Defendants to retain the services of an attorney to defend this action, and these Defendants are entitled to a reasonable sum as and for attorney's fees.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     These Defendants are informed and believe, and thereon alleges, that the claims of the Plaintiffs are reduced, modified and/or barred by the Doctrine of Unclean Hands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.     These Defendants are informed and believe, and thereon allege, that any and all events, happenings, injuries and damages alleged by the Plaintiffs were a direct result of an act of God.

## NINETEENTH AFFIRMATIVE DEFENSE

98

19.    These answering Defendants are informed and believe, and thereon allege, that the Plaintiffs have not provided timely Notice of Warranty claims.

## TWENTIETH AFFIRMATIVE DEFENSE

20.    These Defendants are informed and believe, and thereon allege, that the Plaintiffs failed to fulfill express contractual conditions precedent to the Defendants' performance, and such failure excuses any nonperformance by these Defendants.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

21.    These Defendants are informed and believe, and thereon allege, that actions and omissions by the Plaintiffs constituted a breach of contract, and such breach excuses any nonperformance by these answering Defendants.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

22.    These Defendants are informed and believe, and thereon allege, that the Plaintiffs' damages, if any, proximately resulted from the use of plumbing products referred to by Plaintiffs in an unintended and abnormal manner and not from any alleged defect or mechanical failure of any of their components.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

23.    These Defendants are informed and believe, and thereon allege, that if there was any defect in the plumbing products referred to by Plaintiffs that such defect did not exist at the time said products left the possession of the manufacturer or distributor, and was caused by the misuse, abuse, changes, modifications and alterations of others, including the Plaintiffs herein, and that any alleged defects were caused by such misuse, abuse, changes, alterations and modifications.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

24.    These Defendants are informed and believe, and thereon allege, that the Plaintiffs expressly, voluntarily, and knowingly assumed all risks about which they complain in the

Amended Complaint and, therefore, are barred either totally, or to the extent of said assumption, from any damages.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

25.     These answering Defendants are informed and believe, and thereon allege, that at no time prior to the filing of this action did the Plaintiffs, or any agent, representative or employee thereof, notify these Defendants of any breach of any contract, warranty, or duty to the Plaintiffs; therefore, the Plaintiffs are barred from any right of recovery from these answering Defendants.  Furthermore, these Defendants are informed and believe, and thereon allege, that the Plaintiffs are barred and precluded from any recovery in this action because these Defendants at all times complied with the applicable standard of care required at the time and in the given location.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

26.     These Defendants are informed and believe, and thereon allege, that Plaintiffs' claims are improperly based upon extrapolation.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

27.     These Defendants are informed and believe, and thereon allege, that  no privity exists between Plaintiffs and or these answering Defendants.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

28.     These Defendants are informed and believe, and thereon allege, the plumbing products referred to by Plaintiffs which are alleged to be the responsibility of these answering Defendants complied with any and all applicable local, state, and federal statutes, regulations, codes, ordinances and specifications and were in compliance and conformity with the state of the art at all relevant times.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

29.     These Defendants are informed and believe, and thereon allege, that Plaintiffs failed to provide them with a reasonable opportunity to cure any defective condition in the

products at issue and are, therefore, estopped and barred from any recovery for the matters set forth in Plaintiffs' Amended Complaint

## THIRTIETH AFFIRMATIVE DEFENSE

30.     These Defendants are informed and believe, and thereon allege, that Plaintiffs and/or others are responsible for spoliation of the evidence, thus limiting or completely absolving any liability of these Defendants.

## THIRTY-FIRST AFFIRMATIVE DEFENSE.

31.     These Defendants are informed and believe, and thereon allege, that Plaintiffs' claims are barred by the learned intermediary, informed intermediary and/or sophisticated user doctrine.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

32.     These Defendants are informed and believe, and thereon allege, that Plaintiffs' damages, if any, are subject to a set-off in the amount of any reimbursement received as a result of any insurance or settlement of other parties, or any amounts paid for or by any insurance or other party.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

33.     These Defendants are informed and believe, and thereon allege, that Plaintiffs' claims are barred because the products at issue were designed, manufactured, and marketed in accordance with the state of the art and when the product left the manufacturer and/or distributor's control, no practical and technically feasible alternative design was available that would have prevented the harm for which Plaintiffs seek to recover without substantially impairing the safety or usefulness of the product for its intended use.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

34.     Plaintiffs' claims are barred, in whole or in part, because these Defendants acted in good faith at all relevant times and gave adequate warnings of all known or reasonably knowable risks associated with the use of the product(s).

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

35.     These Defendants are informed and believe, and thereon allege, that Defendants did not breach any implied warranties or warranties created by law.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

36.     Plaintiffs' negligence claims are barred by the economic loss doctrine.

**UPONOR, INC.**

By:     /s/Howard L. Lieber
One of its attorneys
John R. Schleiter, Esq.
Howard L. Lieber, Esq.
Fisher Kanaris, P.C.
200 South Wacker Drive, Suite 200
Chicago, IL 60606
(312) 474-1400 (Telephone)
(312) 474-1410 (Fax)

Bradley D. Fisher
Foley & Mansfield, PLLP
250 Marquette Avenue
Suite 1200
Minneapolis, MN 55401
(612) 349-9845 (Telephone)
(612) 338-8690 (Fax)