## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| John and Helen McGregor, and Auto-Owners Insurance Company, as Subrogee of North Anoka Plumbing, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>Uponor, Inc., successor to Uponor North America, Inc., and Radiant Technology, Inc.,<br><br>             Defendants/Third Party Plaintiffs<br><br><br>Uponor, Inc., and Radiant Technology, Inc.,<br><br>             Defendants/Third Party Plaintiffs,<br><br>v.<br><br>Unique Industrial Product Company and Duk San Metal Company,<br><br>             Third Party Defendants. | Court File No. 09cv1136/ADM/JJK<br><br>Class Action<br><br><br>UPONOR, INC. and RADIANT TECHNOLOGY INC.'s FIRST AMENDED THIRD PARTY COMPLAINT |

NOW COME Defendants/Third Party Plaintiffs, UPONOR, INC. (hereinafter "UPONOR") and RADIANT TECHNOLOGY, INC. (hereinafter "RTI") and for their First Amended Third Party Complaint pursuant to Federal Rule of Civil Procedure 14(a) against Third Party Defendants UNIQUE INDUSTRIAL PRODUCT COMPANY (hereinafter "UNIQUE") and DUK SAN METAL COMPANY (hereinafter "DUK SAN") state as follows:

## PARTIES

1.      At various times relevant hereto, RTI was a company located at 11 Farber Drive, Bellport, N.Y. 11713.  RTI was engaged in the business of supplying/distributing various products including, but not limited to, brass fittings used in connection with residential potable water plumbing systems.

2.      At all times relevant, UPONOR was and is a corporation incorporated in Illinois with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota. UPONOR was and is both a citizen and a resident of Minnesota. UPONOR is engaged in the business of supplying/distributing various products including, among other products, brass plumbing fittings used in connection with residential potable water plumbing systems.

3.      UPONOR and RTI were related companies.   In or about December 2004 UPONOR began receiving deliveries of products from RTI's inventory, including brass plumbing fittings known as F1807 brass insert fittings which were intended to be incorporated into its SSC Plumbing System.

4.      Upon information and belief, at all times relevant, Defendant UNIQUE was and is a Texas corporation with its principal place of business located at 12600 Cardinal Meadows, Sugarland, Texas, and was acting as a domestic agent, apparent manufacturer, importer, supplier/distributor and marketer of plumbing products including, among other products, ASTM F1807 brass plumbing fittings bearing ASTM markings ("hereinafter "Fittings").  At all times relevant, UNIQUE was both a citizen and a resident of Texas.  At all times relevant UNIQUE

2

conducted business in the State of Minnesota and has both sent products into Minnesota and its representatives have appeared in Minnesota to conduct business within the State.

5.      Upon information and belief, at all times relevant, Third Party Defendant DUK SAN was and is a corporation with its principal place of business located at 507-14 Goyang Lee, Wallgot-Myun Kim Do City, Dyungki-Do, Republic of South Korea, and was acting as an exporter, manufacturer, supplier/distributor and marketer of plumbing products including, among other products, F1807 brass insert plumbing fittings bearing ASTM markings. Upon information and belief, at all times relevant, DUK SAN was doing business in the Republic of South Korea, and was both a citizen and resident of South Korea.

6.      At all times relevant, Third Party Plaintiffs UPONOR and RTI purchased batches of F1807 brass insert plumbing fittings manufactured by Third Party Defendant DUK SAN which UPONOR and RTI subsequently introduced into the stream of commerce including being delivered into the State of Minnesota.

7.      Upon information and belief Third-Party Defendant DUK SAN warranted that all batches of the F1807 brass insert plumbing fittings manufactured for the benefit of UPONOR and RTI would be of merchantable quality, free from defects, suitable for their intended purpose and use, and in compliance with all applicable codes and standards including applicable ASTM standards.

8.      At all times relevant DUK SAN conducted and transacted business in the State of Minnesota, has sent products into Minnesota and its representatives have appeared in Minnesota to conduct business within this State.

3

## JURISDICTION

9.     This Court has jurisdiction of this action both: a) pursuant to 28 U.S.C. Section 1332 because there is complete diversity of citizenship between the Third Party Plaintiffs and the Third Party Defendants and the amount in controversy exceeds the sum of $75,000.00; and b) based upon Federal Rule of Civil Procedure 14(a) and this claim having a common nucleus of operative facts with, and being directly related to, the claim brought by the Plaintiffs against UPONOR and RTI.

