UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

In Re: Uponor, Inc., F1807 Plumbing
Fittings Products Liability Litigation

Court File No. 11-MD-2247 ADM/JJK

This Document Relates to:

    All Actions

---

## Order Granting Motion to Certify Class for Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and Dissemination of Notice to the Class

---

The Motion for Preliminary Approval of Class Action Settlement was heard on January 12, 2012. After review of pleadings and briefing, and having heard the arguments of counsel for good cause shown, it is hereby **ORDERED** that: (1) the Motion for Preliminary Approval of Nationwide Class Action Settlement Agreement; (2) preliminary and conditional certification of a settlement class; (3) approval of the form and content of Notice and Settlement; (4) an injunction and stay of all claims and actions against the RTI Defendants; and (5) setting of a final fairness hearing and deadlines are **GRANTED** as follows:

1.    The Judicial Panel on Multidistrict Litigation ("JPML") centralized and transferred three Uponor cases to the Court on May 24, 2011. (Docket No. 1, Schedule A). The Court previously had been assigned two Uponor cases. Accordingly, this MDL consolidated five putative class-action cases. (Docket No. 1, Schedule A). Subsequently, another Uponor case was filed in Minnesota and another transferred from the Southern District of Texas and assigned to this Court.

2.      The proposed Settlement in the Agreement executed by Class Counsel on behalf of Plaintiffs and executed on behalf of Defendants Radiant Technology, Inc. and its predecessors, successors, parent and sibling companies, Uponor, Inc., its parent companies, predecessors, successors, subsidiaries, and sibling companies, and their respective officers, directors, insurers, employees, and attorneys, (collectively the "RTI Defendants") is preliminarily approved, subject to a Final Fairness Hearing as provided for in this Order to determine whether the settlement is fair, adequate, and reasonable.

3.      The parties have presented to the Court a plan to provide notice to the potential members of the Class of the terms of the Settlement and the options the potential members have, including, among other things, to opt out of the Class, be represented by counsel of their choosing, to object to the proposed settlement, and to participate as a claimant in the settlement.  The Notice Plan proposed by the Settlement Class Members and the RTI Defendants (the "Settling Parties") is the best practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23.  In addition, the Court finds that the proposed claims procedure is fair and sufficient, and that the Notice to class members provides sufficient detail to the members of the Class, so that it is appropriate to proceed with preliminary approval and the notice plan.

4.      This Court is satisfied that counsel have submitted sufficient information to support the conclusion that there are no obvious deficiencies in the proposed Agreement, that the proposed Class satisfies the class-action requirements set forth in Federal Rule of Civil Procedure 23 (a) and (b) for purposes of a settlement class only, and that potential

members of the Class should be notified of the proposed Settlement and a Final Fairness Hearing scheduled.

5.      As detailed below, continued or additional litigation involving claims against the RTI Defendants will interfere with the Court's jurisdiction to consider, approve, and effectuate the Settlement, which necessitates temporary injunctive relief in aid of the Court's jurisdiction.

### Preliminary Approval of Settlement Class

6.      This case is provisionally and conditionally certified, subject to final approval of the Settlement in conjunction with the Final Fairness hearing, as a class action for settlement purposes only pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Classes shall be defined as follows:

### Settlement Class for F1807 Systems That Have Already Leaked:

All persons or entities that own or have owned, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained ASTM F1807 style plumbing systems manufactured and / or sold by Radiant Technology, Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999 that have experienced at least one leak in an RTI component in the system before July 1, 2012.  Also included in this class are all persons or entities who have legal standing to pursue claims through or in the name or right of those eligible entities who own or have owned, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained ASTM F1807 style plumbing systems manufactured and / or sold by the Radiant Technology, Inc. or Uponor, Inc. and their predecessors and which leaked and caused damage before July 1, 2012.

This past leak settlement class includes all individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or occupants,

trusts and trustees, attorneys, agents, and assigns and all persons who have legal standing and are entitled to assert a claim on behalf thereof.

**Non-Leaking F1807 System Settlement Class**:

All persons or entities that own buildings, homes, residences, or any other structures located in the United States that contain ASTM F1807 style plumbing systems manufactured and / or sold by Radiant Technology, Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999 that have not leaked and caused property damage before July 1, 2012.

