# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: Uponor, Inc., F1807 Plumbing
Fittings Products Liability Litigation

This Order Relates to all Actions

**MEMORANDUM OPINION
AND ORDER**
Court File No. 11-MD-2247 ADM/JJK

---

Shawn M. Raiter, Esq., Larson King, LLP, St. Paul, MN, on behalf of Plaintiffs.

Chad R. Felstul, Esq., Pemberton, Sorlie, Rufer & Kershner, PLLP, Fergus Falls, MN; and
Kenneth S. Kasdan, Esq., Michael D. Turner, Esq., and Michael James White, Esq., Kasdan
Simonds Weber & Vaughan LLP, Irvine, CA, and Phoenix, AZ, on behalf of Movant Oscar
Ortega.

Bradley D. Fisher, Esq., Fisher Bren & Sheridan LLP, Minneapolis, MN; and Howard L. Lieber,
Esq., John R. Schleiter, Esq., and Lindsay E. Dansdill, Esq., Grotefeld Hoffman Schleiter
Gordon & Ochoa, LLP, Chicago, IL; and Joshua P. Haid, Esq., Fisher Kannaris, PC, Chicago,
IL, on behalf of Defendants

---

## I.  INTRODUCTION

This matter is before the undersigned United States District Court Judge for a ruling on

Plaintiff-Intervenor Oscar Ortega's ("Ortega") Motion to Intervene [Docket No. 15], Motion for

Protective Order [Docket No. 24], and Motion to Decertify Class [Docket No. 28].  For the

reasons set forth below, Ortega's motions are denied.

## II.  BACKGROUND

On January 18, 2012, this Court issued an Order Granting the Motion to Certify Class for

Settlement Purposes and for Preliminary Approval of Class Action Settlement and Form and

Dissemination of Notice to the Class [Docket No. 12] ("Class Certification Order").  Two

settlement classes were preliminarily approved, one class for individuals whose Uponor F1807

Systems had already leaked[1] and one for those whose systems had not.[2]

This multi-district litigation ("MDL") case began with the filing of the first putative class action suit against Radiant Technology, Inc. ("RTI") and Uponor, Inc. ("Uponor"), <u>McGregor v.</u>

---

[1]

All persons or entities that own or have owned, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained ASTM F1807 style plumbing systems manufactured and / or sold by Radiant Technology, Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999 that have experienced at least one leak in an RTI component in the system before July 1, 2012. Also included in this class are all persons or entities who have legal standing to pursue claims through or in the name or right of those eligible entities who own or have owned, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained ASTM F1807 style plumbing systems manufactured and / or sold by the Radiant Technology, Inc. or Uponor, Inc. and their predecessors and which leaked and caused damage before July 1, 2012.
This past leak settlement class includes all individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all persons who have legal standing and are entitled to assert a claim on behalf thereof.
Am. Class Certification Order [Docket No. 14] ¶ 6.

[2]

All persons or entities that own buildings, homes, residences, or any other structures located in the United States that contain ASTM F1807 style plumbing systems manufactured and / or sold by Radiant Technology, Inc. or Uponor, Inc. and their predecessors installed on or after May 15, 1999 that have not leaked and caused property damage before July 1, 2012.

This settlement class of the owners of non-leaking ASTM F1807 style plumbing systems includes all individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, mortgagees, tenants, creditors, lenders, predecessors, successors, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof.  Insurance companies are not included in this settlement class.
Am. Class Certification Order ¶ 6.

2

Uponor, Inc., on May 15, 2009.  See McGregor Compl. [McGregor Docket No. 1].[3]  That case

asserted a number of claims regarding Plumb-PEX plumbing systems the Defendants sold under

standard ASTM F1807 ("F1807").  Defendants Uponor and RTI moved to dismiss the claims of

the named class representatives in McGregor, arguing there was no damage and no standing for

individuals whose F1807 systems had not leaked.  In successfully defending that motion, the

McGregor plaintiffs cited several California decisions and maintained that breach of warranty

occurs at the time of delivery of nonconforming goods, not at the time those nonconforming

goods cause additional injury.  Pls.' Mem. in Opp'n to Mot. [McGregor Docket No. 32] 6–7.

In January 2011, two putative class actions were brought in California against

Defendants RTI and Uponor.  See Fielstra v. Uponor, 11-cv-1683 (ADM/JJK); Roth v. Uponor,

11-cv-1684 (ADM/JJK).  The Fielstra plaintiffs contended that all class members had claims,

regardless of whether their systems had previously leaked — "Defendants have refused the

requests [ ] of property owners to replumb their home to replace the fittings Defendants

themselves have admitted are defective, unreasonably dangerous and not merchantable."  First

Am. Compl. [Fielstra Docket No. 25] ¶ 47.  Similarly, the Roth plaintiffs alleged that the

defective fittings needing to be proactively replaced because "[t]hese failures have and will in

the future cause leaks . . . and must be removed and replaced."  First Am. Compl. [Roth Docket

No. 14] ¶ 18.