## PRELIMINARY ALLEGATIONS

10.     The McGREGORS and AUTO-OWNERS INURANCE COMPANY, as Subrogee of NORTH ANOKA PLUMBING, ("collectively Plaintiffs") have filed an original and Amended Complaint against UPONOR and RTI, styling that action as a class action. Plaintiffs have alleged that they "... have been damaged as a result of the design, development ... sale ..." of brass insert fittings which they have identified by the designation F1807. (A copy of Plaintiffs' Amended Complaint is attached hereto as Exhibit "A").

11.     Plaintiffs' Amended Complaint further alleges that brass insert fittings supplied to other entities by UPONOR and RTI "have and will in the future cause water leaks" and "[t]hese leaks have and will in turn cause extensive damage to other property...".

4

12.     UPONOR and RTI have denied the material allegations contained in Plaintiffs' Amended Complaint and further have denied that there is any inherent defect in all brass fittings of the type alleged by Plaintiffs in the Amended Complaint.

13.     Notwithstanding the foregoing, to the extent that any liability is imposed upon UPONOR or RTI any such liability would be due to the misconduct as alleged herein, of UNIQUE, DUK SAN and any other entities involved in the design, manufacture and distribution of the brass fittings which are the subject of Plaintiffs' Amended Complaint.

14.     On or about July 31, 2002 RTI began doing business with UNIQUE. As part of this business relationship, UNIQUE agreed that the Fittings it was to supply would have various markings including F1807.

15.     The F1807 designation is made pursuant to the American Society of Mechanical Engineers (ASTM) standards and includes specifications regarding the chemical composition of brass products such as Fittings.

16.     UNIQUE selected DUK SAN to design, engineer and manufacture the Fittings. The Fittings were delivered by DUK SAN to UNIQUE.

17.     At various times, beginning in July 2002, RTI and UPONOR purchased batches of Fittings from UNIQUE, which were manufactured by DUK SAN, pursuant to multiple purchase orders. UNIQUE and DUK SAN understood that those Fittings would be subsequently transferred to other entities for installation into residential plumbing systems in the United States.

18.     UPONOR's purchases of Fittings from UNIQUE occurred at various times and were made pursuant to multiple purchase orders. Sample copies of such Purchase Orders, relating to the Fittings, are attached hereto as Exhibit "B." These Fitting Purchase Orders were

subject to UPONOR's standard Purchasing Terms and Conditions attached hereto as Exhibit "C."

19.     Beginning in late 2002 and at various times thereafter representatives of RTI and UPONOR had discussions with Pradeep Gupta, among others, on behalf of UNIQUE relating to the uses and requirements of the Fittings and UNIQUE understood that RTI and UPONOR would be passing that product along to others without any changes to the product. On information and belief, representatives of UNIQUE participated in communications and meetings with representatives of DUK SAN and conveyed information regarding the use and requirements of the Fittings to DUK SAN.

20.     During and after the above mentioned discussions/negotiations relating to the sale of the Fittings UNIQUE, through its President Pradeep Gupta and sales manager, Hetal Bhavsar among others, represented itself to RTI and UPONOR as knowledgeable regarding that product, that it was in the business of selling such products, and RTI and UPONOR relied on UNIQUE's experience and knowledge relating to the Fittings. UNIQUE agreed to provide goods that were free from any issues regarding workmanship and materials. See Exhibit "C".

21.     DUK SAN held itself out to customers and distributors of Fittings as being knowledgeable, experienced in the manufacture of the Fittings, and qualified to design/manufacture Fittings so that all batches of product it supplied would be free from any issues regarding workmanship and materials.

22. Pursuant to Paragraph 11 of the Terms and Conditions applicable to the Fitting Purchase Orders, UNIQUE agreed to indemnify UPONOR and "hold and save [UPONOR] from and against any and all claims, demands, liabilities, losses or expenses of whatsoever in kind and nature which [UPONOR] shall or may at any time sustain or incur by reason of, in consequence

6

of, or arising out of the manufacture, sale or delivery by [UNIQUE] of the goods and/or services described in this Purchase Order."