This settlement class of the owners of non-leaking ASTM F1807 style plumbing systems includes all individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof.  Insurance companies are not included in this settlement class.

7.      Parties excluded from the Settlement Classes ("Excluded Persons") are:

a.      All Persons who, on a timely basis, exercise their rights under Rule 23 of the Federal Rules of Civil Procedure to opt out of the Settlement pursuant to the terms of the Agreement;

b.      All Persons who filed an individual lawsuit concerning F1807 Systems in any court of law, provided that claim has been resolved with a final judgment, whether or not favorable to the Person;

c.      The RTI Defendants, any entity in which the RTI Defendants have a controlling interest, any entity which has a controlling interest in the RTI Defendants, and RTI Defendants' legal representatives, assigns, and successors;

d.      The presiding judge and any member of the judges' immediate family; and

e.      All Persons who own or have owned real property containing an F1807 plumbing system installed on or before May 15, 1999.

8.      The Court finds that the above-described Class definitions are appropriate and are not overly broad.  The proposed settlement provides substantial benefits to the Class Members, including establishment of a claims process that will pay for damage resulting from leaks or decreased water flow caused by design or manufacturing defects in RTI F1807 systems.

9.      The Court preliminarily concludes that, for purposes of approving this settlement only and for no other purpose and with no other effect on this litigation should the proposed Settlement Agreement not ultimately be approved or should the Effective Date not occur, the proposed Rule 23 Class likely meets the requirements for certification under the Rule because:

a.      The proposed class contains thousands of members and is so numerous that joinder is impracticable;

b.      There exist questions of fact and law common to the members of the Class.  All members of the Class contend that the RTI F1807 systems were defective;

c.      The claims of the Class Representatives are typical of the claims of the Class members;

d.      Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class members; and

e.      Resolution of this action in the manner proposed by the Agreement is superior to other available methods for a fair and efficient adjudication of the action, and

common issues resolved through this Settlement predominate over individual issues. Because this action is being settled rather than litigated, the Court need not inquire whether the case, if tried, would present intractable management problems.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  The Court is satisfied that individualized defenses need not be adjudicated in order to approve the Settlement and that any individualized defenses do not predominate rendering class certification inappropriate in the settlement context.

10.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Action Settlement and Release Agreement between Plaintiffs and all class members who have not properly excluded themselves pursuant to Rule 23 and the RTI Defendants is preliminarily approved.

11.    In making this determination, the Court finds that there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).  Conditionally certifying a class in connection with preliminary approval allows notice to the class.  *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 427 n.2 (E.D. Tex. 2002).

12.    The evidence demonstrates that the Settlement, which is recommended by experienced counsel, falls well within a range warranting notice to absent class members. Following preliminary approval, the RTI Defendants have agreed to pay Class members for damage caused by leaks of RTI F1807 systems, pay for repairs to those systems, and when appropriate pay to have the systems replaced.  The funding to be provided by the RTI Defendants includes the payments of claims to be determined by an independent Claims Administrator, the cost of the Notice Plan, up to $2,400,000 for an award of attorney fees

and costs, and incentive awards for the Class Representatives if approved by the Court. After final approval, class members may file claims during the 10-year warranty issued for these systems, or for a minimum of 18 months from the Effective Date of the Settlement Agreement.

13.     The Settlement provides the Class with an immediate and substantial source of recovery while eliminating risks to the Class that further litigation would yield little or no recovery.   The Settlement eliminates risks associated with insurance coverage disputes between the RTI Defendants and their insurers.   In addition, the Settlement allows class members to avoid risks and contingencies relating to the abilities to collect any future judgment against the RTI Defendants.

14.     The Settlement followed thorough investigation and discovery and is the product of arm's-length negotiation between experienced, capable counsel, assisted by an experienced and capable magistrate judge. *See* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("Newberg") ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval.")  In the final-approval context, courts have given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement. *See, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the class, or excessive compensation for attorneys.

15.     Lead Counsel's recommendation for preliminary approval reflects his reasonable conclusion that the Class would benefit more by the creation of a claims process funded by the RTI Defendants now than the risky prospect of trying to pursue and collect future judgments against the RTI Defendants.