---

[3]As an MDL, this case has multiple dockets.  Unless otherwise specified, all docket entries refer to the lead case, In re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation, 11-2247 (ADM/JJK). The McGregor Docket refers to pleadings filed in McGregor v. Uponor, Inc., 09-cv-1136 (ADM/JJK).  For ease of reference, the docket numbers in the McGregor case will be referred to as [McGregor Docket No.].  Similarly, filings in Fielstra v. Uponor, 11-cv-1683 (ADM/JJK), will be referred to as [Fielstra Docket No.], and filings in Roth v. Uponor, 11-cv-1684 (ADM/JJK) will be referred to as [Roth Docket No.].

The proposed settlement specifies two classes.  Those class members whose F1807 systems have leaked are entitled to the full repair and replacement cost.  Raiter Aff. [Docket No. 41] Ex. A ("Settlement Agreement.") ¶¶ 32, 103–06.  Class members who have not experienced at least one leak but are able to demonstrate "by way of a flow test that a differential in water flow . . . of more than 50% [exists] between the hot and cold lines . . . .," are entitled to the cost of repairs and where this is insufficient, replacement.  Id. ¶¶ 95, 108.

Ortega purchased his home in January 2010 and has not yet filed any claim related to his plumbing system.  Ortega Decl [Docket No. 18] ¶¶ 1–3.  In July 2010, Ortega's California attorneys filed a suit concerning plumbing systems entitled Sweidan v. Wirsbo Co.  See Raiter Aff. Ex. B ("Sweidan v. Wirsbo Co., Case No. RIC 10014729 (Cal. Sup. Ct. 2010)").  In August 2010, the Sweidan Defendants moved to dismiss because the claims were identical to those asserted in McGregor.  Raiter Aff. Ex. C.  Ortega's attorneys, therefore, knew about the McGregor case by at least August 2010, although Ortega states that he was ignorant of the McGregor suit until May 12, 2012.  See Ortega Decl. ¶ 3.

### III.  DISCUSSION

#### A.  Motion to Intervene

Ortega's Motion to Intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) is premised on the argument that the present class representatives have not attempted to assert a claim under California Civil Code § 896, or California's Right of Repair Act ("RORA")[4]

---

[4]Defendants Uponor and RTI raise the issue that Ortega's RORA claim may be inapplicable here because of an unambiguous choice of law provision.  Response of Uponor, Inc. & Radiant Technology, Inc. in Opp'n to Mot. [Docket No. 45] 5–6.  The Limited Warranty which purportedly pertains to Ortega's F1807 system states that "it is expressly agreed that this limited warranty and any claims arising from breach of contract, breach of warranty, or any other

and that, as a result, the settlement fails to provide him and others similarly situated the damages available under California law should their F1807 systems never leak.  Ortega's Mem. in Supp. of Mot. to Intervene [Docket No. 17] 1.  The settlement class opposes Ortega's Motion to Intervene arguing it is untimely and procedurally flawed, and that the claims Ortega asserts are virtually identical to those asserted by the class representatives.

### 1.  Timeliness

Courts must allow intervention if that party claims an interest relating to the property or transaction which is the subject of current litigation if that party is "so situated that disposing of the action may . . . impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  Even so, the Court need not permit intervention of right when existing parties adequately represent the intervenor's interest.  Id.

A party seeking intervention, however, must move to intervene in a timely manner.  "The issue of the timeliness of a motion to intervene is a threshold issue."  United States v. Ritchie Special Credit Inv., Ltd., 620 F.3d 824, 832 (8th Cir. 2010).  In considering the timeliness of a motion to intervene, a court must consider the totality of the circumstances.  Jenkins by Jenkins v. State of Mo., 78 F.3d 1270, 1273–74 (8th Cir. 1996).  Four factors are relevant to the

─────────────────────

claim arising hereunder, shall be governed and construed under the laws of the State of Minnesota."  Lieber Aff. [Docket No. 46] Ex. E.  In Minnesota, choice of law provisions are generally applied.  "[P]arties may agree that the law of another state shall govern their agreement and [Minnesota courts] will interpret and apply the law of another state where such an agreement is made."  Milliken & Co. v. Eagle Packaging Co., Inc., 295 N.W.2d 377, 380 n.1 (Minn. 1980).