23.    Pursuant to Paragraph 31 (Warranty Specifications) of the Terms and Conditions for the Fitting Purchase Orders, UNIQUE further warranted that the goods it supplied would be free from design, materials and workmanship issues.

24.    On or about August 24, 2006 a meeting occurred at UPONOR's Minnesota offices between UPONOR personnel and representatives of UNIQUE, including its CEO Jugal K. (Jay) Milani and Pradeep Gupta, to discuss various business related issues, including issues concerning Fittings.

25.    At the August 24, 2006 meeting UNIQUE agreed "that it will be responsible for any claims arising out of defective product." A copy of an August 28, 2006 e-mail from Pradeep Gupta of UNIQUE to UPONOR, confirming that agreement is attached hereto as Exhibit "D".

26.    At the August 24, 2006 meeting UNIQUE, through Jay Milani and Pradeep Gupta, agreed that in exchange for UPONOR agreeing to "take the remaining inventory" UNIQUE would take responsibility for Fittings ". . . regarding quality and conformity to specifications." See Exhibit "D".

27.    In an e-mail dated September 15, 2006, from Pradeep Gupta of UNIQUE to UPONOR, Mr. Gupta stated that "[a]s agreed during our meeting you will take our inventory and in return we will take care of the existing claims plus stand behind any future claims." A copy of the September 15, 2006 e-mail is attached hereto as Exhibit "E".

28.    In the September 15, 2006 e-mail, Mr. Gupta further stated that "our product meets all the requirements of F1807 except the lead which is a little lower. It is for this that we are standing behind our product in case there are any claims etc.". See Exhibit "E".

7

29.     In an e-mail of September 11, 2006, regarding the current inventory of product in stock in Houston, currently "on water" and ready for shipment from "overseas", Hetal Bhavsar of UNIQUE stated that " .. should there be any non-conforming product, UNIQUE will issue an immediate credit to UPONOR".   See the e-mail of Hetal Bhavsar of September 11, 2006 attached hereto as Exhibit "F".

30.     Subsequent to the foregoing e-mails, on or about October 4, 2006 UPONOR released Purchase Order #825548 covering UNIQUE inventory.  UNIQUE agreed to the terms of the offer relating to Purchase Order #825548.  See Purchase Order #825548 attached hereto as Exhibit "G" and the e-mail from UNIQUE (Jay Milani) dated October 9, 2006 attached hereto as Exhibit "H".

31.     In the e-mail of October 9, 2006 Mr. Milani states that UNIQUE will "... cooperate fully and take care of claims and put this issue behind us." See Exhibit "H".

32.     Purchase Order #825548 provides that acceptance of the product listed on the Purchase Order "is subject to the attached UPONOR, Inc. terms and conditions and the product meeting UPONOR's quality testing, F1807 standards and all applicable represented standards." See Exhibit "G". See Exhibit "C" for the terms and conditions referred to in Exhibit "G".

33.     Pursuant to Paragraph 11 of the Terms and Conditions applicable to the UPONOR Purchase Orders, UNIQUE agreed to indemnify UPONOR and "hold and save [UPONOR] from and against any and all claims, demands, liabilities, losses or expenses of whatsoever in kind and nature which [UPONOR] shall or may at any time sustain or incur by reason of, in consequence of, or arising out of the manufacture, sale or delivery by [UNIQUE] of the goods and/or services described in this Purchase Order."

8

34.    UNIQUE's Fittings were ultimately supplied to various entities, and installed in properties constructed by various companies including a builder named Ryan Homes, a subsidiary of NVR, Inc.

35.    Ryan Homes has made claims upon UPONOR relating to Fittings supplied by UNIQUE.

36.    On or about November 29, 2006 UPONOR put UNIQUE, through its employee Hetal Bhavsar, on notice of claims that had been made by Ryan Homes regarding F1807 Fittings. UNIQUE has refused to reimburse UPONOR or RTI in connection with Ryan Homes' claims relating to Fittings.

37.    UPONOR has expended funds in connection with Ryan Homes' claims relating to Fittings supplied by UNIQUE and has presented a claim to UNIQUE pursuant to the agreement UNIQUE made with UPONOR for reimbursement relating to Fittings. UNIQUE has failed to make reimbursement to UPONOR.