16.     In the event the Effective Date occurs, Class members shall be deemed to have and shall have forever released and discharged their claims in accordance with the Settlement Agreement.   In the event the Effective Date does not occur for any reason whatsoever: (1) the Agreement shall be deemed null and void and shall have no effect whatsoever; (2) the class certification shall automatically be vacated; and (3) the Agreement and the fact that it was entered shall not be offered, received, or construed as an admission or as evidence for any purpose, including the ability of any other class to be certified.

17.     The Agreement, actions in conformance with or in furtherance of the Agreement, and the other documents prepared or executed by any party in negotiating or implementing the Settlement, including any terms of any such documents, shall never be offered in evidence in or shared with any party to any civil, criminal, or administrative action or proceeding without the RTI Defendants' express written consent.

## Appointment of Class Representation and Class Counsel

18.     The Court appoints the following class representatives: John McGregor, Helen McGregor, Auto-Owners Insurance Co., Charles Perrone, Carl Fielstra, III, Krystal Fielstra, Paul Roth, Lynn Roth, Jay Livermont, Mary Livermont, Steve Spina and Kim Spina, individually and on behalf of all Settlement Class Members.

19.     To represent the Classes and their members, the Court appoints Shawn M. Raiter of Larson • King, LLP as Lead Counsel and the following attorneys as Class Counsel: Robert Shelquist of Lockridge Grindal Nauen, PLLP, Charles LaDuca of Cuneo, Gilbert & LaDuca, LLP, Christopher Coffin of Pendley, Baudin & Coffin, LLP, David Black of Perkins Coie LLP, Michael McShane of Audet & Partners, LLP, David Birka-White of Birka-White Law Offices, David Greenberg of Law Offices of David H. Greenberg, and J. Gordon Rudd of Zimmerman Reed PLLP.

### Establishment of Claims Process

20.     The Settlement Agreement contemplates the establishment of a Claims Process.  The RTI Defendants will fund the Claims Process, including the payment of claims to be determined by an independent Claims Administrator, the cost of the Claims Process, the cost of the Notice Plan, and up to $2,400,000.00 for an award of attorney fees and costs, as ordered by the Court.

21.     The Settling Parties will prepare a claims procedure that sets forth with specificity the process for assessing and determining the validity and value of claims and a payment methodology to qualifying Settlement Class Members.

22.     The Settling Parties will retain the services of a Claims Administrator, Remediation Contractors, and a Special Master for assistance with the Claims Process.  The Claims Administrator shall be responsible for effectuating the Claims Process.  The Special Master shall be responsible for resolving disputes, if any, arising from the Claims Process. The RTI Defendants shall pay all reasonable fees and expenses of the Claims Administrator, Remediation Contractors, and Special Master.

**Notice Plan**

23.     The Court approves the Notice Plan and the form and content of the Settlement Notice proposed in the Agreement.

24.     Notice to members of the Class, except statutory notice required to be given by the RTI Defendants pursuant to 28 U.S.C. § 1715, shall be the responsibility of the RTI Defendants.   To effect such notice, the Court understands that the parties have engaged Kurtzman Carlson Consultants LLC ("KCC") to advise them on providing notice.   KCC has proposed a Notice Plan that will provide notice to the members of the Class consistent with the parties' agreement and as ordered below.

25.     The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class.

26.     The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable.  *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); *Manual for Complex Litigation* § 21.311, at 288 (4th ed. 2004).

27.     In situations such as this action, where Class Members cannot be identified for purposes of sending individual notice, notice by publication is sufficient.  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950); *see also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *Kaufman v. Am. Express Travel Related Servs. Co. Inc.*, 264

F.R.D. 438, 445-46 (N.D. Ill. 2009); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107 (S.D. N.Y. 2007).

28.     The Notice Plan's multi-faceted approach to providing notice to Class Members whose identify is not known to the Settling Parties constitutes "the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).  *See, e.g., In re Holocaust Victims Assets Litig.*, 105 F. Supp. 2d 139, 144 (E.D. N.Y. 2000) (approving plan involving direct-mail, published notice, press releases and earned media, Internet and other means of notice).