At this point it is not possible to determine whether this was the limited warranty Ortega received.  If it was, then Ortega's Motion to Intervene is moot because he is unable to assert a RORA claim under Minnesota law.  This opinion will assume, without deciding, that California law could apply to Ortega.

timeliness determination of a motion to intervene: (1) the progress of the litigation; (2) the prospective intervenor's prior knowledge of the action; (3) the reason for delay in seeking intervention; and (4) the likelihood of prejudice to all parties.  Ritchie Special Credit Inv., Ltd., 620 F.3d at 832 (citation omitted).

Except for his assertion that he did not know of the settlement prior to May 2012, Ortega utterly fails to argue the timeliness of his present Motion to Intervene.  The timeliness factors here militate against permitting intervention.  Given the advanced stage of the litigation, combined with the substantial time and resources expended by all parties to this settlement, permitting a full-scale intervention would be extremely prejudicial to many parties' interests. Accord  Snell v. Allianz Life Ins. Co. of North Am., No. Civ. 97-2784, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000) (citing numerous cases from other jurisdictions denying intervention after significant resources have been expended and time has elapsed).  Ortega's motion to intervene comes three years after McGregor was first filed and four months after the Class Certification Order was issued, and this ninth-inning-with-two-outs intervention motion comes after the preliminary approval of an arms-length settlement agreed upon as the result of lengthy negotiations.

The timing of Ortega's prior knowledge of the MDL action raises questions.  While Ortega asserts that he did not know of this litigation until May 2012, see Ortega Decl. ¶ 3, his attorneys did know of the McGregor litigation as early as August 2010.  See Raiter Aff. Ex. C. As a general rule, an attorney's knowledge is imputed to his client.  See Cal. Ins. Guar. Ass'n v. Workers' Comp. Appeals Bd., 77 Cal. Rptr. 3d 868, 875 (Cal. Ct. App. 2008); Lundin v. Stratmoen, 85 N.W.2d 828, 831 (Minn. 1957) ("[T]he knowledge of an attorney is imputed to his

client . . . .").  However, this imputation of knowledge applies to the attorney-client relationship, and therefore does not antedate the start of that relationship.  Cf. Armstrong v. Ashley, 204 U.S. 272, 283 (1907) ("The knowledge of the attorney . . . in regard to a matter coming within the sphere of their duty, and acquired while acting in regard to the same . . . must be imputed to the [client]."); Freeman v. Superior Court, San Diego Cnty., 282 P.2d 857, 860 (Cal. 1955) ("The general rule of agency, that notice to or knowledge possessed by an agent is imputable to the principal, applies for certain purposes in the relation of attorney and client.").  As there is no evidence of record as to when Ortega first met with and established his relationship with his attorneys, it is impossible at this time to determine when his attorneys' knowledge should be imputed to Ortega.  As such, this factor is inconclusive here.  Additionally, since it is unknown when Ortega gained knowledge of the action, it is similarly impossible to calculate the delay in seeking intervention.  Therefore, neither the prior knowledge nor the delay factor are probative on the timeliness of intervention here.

The prejudice to the parties, however, weighs strongly in favor of denying intervention. Ortega has failed to argue how his interests would be significantly prejudiced by a denial of intervention.  Ortega had the option to opt out of the class.  The settlement parties, however, would be prejudiced by an expensive, time-consuming delay, additional discovery, and by restarting or revisiting settlement negotiations.  Based on the prejudice to the settlement parties, as well as the advanced progress of the litigation, Ortega's Motion to Intervene is untimely.

### 2.  Adequacy of Class Representatives

Ortega also challenges the adequacy of the class representatives' representation, alleging that he has met the minimal bar for showing that the current representation may be inadequate.

7

It is true that any "[d]oubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." Sierra Club v. Robertson, 960 F.2d 83, 85–86 (8th Cir. 1992). Additionally, Ortega urges this Court to scrutinize his motion to intervene with "undiluted, even heightened, attention in the settlement context" to "protect absentees by blocking unwarranted or overbroad class definitions." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997).

Undiluted scrutiny does not necessitate intervention in this case. Class representatives need not share identical interests with those of every class member — "it is enough that they share common objectives and legal or factual positions." Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1148 (8th Cir. 1999) (internal quotation omitted). Moreover, settlement classes are not untenable just because class members receive differing settlement awards; this is typical to most settlements. Id. Class action is appropriate when the claim is based on the same legal or remedial theory. Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977) ("When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."). Adequacy of representation is presumed when the proposed intervenor and the class representatives have the same ultimate objective. Jenkins by Jenkins, 78 F.3d at 1275 (citing Bradley v. Milliken, 828 F.2d 1186, 1192 (6th Cir. 1987)). "A difference of opinion concerning litigation strategy or individual aspects of a remedy does not overcome the presumption of adequate representation." Jenkins by Jenkins, 78 F.3d at 1275.