38.    In January 2007 representatives of DUK SAN attended a meeting in Apple Valley, Minnesota, along with representatives of UNIQUE and UPONOR to discuss issues relating to batches of Fittings supplied to UPONOR and RTI by UNIQUE and DUK SAN.

39.    John and Helen McGregor ("the McGREGORS") have alleged that they have experienced fitting failures in their home and that UPONOR has paid such claims.  UPONOR has received no reimbursement from UNIQUE or DUK SAN relating to the McGREGORS' claim.

40.    Plaintiffs have alleged that they have tendered Fitting related claims to UNIQUE and UNIQUE has refused to honor those claims.

9

41.    To date, UPONOR has incurred damages in excess of $75,000 in connection with the matters alleged above.

42.    UNIQUE and DUK SAN have failed to honor their obligations/agreements with UPONOR and RTI as set forth herein relative to Fittings.

## COUNT I

### *(Breach of Contract--UNIQUE)*

43.    UPONOR re-alleges and incorporates Paragraphs 1 through 42 of the First Amended Third Party Complaint as though fully set forth herein.

44.    Pursuant to the language of the e-mails referenced herein and exchanged between UNIQUE and UPONOR, UNIQUE agreed to take responsibility for all claims, present and future, relating to products it had sold UPONOR and RTI.

45.    Pursuant to the Standard Terms and Conditions governing the purchase orders, UNIQUE agreed to indemnify UPONOR in connection with any claims or demands arising out of the products supplied to UPONOR and RTI by UNIQUE.

46.    As of August 2002, UNIQUE agreed to supply Fittings that complied with ASTM F1807 standards.

47.    As a distributor of the products involved in this matter, UNIQUE held itself out as being knowledgeable, skilled and competent in the business of manufacturing and supplying Fittings and represented that the Fittings would be manufactured in a good and workmanlike manner.

48.    Pursuant to the language of the purchase orders, and the terms and conditions attached thereto and incorporated therein, exchanged between UPONOR and UNIQUE including, but not limited to, Purchase Order #825548, UNIQUE agreed to supply and/or

manufacture products which were fit for their intended purpose, manufactured in a good and workmanlike manner, and merchantable.

49.    Pursuant to the Standard Terms and Conditions governing the purchase orders exchanged between UPONOR and UNIQUE including, but not limited to, Purchase Order #825548, as well as UNIQUE's e-mails to UPONOR, UNIQUE agreed to indemnify UPONOR and RTI in connection with any claims or demands arising out of the products supplied by UNIQUE.

50.    To the extent that UPONOR and/or RTI are found to be liable to Plaintiffs, which liability UPONOR and RTI deny, relating to the Fittings as alleged in Plaintiffs' Amended Complaint, all such liability will be due to the conduct of UNIQUE which, in such event, will have breached its agreement with UPONOR and RTI in one or more of the following respects:

> a) supplied RTI and UPONOR with certain Fittings which have been alleged by Plaintiffs to not meet the standards represented by UNIQUE and required by agreements with UPONOR and/or RTI;
>
> b) failed, despite repeated demands by UPONOR, to indemnify UPONOR and/or RTI for claims relating to products supplied by UNIQUE to UPONOR and/or RTI, which products have been injected into the stream of commerce by UNIQUE;
>
> c) failed to abide by its agreement to "stand behind" and pay for present and future claims relating to products it sold; and
>
> d) otherwise breached its agreements with RTI and UPONOR.

51.    At all times relevant, UPONOR and/or RTI fulfilled all obligations and/or responsibilities that they had and which arose out of the agreements with UNIQUE for the products at issue.

52.     As a direct and proximate result of the aforementioned breaches of the agreements by UNIQUE, UPONOR and RTI have sustained damages.

## COUNT II

### *(Breach of Express Indemnity—UNIQUE)*

53.     UPONOR and RTI re-allege and incorporate Paragraphs 1 through 52 of the First Amended Third Party Complaint as though fully set forth herein.

54.     Under the terms of the e-mails exchanged between UNIQUE and UPONOR, UNIQUE agreed to pay for claims relating to failures of Fittings. Furthermore, pursuant to the terms and conditions which form a part of, and govern, the Purchase Orders covering the Fittings, UNIQUE agreed to indemnify UPONOR and/or RTI for any and all claims, liabilities, losses or expenses arising out of the sale of the Fittings.