### Opt-Out Procedure

29.     Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Classes certified, the Class Member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class.  Fed. R. Civ. P. 23(c)(2)(B).

30.     Compliance with Rule 23's notice requirements also complies with Due Process requirements.  "The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment."  *In re Prudential Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3rd Cir. 1998).

31.     The proposed notice and explanation of the process to opt out meet due-process requirements.  The proposed notice explains the action, who is included in the case, and the right to opt out or appear through an attorney.  The notice also describes the time and manner for opting out.

32.     Prospective Class Members can readily determine whether they are likely to be Class Members, since membership depends largely on presently or previously owning a building that has or had an RTI F1807 plumbing system.  The stamps placed on the brass insert fittings and clamps for the pipe make inclusion in the Class readily ascertainable.

33.     The Notice Plan will advise Class Members of the option to opt out of the settlement and pursue their claims individually.  A Class Member that seeks to be excluded from the settlement must send a letter or opt-out form requesting to be excluded.  The letter or opt-out form must include the Class Member's name, address, telephone number, signature, and the address of the structure that contains the RTI F1807 system.  The completed letter or opt out form shall bear the signature(s) of the potential Class member having a legal interest in the property being opted out (even if represented by counsel).

34.     A Class Member's letter or opt-out form requesting exclusion must be postmarked by June 1, 2012.  Letters must be mailed to the following address:

> RTI Plumb Pex Plumbing System Settlement Exclusions
> c/o _____
> P.O. Box 0000
> City, ST 00000-0000

The actual address used for these mailings will be established by the Claims Administrator and shall be provided in the notice communications and on the settlement web site.

35.     The Court approves the notice of the right to opt out of the case because the notice explains the process and right to opt out of the Settlement.

36.     Except for those potential members of the Class who have filed a timely and proper opt-out, all others will be deemed Class Members for all purposes under the Agreement.

37.     All members of the Classes shall be bound by the Agreement and by all subsequent proceedings, orders, and judgments in this MDL litigation.  Any Settlement Class Member who elects to opt out of the Agreement shall not be entitled to relief under or be affected by the Agreement.

38.     Potential Class members who have elected to opt out may withdraw their opt out prior to the Effective Date, but only if they accept the benefits and terms of the Agreement and dismiss with prejudice any other pending action against the RTI Defendants arising from damage to their affected buildings, homes, residences, or any other structures as caused by any alleged defects in the RTI F1807 systems installed in those properties.

39.     Class Counsel may contact persons who file an opt-out form or letter and to challenge the timeliness and validity of any opt-out request, as well as the right to effect the withdrawal of any opt-out filed in error and any exclusion which that Class member wishes to withdraw for purposes of participating in the Settlement as set forth in the Agreement. The Court shall determine whether any of the contested opt-outs are valid.

40.     The Notice Plan will advise class members of the option to exclude themselves from the settlement and pursue their claims individually.  Notice periods for opting out are "almost wholly an exercise in the Court's discretion."  *In re Potash Antit. Litig.*, 161 F.R.D. 411, 413, n.4 (D. Minn. 1995).  The opt-out period provided for in connection with the Settlement is reasonable.  *See, e.g., id.* ("In selecting a 60-day period, we are satisfied that the period allowed will neither compel an unnecessarily rushed response, nor will it lull

the potential class members into complacency"). Federal courts have regularly approved opt-out periods in which the deadline to opt out was sixty days or fewer.[1]

41.     Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B).

42.     Compliance with Rule 23's notice requirements also complies with Due Process requirements. "The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." *Prudential*, 148 F.3d at 306.

43.     The proposed notices in the present case meet those requirements. They explain the action, the Class, and the right to opt out or appear through an attorney. They also describe the time and manner for opting out.