Ortega argues that because the class representatives have not attempted to assert a claim under RORA, they are therefore inadequate. The class representatives here are presumed

adequate, given that both the class representatives and Ortega have the same ultimate objective — obtaining the necessary repairs or replacement of defective F1807 systems. Ortega fails to enunciate how class representatives have failed to raise the same remedial or legal theory he proposes. Under RORA, "[p]lumbing lines . . . shall not corrode so as to impede the useful life of the systems." Cal. Civ. Code § 896(a)(15). RORA eschews the economic loss rule, providing recovery for violations of building standards even without a "showing of causation or damages . . . provided that the violation arises out of, pertains to, or is related to, the original construction." Greystone Homes, Inc. v. Midtec, Inc., 86 Cal. Rptr. 3d 196, 209 (Cal. App. 2008) (quoting Cal. Civ. Code § 942).

In this case, the settlement establishes awards for both individuals whose F1807 systems have leaked, as well as those whose F1807 systems have been substantially impaired. See Settlement Agreement ¶¶ 95, 108. The remedies for homeowners with impaired F1807 systems which have not leaked are the cost of repairs and, when insufficient, replacement. Id. ¶¶ 95, 108. It is uncertain, then, how Ortega's claimed rights under RORA are not addressed by the settlement at issue. If Ortega believes the class representatives inadequate or the settlement insufficient, he should simply have opted out of the class.[5]

Further, Ortega argues a logistically untenable position; namely, that class representatives must raise every state law claim available to be considered adequate. Were Ortega's position adopted, nationwide class-action litigation would effectively cease because parties from varying states with varying laws would be unable to bring all possible state actions.

---

[5]The deadline for parties to opt out of the class was June 1, 2012. See Am. Class Certification Order ¶ 34. At the time he filed his various motions, as well as at the time of the May 29, 2012 hearing on the motions, Ortega still could have opted out of the class.

Ortega also fails to specify how the resolution of this action would impair or impede his ability to protect his interest.  Presumably, Ortega believes that the lack of a RORA claim by the class action representatives would impair or impede his ability to later bring a claim under RORA.  Notably, Ortega has not yet filed a RORA lawsuit in California.  As set forth more fully in the discussion of the class representatives' adequacy, the proposed settlement provides the same remedy available under RORA.  Accordingly, as Ortega has failed to argue this element, and as the settlement does not impair or impede Ortega's ability to receive RORA-style remedies, Ortega's Motion to Intervene is denied on this ground as well.

Because Ortega's Motion to Intervene is untimely, the class representatives are adequate, and because he has failed to show how his ability to protect his interests would be impaired or impeded by the resolution of the MDL action, the Motion to Intervene is denied.

### B.  Motion to Decertify Class and Motion for Protective Order

Ortega's Motion to Intervene has been denied, and therefore he lacks standing to challenge the certification of the class or to seek a protective order.  See Ring v. Metro. St. Louis Sewer Dist., 41 S.W.3d 487, 490–91 (Mo. Ct. App. 2000) (finding that an unnamed class member lacked standing to appeal the adequacy of a settlement agreement where its motion to intervene was denied).  The Ring court reasoned that, while the Eighth Circuit has not squarely addressed this question, its resolution of similar scenarios suggests it would find a lack of standing when a party's motion for intervention has been denied.  Id.; cf. Croyden Assoc. v. Alleco Inc., 969 F.2d 675, 679 (8th Cir. 1992) ("[U]nnamed class members who object to a settlement must move to intervene, and they will be denied standing to appeal when they have

not done so."); <u>Marino v. Ortiz</u>, 484 U.S. 301, 304 (1988) (holding that petitioners who failed to intervene and who were not parties to litigation lacked standing to appeal the settlement). Additionally, where a motion to intervene has been denied, the remaining motions filed by the denied intervenor are denied as moot.  <u>Planned Parenthood of the Heartland v. Heineman</u>, 664 F.3d 716, 718 (8th Cir. 2011) (affirming denial of proposed intervenor's motion for reconsideration as moot where motion to intervene had been properly denied).

Because Ortega's Motion to Intervene has been denied, he lacks standing to assert both his Motion to Decertify Class and his Motion for Protective Order.  These motions are denied as moot.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.  Plaintiff-Intervenor Ortega's Motion to Intervene [Docket No. 15] is **DENIED**; and

2.  Plaintiff-Intervenor Ortega's Motion for Protective Order [Docket No. 24] and Motion to Decertify Class [Docket No. 28] are **DENIED** as moot.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 19, 2012.

11