55.     UPONOR and RTI transferred the Fittings to various entities, have—as alleged by Plaintiffs--received claims, including Plaintiffs' present suit, and have incurred costs/expenses, related to certain of the fittings supplied by UNIQUE.

56      Pursuant to the obligations and agreements referred to above, UPONOR tendered claims, costs and expenses to UNIQUE.

57.     To date, UNIQUE has failed and refused to reimburse UPONOR or RTI, resulting in UPONOR and RTI sustaining damages.

## COUNT III

### *(Negligence--UNIQUE)*

58.　　UPONOR and RTI re-allege and incorporate Paragraphs 1 through 57 of the First Amended Third Party Complaint as though fully set forth herein.

59.　　UNIQUE, as the apparent manufacturer, seller, and distributor of the products involved in this matter owed a duty to UPONOR and RTI to provide them with products that were manufactured in accordance with reasonable and recognized industry standards.

60.　　Plaintiffs have alleged that the Fittings are defective and not suitable for their intended uses in residential potable water systems, and that UPONOR has honored various warranty claims in connection with the Fittings. Claims have also been made, separately from the present suit, against UPONOR and/or RTI regarding the Fittings, and UPONOR and/or RTI have made payments relating to those claims. Although UPONOR and RTI have expressly denied liability for any claimed damages relating to the Fittings, UPONOR and RTI seek as part of their damages in this matter to recover all sums they have previously expended in connection with issues involving the Fittings.

61.　　To the extent that the Fittings supplied by UNIQUE are found to be defective, UNIQUE will have breached its duty to UPONOR and RTI in one or more of the following ways:

　　　　a) failed to take all necessary and reasonable steps to ensure that all of the Fittings it supplied were properly manufactured;

　　　　b) failed to properly test, inspect and evaluate all of the Fittings prior to distributing them;

　　　　c) failed to monitor the production of all of the Fittings to ensure that the proper chemical composition was present and that the machining and washing processes were correctly performed for each Fitting; and

13

d) otherwise acted in a careless and negligent fashion in connection with the distribution and sale of certain of the Fittings.

62.     As a direct and proximate result of the acts and omissions of UNIQUE, UPONOR and RTI have sustained damages and are likely to continue to sustain damages in the future.

## COUNT IV

### *(Consumer Fraud--UNIQUE)*

63.     UPONOR and RTI repeat and reallege the allegations contained in Paragraphs 1 through 62 as though set forth in full herein.

64.     Minnesota Statutes Section 325F.69, subsection 1 makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been mislead, deceived or damaged thereby ...".

65.     By engaging in the conduct described herein, UNIQUE violated and continues to violate Section 325F.69, subsection 1 of the Minnesota Statutes.

66.     Among other actions, by making the statements contained in the e-mails of August 28, 2006 and September 15, 2006, referred to previously and incorporated herein, UNIQUE used false promises, misrepresentations and misleading statements, all with the intent that UPONOR and/or RTI rely on those statements in the course of the sale of Fittings.

67.     Among the statements contained in the August 28, 2006 and September 15, 2006 e-mails were the statements that UNIQUE "... will be responsible for any claims ..." relating to brass pex Fittings, and that "... UNIQUE will stand behind any claims pertaining to our

14

product". Plaintiffs have alleged at paragraph 154 of their Amended Complaint, that they submitted claims relating to brass pex Fittings to UNIQUE and that by way of a January 29, 2008 letter UNIQUE denied such claims.

68.    By making the statements contained in the e-mails referred to in this paragraph, UNIQUE used false promises, misrepresentations and misleading statements, all with the intent that others rely on those statements in the course of the sale of their F1807 fittings.

69.    UPONOR and/or RTI relied upon the misrepresentations, false promises and misleading statements made by UNIQUE, and described herein, when deciding to accept the remaining inventory of parts that UNIQUE was seeking to sell UPONOR.

70.    As a result of UNIQUE's false promises, misrepresentations and misleading statements relating to the sale of brass insert Fittings, UPONOR and/or RTI have suffered actual damages including, but not limited to, the filing and defense of the present lawsuit, as well as consequential, incidental and other damages as sought by Plaintiffs.

71.    As a direct and proximate result of UNIQUE's conduct, UPONOR and RTI have sustained damages in excess of $75,000.00.