44.     Prospective Class members can readily determine whether they are likely to be Class Members, since membership depends largely on presently or previously owning a structure that has a Plumb-PEX System. Periods of approximately two months for opting

---

[1] *Id.*; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (affirming 31-day opt-out period pursuant to dual notice plan, even though one-third of the class members received untimely notice); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (affirming 32-day opt-out period and noting that "[f]or due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstance'"); *Fidel v. Farley*, 534 F.3d 508, 513-15 (6th Cir. 2008) (affirming 46-day opt-out period and recognizing that publication notice and notice provided to brokerage houses on behalf of stockholders satisfies due process); *In re OCA, Inc. Sec. & Deriv. Litig.*, Civ. A. No. 06-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) (approving 39-day opt-out period and noting that courts have typically found notice sent to brokerage houses adequate, even where the notice was not then sent to class members in a timely manner).

out have been approved in other cases.  *See, e.g., Supermarkets Gen'l Corp v. Grinnell Corp.*., 490 F.2d 1183, 1184-85 (2d Cir. 1974); *Pierce v. Novastar Mortgage, Inc.*, No. C05-5835, 2007 WL 1046914, at *2 (W.D. Wash. April 7, 2007).

### Objections to Settlement

45.     A member of the Class may object to the Settlement Agreement by filing a written objection. To exercise this right to object, a Class Member must provide a written notice of objection by letter.  The letter must state that the Class Member objects to the settlement in *In Re: Uponor, Inc., F1807 Products Liability Litigation*.  The letter must also state the objecting Class Member's name, address, telephone number, signature of the Class member, and the Class Member's reasons for objecting to the settlement.  The objection must bear the signature of the Class member having a legal interest in the property being opted out (even if represented by counsel).

46.     To be considered, each objection letter must state the exact nature of the objection, the facts underlying the objection, and whether or not the objector intends to appear at the Final Fairness Hearing.  The objector must also provide a copy of any documents which the objector intends to use at the Final Fairness Hearing.  If the objector is represented by counsel, the objection shall also be signed by the attorney who represents the objector.  Class Counsel, Counsel for the RTI Defendants, and the Clerk of Court must be served with copies of the objections, postmarked no later than June 1, 2012.

47.     Any attorneys hired by individual Class Members for the purpose of objecting to the proposed Settlement shall file with the Clerk of Court and serve on Lead Class

Counsel and counsel for the RTI Defendants a notice of appearance, not later than June 1, 2012.

48.     All objection letters must be postmarked by June 1, 2012.   A copy of the objection letter must be mailed to each of these three addresses:

Clerk of the Court
U.S. District Court for the District of Minnesota
300 South Fourth Street
Suite 202
Minneapolis, MN 55415

Shawn M. Raiter
Larson King, LLP
30 East Seventh Street
Suite 2800
Saint Paul, MN 55101

John R. Schleiter
Grotefeld, Hoffmann, Schleiter, Gordon & Ochoa
Suite 4500
311 South Wacker Drive
Chicago, IL 60606

49.     No person shall be entitled to contest the approval of the terms and conditions of the Agreement or the Final Order and Judgment requested thereon except by filing and serving written objections in accordance with the provisions of this Order and the Agreement.   Any member of the Class who does not submit a timely, written objection in compliance with all of the procedures set forth in this Order and the Agreement shall be deemed to and shall have waived all such objections and will, therefore, be bound by all proceedings, orders, and judgments in this case, which will be preclusive in all pending or future lawsuits or other proceedings.

50.     No person or entity shall be entitled to contest the approval of the terms and conditions of the Agreement or the Final Order and Judgment requested thereon except by filing and serving written objections in accordance with the provisions of this Order and the Agreement.

## Stay of Proceedings and Preliminary Injunction

51.     The Settlement appropriately seeks entry of a temporary injunction prohibiting Class Members from participating in any other proceeding in any jurisdiction based on or relating to the RTI F1807 System during the notice and opt-out period between preliminary approval and the Final Fairness Hearing. This type of injunctive relief is commonly granted in preliminary approvals of class-action settlements pursuant to the All Writs Act and the Anti-Injunction Act.

52.     The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a) (2006).  The Act empowers a federal court to "enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'"  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

53.     Although the Anti-Injunction Act limits a federal court's powers under the All Writs Act, it expressly authorizes a federal court to enjoin parallel state court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28

U.S.C. § 2283 (2006). "[T]he parallel 'necessary in aid of jurisdiction' language is construed similarly" in both the All Writs Act and the Anti-Injunction Act. *Newby*, 302 F.3d 295, 301 (5th Cir. 2002); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985).