## COUNT V

### *(Unlawful Trade Practices–UNIQUE)*


72.    UPONOR and RTI restate and reallege the foregoing paragraphs 1 through 71 as though set forth in full herein.

73.    Minnesota Statute Section 325D.13 provides that "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise".

74.    By engaging in the conduct alleged by Plaintiffs and referred to herein, UNIQUE violated and continues to violate Minnesota Statute Section 325D.13.

75.    In the September 15, 2006 e-mail from Pradeep Gupta to UPONOR, UNIQUE stated that "... our product meets all the requirements of F1807 except the lead which is a little lower". See Exhibit "E".

76.    Plaintiffs have alleged at paragraph 110 of their Amended Complaint that the brass Fittings at issue "... did not comply with various aspects of the F1807 requirements including alloy composition and dimensions". The statements made in the September 15, 2006 e-mail from UNIQUE, were made in connection with the sale of brass Fittings.

77.    By making the statements contained in the September 15, 2006 e-mail, which are incorporated herein, UNIQUE knew that UPONOR and/or RTI would rely on the accuracy of those representations and UPONOR/RTI did rely upon the statements contained in the September 15, 2006 e-mail from UNIQUE's representative in connection with the sale of additional inventory from UNIQUE to UPONOR.

78.    To the extent that it may be established, as alleged by Plaintiffs at paragraph 110 of their Amended Complaint, that the fittings at issue did not comply with F1807 requirements, the statements made by UNIQUE in that regard will have been made in violation of Minnesota Statute Section 325D.13 and UPONOR and/or RTI will have suffered damages including, but not limited to, the present lawsuit as well as, without limitation, consequential and incidental damages.

79.     As a direct and proximate result of UNIQUE's conduct, UPONOR and RTI have

sustained damages in excess of $75,000.00.


## COUNT VI

### *(Deceptive Trade Practices--UNIQUE)*

80.     UPONOR and RTI restate and reallege the foregoing paragraphs 1 through 79 as

though set forth in full herein.

81.     Minnesota Statute Section 325D.44, subdivision 1 provides that "No person shall,

in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the

true quality, ingredients or origin of such merchandise".

82.     By engaging in the conduct alleged by Plaintiffs and alleged herein, UNIQUE

violated and continues to violate Minnesota Statute Section 325D.44, subdivision 1.

83.     In the September 15, 2006 e-ail from Pradeep Gupta to UPONOR, UNIQUE

stated that "... our product meets all the requirements of F1807 except the lead which is a little

lower". See Exhibit "E".

84.     Plaintiffs have alleged at paragraph 110 of their Amended Complaint that the

brass Fittings at issue "... did not comply with various aspects of the F1807 requirements

including alloy composition and dimensions". The statements made in the September 15, 2006

e-mail from UNIQUE, were made in connection with the sale of brass Fittings.

85.     By making the statements contained in the September 15, 2006 e-mail, which are

incorporated herein, UNIQUE knew that UPONOR and/or RTI would rely on the accuracy of

those representations and UPONOR/RTI did rely upon the statements contained in the

September 15, 2006 e-mail from UNIQUE's representative in connection with the sale of additional inventory from UNIQUE to UPONOR.

86.     To the extent that it may be established, as alleged by Plaintiffs at paragraph 110 of their Amended Complaint, that the fittings at issue did not comply with F1807 requirements, the statements made by UNIQUE in that regard will have been made in violation of Minnesota Statute Section 325D.44, subdivision 1 and UPONOR and/or RTI will have suffered damages including, but not limited to, the present lawsuit as well as, without limitation, consequential and incidental damages.

87.     As a direct and proximate result of UNIQUE's conduct, UPONOR and RTI have sustained damages in excess of $75,000.00.

## COUNT VII

### *(Contribution--UNIQUE)*

88.     UPONOR and RTI repeat and reallege the foregoing allegations contained in paragraphs 1 through 87 as those set forth in full herein.

89.     Plaintiffs have filed suit against UPONOR and RTI seeking damages in relation to brass insert Fittings which are used in residential potable water systems. Claims have also been made against UPONOR and/or RTI regarding the Fittings and UPONOR and/or RTI have made payments relating to those claims. Although UPONOR and RTI have expressly denied liability for any damages relating to the Fittings UPONOR and RTI seek as part of their damages in this matter to recover all sums expended previously claimed by Plaintiffs.