54.    It is undisputed that if the Settlement is finally approved, all of the cases that would be subject to the injunction would become moot.

55.    Accordingly, the Court hereby orders that any actions or proceedings pending in any court in the United States involving an RTI F1807 System, except any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the Final Fairness Hearing and the issuance of a Final Order and Judgment.

56.    In addition, all members of the Class are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on or relating to the RTI F1807 System, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, or the Agreement.  In addition, all members of the Class are hereby preliminarily enjoined from filing, commencing, prosecuting or maintaining any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action in any jurisdiction) on behalf of members of the Class, if such other class action is based on or relates to the RTI F1807 System, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, and/or the

Agreement.  The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over this action.  The Court finds no bond is necessary for issuance of this injunction.

57.     Federal courts' broad authority under the All Writs Act encompasses the power to enjoin both subsequent and parallel arbitration proceedings.  *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994) ("No matter what, courts have the power to defend their judgments as res judicata, including the power to enjoin or stay subsequent arbitrations."); *Bank of Am. v. UMB. Fin. Servs., Inc.*, 618 F.3d 906, 914-15 (8th Cir. 2010) (noting that "the district court has the inherent ability to protect its own jurisdiction over the dispute pending before it," and affirming the district court's *sua sponte* injunction of parallel arbitration proceedings); *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162, at *4 (S.D. N.Y. July 1, 1996) ("[I]t would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration, 'in aid of its jurisdiction' even before judgment is entered.").

58.     In cases such as this, where parties to complex, multidistrict litigation have reached a settlement agreement after lengthy, protracted, and difficult negotiations - parallel proceedings can "'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation" and threaten to "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims."  *In re Baldwin-United*, 770 F.2d at 337; *see also, In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (finding threats to court's jurisdiction "particularly significant where there are conditional class certifications and impending settlements in federal actions").

59.     An extensive body of federal caselaw recognizes that complex, multidistrict litigation like this one implicates special considerations under the All Writs Act.[2] "In complex cases … the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to *the* jurisdiction of the federal court." *In re Diet Drugs*, 282 F.3d at 236.

60.     The All Writs Act empowers district courts to "issue all writs necessary or appropriate *in* aid of their respective jurisdictions and agreeable to the usages and principles

---

[2] *See In re Baldwin-United Corp.,* 770 F.2d at 337 (stating that complex class action pending before the federal district court "was the virtual equivalent of a res over which the district judge required full control"); *In re Asbestos Sch. Litig.,* No. *83-0268,* 1991 WL 61156, at *3 (E.D. Pa. Apr. 16, 1991) (staying state court proceedings is proper under federal law" "where a federal court is on the verge of settlement of a complex matter, and state court proceedings undermine its ability to achieve that objective' (internal citations omitted)), *aff"d mem., 950* F.2d 723 (3d Cir. 1991); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.,* 314 F.3d 99,104 (3d Cir. 2002) (" [D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state courts."); *Carlough v. Amchem Prods., Inc.,* 10 F.3d 189, 202-03 (3d Cir. 1993) (approving of *In re Baldwin-United* and *In re Asbestos Sch. Litig.,* and noting that complex class actions may be appropriate instances in which to enjoin parallel proceedings); *Newby,* 302 F.3d at 301 ("[T]he district court had authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial efforts to ... preserv[e] fair processes in the complex suit in federal courts.") *Three J Farms, Inc, v. Plaints' Steering Comm. (In re Corrugated Container Antit. Litig.),* 659 F.2d 1332, 1334-35 (5th Cir. Unit A Oct. 1981) (affirming injunction in a "complicated antitrust action [that] has required a great deal of the district court's time and has necessitated that it maintain a flexible approach in resolving the various claims of the many parties"); *Winkler v. Eli Lilly & Co.,* 101 F.3d 1196, 1202 (7th Cir. 1997) (approving of appellate decisions in which "courts have extended the exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation"); *Liles v. Del Campo,* 350 F.3d 742, 746-47 (8th Cir. 2003) (affirming district court's injunction in class action so as to ensure enforceability of the preliminary settlement approval and to prevent further depletion of settlement fund); *Negrete v. Allianz Life Ins. Co. of NA.,* 523 F.3d 1091, 1102 (9th Cir. 2008) (commenting that "the existence of advanced federal in personam litigation [that] may, in some instances, permit an injunction in aid of jurisdiction . . . is a fairly common theme"); *Battle v. Liberty Nat'l Life Ins. Co.,* 877 F.2d 877, 882 (11th Cir. 1989) ("[I]t makes sense to consider this ease, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered.").