90.     In the alternative, if UPONOR and/or RTI are found liable to Plaintiffs for any amount of damages, UPONOR and RTI are entitled to contribution from UNIQUE, whether in law or in equity, for any amounts which have previously been paid by UPONOR and/or RTI

18

relating to the Fittings, as well as any sums which may be awarded to Plaintiffs beyond UPONOR's and/or RTI's apportioned or fair share of any common liability determined in this matter.

## COUNT VIII

### (Common Law Indemnity—DUK SAN)

91.     UPONOR and RTI re-allege and incorporate Paragraphs 1 through 90 of this First Amended Third-Party Complaint as though fully set forth herein.

92.     Upon information and belief, the damages alleged by Plaintiffs in their First Amended Complaint involve claimed defects and/or damages arising out of DUK SAN's breach of its duty, for the benefit of UPONOR, RTI and Plaintiffs, to properly design and/or manufacture certain batches of its F1807 brass fittings so that they were free of any defects or deficiencies. The foregoing duties of DUK SAN's were owed to UPONOR and RTI among others.

93.     Upon information and belief, the damages alleged by Plaintiffs in their First Amended Complaint involve claimed defects and/or damages arising out of DUK SAN's breach of its duty to properly design and/or manufacture certain batches of its F1807 brass plumbing fittings so that they were free of defects before placing them into the stream of commerce.

94.     If UPONOR and/or RTI are found liable to Plaintiffs for any amount of damages, all such liability having been denied, then UPONOR and RTI are entitled to indemnification from DUK SAN for the injuries and damages allegedly sustained by Plaintiffs and/or UPONOR and RTI, if any, for any and all monies spent in defense of this action, monies paid for in satisfaction of any settlement, judgment and/or any other obligations due by UPONOR and/or

RTI as a result of any judgment rendered against them and in favor of Plaintiffs pursuant to Plaintiffs' First Amended Complaint.

## COUNT IX

### *(Contribution—DUK SAN)*

95.    UPONOR and RTI re-allege and incorporate Paragraphs 1 through 94 of this First Amended Third-Party Complaint as though fully set forth herein.

96.    Upon information and belief, the damages alleged by the Plaintiffs in their First Amended Complaint involve claimed defects and/or damages arising out of DUK SAN's breach of its duty to properly design and/or manufacture certain batches of its F1807 brass fittings so that they were free of any defects or deficiencies. The foregoing duties of DUK SAN's were owed to UPONOR and RTI among others.

97.    Upon information and belief, the damages alleged by Plaintiffs in their First Amended Complaint involve claimed defects and/or damages arising out of DUK SAN's breach of its duty to properly design and/or manufacture certain batches of its F1807 brass fittings to be free of defects before placing them into the stream of commerce.

98.    Based upon the acts and omissions of DUK SAN, if a judgment is rendered on behalf of Plaintiffs against UPONOR and/or RTI, then UPONOR and/or RTI is entitled to contribution from DUK SAN in an amount proportionate to the fault attributable to DUK SAN.

WHEREFORE Third Party Plaintiffs, UPONOR and RTI seek, with respect to Third Party Defendants UNIQUE and DUK SAN:

a) judgment in their favor pursuant to the various causes of action set forth above, including contribution;

b) that they be awarded their costs and fees incurred in connection with this litigation, including those incurred in proceeding with this third party claim;

c) that they obtain indemnification from both UNIQUE and DUK SAN as set forth above; and

d) such other and further relief as the Court may deem just and equitable under the circumstances.


**UPONOR, INC. and RADIANT TECHNOLOGY, INC.**

By:   /s/Howard L. Lieber
One of their attorneys
John R. Schleiter
Howard L. Lieber
Lindsay E. Dansdill
Grotefeld Hoffmann Schleiter
Gordon & Ochoa, LLP.
311 South Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 551-0200 (Telephone)
(312) 601-2402 (Fax)


Bradley D. Fisher
Fisher Bren & Sheridan, LLP.
701 Fourth Avenue
Suite 610
Minneapolis, MN 55415
(612) 332-0100 (Telephone)
(612) 332-9951 (Fax)