of law." 28 U.S.C. § 1651; *see also Wolf Designs, Inc. v, Donald McEvoy Ltd., Inc.,* 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004)  ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

61. "Whether viewed as an affirmative grant of power to the courts or an exception to the Anti-Injunction Act, the All-Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members." *In re Joint E. & S, Dist. Asbestos Litig.,* 134 F.R.D. 32, 37 (E.D.N.Y. 1990). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977) (upholding order for telephone company to assist with pen register).

62. "[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state fora." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 314 F.3d 99, 104 (3d Cir. 2002).  Concerns of Defendants in large class actions about remaining exposed to "countless suits in state court despite settlement of the federal claims" are a consequence "that would seriously undermine the possibility for settling any large, multi-district class action." *Id.* at 104-05 (quotations omitted).  Permitting collateral attacks to disrupt such a settlement would undermine "Congress's purposes underlying diversity jurisdiction and the Multi-district Litigation Act, 28 U.S.C. § 1407, an application of Congress's constitutional power to regulate interstate commerce." *Id.*

Accordingly, the All-Writs Act authorizes this Court to certify the class and enjoin other litigation.

63.     This is a decidedly complex, multidistrict class action involving lengthy negotiations and a proposed settlement reached after years of motion practice and discovery and days of formal and informal arm's-length negotiations.  The Court has the power and authority to enjoin current or future federal proceedings regarding and future state court proceedings.  *See Newby*, 302 F.3d at 301 (noting that the Anti-injunction Act "does not preclude injunctions against a lawyer's filing of *prospective* state court actions").

64.     The requested injunction relief will impact only a few existing lawsuits, all of which are in their infancy.  None of the plaintiffs in these cases would be unduly prejudiced by a temporary injunction pending the Final Fairness Hearing.  It is undisputed that if the Settlement is finally approved, all of the cases that would be subject to the injunction would become moot.

65.     Accordingly, the Court hereby orders that any actions or proceedings pending in any court in the United States involving an RTI F1807 system, except any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the Final Fairness Hearing and the issuance of a Final Order and Judgment.

66.     In addition, all members of the Classes are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on or

relating to the RTI F1807 System, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, or the Agreement.  In addition, all Class members are hereby preliminarily enjoined from filing, commencing, prosecuting or maintaining any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action in any jurisdiction) on behalf of members of the Classes, if such other class action is based on or relates to the RTI F1807 system, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, and/or the Agreement.  The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over this action.  The Court finds no bond is necessary for issuance of this injunction.

## Final Fairness Hearing

67.     Pursuant to Federal Rule of Civil Procedure 23, the Court has scheduled a Final Fairness Hearing to take place on March 27, 2012, at 11:00 a.m. in Courtroom 13W, at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, to determine whether the proposed Settlement is fair, reasonable, and adequate, to consider any objections by members of the Class, and to consider an award of reasonable attorneys' fees and expenses and an award to the Class Representatives.

68.     At least seven (7) days before the Final Fairness Hearing, the parties shall file a motion requesting that the Court grant final approval of the Settlement embodied in the Agreement and that the Court enter a Final Order and Judgment consistent with the terms of the Agreement, in the form required by the Agreement and as submitted by the Settling

Parties.  At that time, Class Counsel may also file a petition for an award of attorney's fees and reimbursement of expenses.

69.     Before the Final Fairness Hearing, Class Representatives and the RTI Defendants may file memoranda of law responding to any objections of the members of the Class filed with the Court.

**IT IS SO ORDERED**.

BY THE COURT:


    s/Ann D. Montgomery
Ann D. Montgomery
United States District Judge

Dated:  January 18, 2012.